IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY and R. C. L. MAYS, *individually and on behalf of all others similarly situated*, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:22-cv-1073 |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., | § § § § § | |
| Defendants. | § § | |

**JOINT REPORT AND PROPOSED SCHEDULING ORDER**

Pursuant to the Court's February 28, 2023 Order [Doc. 15], C.M. Collins, N.J. Lundy, and R.C.L. Mays ("Plaintiffs"), individually and on behalf of all others similarly situated, and Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively, "Defendants") file this Joint Report and Proposed Scheduling Order.

**I.    REQUEST FOR TWO PHASES**

Because Plaintiffs will seek to send notice of this case to the putative Collective Members pursuant to the FLSA, the parties request the Court to allow the case to proceed in two (2) phases and allow the parties to submit a second joint report and proposed scheduling order after the issue of notice is resolved. Without more fully knowing the size of any potential putative class, it is very difficult to anticipate the amount of time necessary to complete discovery and prepare this case for trial. Therefore, the parties respectfully request the Court to allow the case to proceed in two (2) phases as follows:

1

1.  **Phase One.**

Phase One would be limited to the issue of whether notice is appropriate, and, if so, determining the scope and size of the putative class and sending notice to the putative class. If the parties' request for phases is granted by the Court, within one-hundred and twenty (120) days from the Court's Order the parties would conduct discovery regarding:

- Whether the named plaintiffs and proposed putative class members are similarly situated, including, but not limited to, the following:

    o   Whether the economic realities test can be applied on a collective basis, and whether doing so would require a highly individualized inquiry into each potential opt-in's circumstances;

    o   Whether individual factors must be considered to determine whether the named plaintiffs and putative class members were exempt from the overtime requirements of the FLSA.

- The scope of individuals to be included in a putative class (if any).

- The size of, and individuals to be included, in a putative class (if any).

Then, on or before the expiration of one-hundred and twenty (120) days from the Court's Order, Plaintiffs would file a motion asking this Court to conditionally certify a class and to authorize counsel for Plaintiffs to transmit notice to the putative class of their right to sign a consent to join this action. Defendants would then have an opportunity to respond to said motion, and therein object to conditional certification of a class, or, in the alternative, seek appropriate guidelines, directives, and limitations concerning the notice and putative collective.

2.  **Phase Two.**

If the Court allows counsel for Plaintiffs to transmit notice to the putative class, Phase Two would begin on the date the Court sets for the close of the opt-in period. If the Court denies Plaintiffs' request to transmit notice to the putative class, Phase Two would begin on the date the Court issues its denial. Allowing the parties to conduct a second scheduling conference after the

issue of notice is resolved and the size of the putative class is known will allow the parties to be in a better position to confer and report back to the Court with more specific knowledge as to the scheduling and discovery needs of this action.

Therefore, the parties request the Court's scheduling order issued as a result of this report: (1) direct the Parties to confer no later than thirty (30) days after Phase Two begins, and (2) direct the parties to file a second report, no later than thirty (30) days after Phase Two begins, to further address any proposals or limitations under Federal Rule of Civil Procedure 26(f), including requested deadlines and the anticipated time needed to prepare this case for trial.

## II.     REQUIRED CONTENT

**1.     Brief Factual and Legal Synopsis.**

    **a.     Plaintiffs' contentions:**

On December 27, 2022, Plaintiffs filed this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Plaintiffs worked for Defendants as Desk Adjusters whose primary responsibility was to process first-party claims such as theft, vandalism, and minor fire and water damage under personal lines of coverage. Plaintiffs routinely worked in excess of 40 hours per week but were not paid lawfully for doing so because Defendants misclassified Plaintiffs and other Desk Adjusters as independent contractors and failed to pay them overtime compensation as required by the FLSA. Plaintiffs file this suit on behalf of themselves and all other similarly-situated former and current Desk Adjusters working for Defendants ("Putative Class Members"). Defendants' actions in failing to pay its Desk Adjusters overtime as required by the FLSA were willful.

Defendants provide insurance adjuster services to major insurance carriers throughout the United States and Canada. Plaintiffs and Putative Class Members are current and former Desk

Adjusters who worked for one or both Defendants at any time within the three years prior to the filing of this Complaint, and who worked one or more workweeks during that time in excess of 40 hours without being paid an overtime premium of time-and-one-half their regular rate for all hours over 40.

Despite being misclassified as independent contractors, Defendants controlled all substantial aspects of Plaintiffs' workday. Specifically, Defendants hired and fired, issued pay, supervised, directed, disciplined, scheduled, and performed all other duties generally associated with that of an employer with regard to Plaintiffs. Additionally, Defendants required Plaintiff to work a set schedule, provided their tools, maintained control over their opportunity for profit, and otherwise exercised the level of control over Plaintiff typical of an employer.

As Desk Adjusters, Plaintiffs primary duty was to process first-party claims such as theft, vandalism, and minor fire and water damage under personal lines of coverage. Plaintiffs performed this work remotely using the phone and internet, unlike field adjusters who go to the sites of damage and loss to investigate claims firsthand. Plaintiffs' work periods are quite measurably and highly supervised, with each having a team supervisor to supervise the quantity and quality of their work and resolve any issues that arise. If Plaintiffs' work is inadequate, they are subject to discipline by Defendants.

Defendants pay Plaintiffs on a day rate basis that pays a flat rate for their work on any given workday, regardless of the number of hours actually worked by the Desk Adjuster that day. Defendants dock or threaten to dock Plaintiffs' pay for various reasons outside of their control. If Plaintiffs do not perform any work in a single day, they are not paid for that day.

Plaintiffs routinely work over 40 hours per week. In fact, Plaintiffs frequently work in excess of 60 hours in a week. A base workweek for Plaintiffs is often 10 hours per day, Monday

through Saturday, and sometimes Sunday. Defendants know that Plaintiffs work in excess of 40 hours per week and allow and direct them to work these excessive hours without paying them overtime as required by the FLSA.

Defendants have employed and are employing other Desk Adjusters subject to the same treatment as Plaintiffs in that they are misclassified as independent contractors and not paid overtime premiums for hours worked over 40 per workweek ("Putative Class Members"). Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Plaintiffs and the Putative Class Members overtime compensation. Defendants' failure to pay overtime compensation to these employees was neither reasonable nor was the decision not to pay overtime made in good faith.

Defendants are liable for the Plaintiffs' and Putative Class Members' unpaid overtime wages in an amount equal to one-and-one-half times their rate of pay, plus liquidated damages in an amount equal to the unpaid overtime wages, expert witness fees, attorney fees, costs, and pre- and post-judgment interest at the highest rates allowed by law.

b. **Defendants' contentions:**

Defendants maintain that the named plaintiffs were properly classified as independent contractors. Defendants did not control all substantial aspects of Plaintiffs' workdays, nor did Defendants perform the duties generally associated with that of an employer with regard to Plaintiffs. Additionally, Defendants did not require Plaintiffs to work set schedules, maintain control over their opportunity for profit, or otherwise exercise the level of control over Plaintiffs typical of an employer. To the contrary, Plaintiffs' work was highly individualized, was not highly supervised, and each Plaintiff had substantial discretion in the management of her own work.

In the alternative, and without waiving the above defenses, if the Court were to determine that Plaintiffs were not properly classified as independent contractors, Plaintiffs were exempt from the overtime requirements of the Fair Labor Standards Act and, as a result, are not owed overtime compensation.

Defendants further contend that collective action is not appropriate as the Putative Class Members as defined by Plaintiffs are not similarly situated.

**2.   Jurisdictional Basis.**

This Court has subject-matter jurisdiction over this matter because the claims asserted arise under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has personal jurisdiction over Catastrophe Response Unit USA, Inc. because Catastrophe Response Unit USA, Inc. does business in Texas and employs Texas residents.  Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391 because the Independent Contractor Agreement between Catastrophe Response Unit USA, Inc. and C.M. Collins, and the Independent Contractor Agreement between Catastrophe Response Unit USA, Inc. and R.C.L. Mays, have venue-selection clauses that require disputes between the parties to be heard in Denton County, Texas, which is within this District and Division.

**3.   Names of the Parties.**

   a.   <u>**Plaintiffs**</u>

Currently, the Plaintiffs are Carla M. Collins, Natine J. Lundy, and Rasheedah C. L. Mays. As mentioned above, Plaintiffs intend to file a motion asking the Court to allow Plaintiffs' counsel to transmit notice to the putative class and asking the Court to set a deadline for opt-in plaintiffs to join this lawsuit.

b. **Defendants**

Both Defendants were named in a manner consistent with their correct corporate names. However, Catastrophe Response Unit, Inc. should not have been named in this lawsuit because none of the Plaintiffs in this case contracted with Catastrophe Response Unit, Inc.

**4.  Related Cases.**

At this time, there are not any related cases pending in any state or federal court.

**5.  Initial Disclosures.**

The parties have jointly stipulated to serve their Initial Disclosures under Rule 26(a)(1) by **April 7, 2023**. As part of the Court's consideration of this Joint Report, the parties request the Court's approval of that stipulation.

Additionally, Plaintiffs request the Court to modify Rule 26(a)'s damages calculation requirement as follows: Plaintiffs shall not be required to disclose the computation of all damages with their initial disclosures. Rather, Plaintiffs will disclose the method of calculation of damages with their Initial Disclosures and within thirty (30) days after Defendants' produce documents in response to Plaintiffs' second-phase requests for production,[1] will disclose their computation and calculation of damages. Defendants object to this request as stated.

**6.  Deadlines.**

**Phase One**

| 120 days after the Court's Order | Deadline for Phase One limited discovery. |
|---|---|
| 120 days after the Court's Order | Deadline for Plaintiffs to file motion for notice. |

---

[1] The reasonableness of the time it takes Plaintiffs to calculate their damages will depend in large part on the type of information Defendants maintained and the format in which Defendants produce the information. (e.g. .xls files versus .PDF files; if in PDF format, Plaintiffs will need additional time to manually enter the information into an .xls file in order to calculate damages.)

7

| 21 days after Plaintiffs' motion for notice | Deadline for Defendants' response to Plaintiffs motion for notice. |
|---|---|
| 14 days after Defendants' response | Deadline for Plaintiffs' reply to Defendants' response to motion for notice. |

7. **Deadlines.**

   a. **Subjects of Discovery.** As set forth above, Phase One discovery will be limited to issues directly relevant to the Section 216(b) motion, such as whether the named plaintiffs and putative class members are similarly situated, the scope of individuals to be included in a putative class (if any), and the size of and individuals to be included in the putative class (if any). The Parties will look to the Fifth Circuit's guidance in *Swales v. KLLM Transport Services, L.L.C.* 985 F.3d 430 (5th Cir. 2021) regarding the scope of discovery appropriate prior to the conditional certification of any class.

   b. **Electronically Stored Information("ESI").** The parties agree to accept service of all documents, including discovery, in this matter via electronic mail. The parties also agree to produce all documents, including discovery, in electronic format.

      i. **Use of Search Terms.** The parties agree to meet and confer about the methods they will use to search electronically stored information ("ESI") and appropriate search terms to identify information that is subject to production, and filter out ESI that is not subject to discovery. The parties will cooperate in the development of appropriate search methodology and criteria, including the potential use of computer-assisted search methodologies and other analytics-based search and filtering tools. The parties further agree that the parties will cooperate to ensure that any

8

    potentially relevant ESI in their custody or control or in the custody or control of any third-party vendors will be preserved and delivered (if ultimately responsive to any discovery requests) in the proper format and manner, as described below.

ii.  **Form of Production.** All documents to be produced will be converted to a paginated version as a PDF and/or TIFF images ("Paginated Document").

iii.  **Native Files.** The parties may produce native files, including spreadsheets (e.g. .xls or .csv), when converting to a paginated version as a PDF is not reasonably feasible.  A slipsheet shall be included in the PDF production in place of the native file, bearing the Bates Number and any other applicable designation.  The Bates Number and applicable designation shall also be included in the file name of the native file.

iv.  **Bates Numbering.** All produced Paginated Documents will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal, or interfere with any information from the Paginated Document. No other legend or stamp will be placed on the Paginate Document other than a confidentiality legend (where applicable), redactions (consistent with any other protective orders or applicable law), any applicable protective orders, and if desired by a party, a document control number separate from the Bates Number.

v.  **File Naming Conventions.** Each produced Paginated Document file will be named with the beginning Bates Number. In the event the Bates Number

     contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

  vi. **Delivery.** ESI shall be produced electronically through a secure file transfer platform (e.g., Sharepoint, Sharefile, Proofpoint, etc.). Upon request, ESI will be stored on Universal Serial Bus (USB) flash (non-volatile computer storage) mass media storage drives or some other mutually agreeable storage medium, and delivered by a confirmable means (e.g., U.S. Mail, courier, FedEx, UPS, etc.).

c. **Privilege and Preservation.** At this time, the parties' counsel do not foresee any issues related to claims of privilege or protection regarding trial-preparation material, but will first work together in an attempt to resolve any such issues without need for court involvement. The parties respectfully request that the Court enter in this matter Judge Jordan's standard form Protective Order. This Protective Order is attached hereto as Exhibit A.

d. **Changes to Discovery.** The parties respectfully request the Court to allow this case to proceed in phases as set forth above in Section I.

e. **Other Orders.** Shortly, the parties may request continuance of the initial scheduling conference in light of the two phases of this case, which will be done by a joint motion to the Court. The parties do not request any other orders not otherwise described by this Joint Report.

8. **Settlement.**

<u>Plaintiffs</u>

From Plaintiffs' perspective, constructive settlement progress is not possible at this time because this is a collective action case under the Fair Labor Standards Act, and therefore all of the prospective plaintiffs have not yet been joined into the case. Once all the plaintiffs in the case are known, then-Plaintiffs will make a good faith attempt to determine, or at least reasonably estimate, the claim amounts of each plaintiff and present a settlement demand to Defendants.

Defendants

Defendants do not agree with the Plaintiffs' perspective that engaging in early settlement negotiations is not possible.  Defendants believe that the parties' engaging in early settlement negotiations is possible and would be productive.  Although it appears that the parties have vastly different perspectives as to the merits of this case, Defendants believe that the parties, after having diligently conducted initial investigations in this case, are ready to have meaningful settlement discussions.

**9.      Identity of Persons to be Deposed.**

Plaintiffs intend to take a Rule 30(b)(6) corporate representative deposition for Defendant Catastrophe Response Unit, Inc. and Defendant Catastrophe Response Unit USA, Inc. in Phase I of this case in preparation for a Motion for Court-Ordered Notice to the collective.

Defendants intend to depose each of the three named Plaintiffs in Phase I of this case in preparation for responding to a Motion for Court-Ordered Notice.

Further deponents may be identified through the parties' review and analysis of information provided in discovery. The parties may also depose any individual disclosed or relied upon by any other party as having personal knowledge regarding facts relevant to any claim or defense, and they expect to depose any expert designated by any other party.

**10.     Trial.**

The parties anticipate that trial will take approximately five days depending on the number of plaintiffs who join this action and whether the case proceeds as a collective action. Plaintiffs have made a timely jury demand.

**11.     Attorneys who will Appear at Management Conference.**

On behalf of Plaintiffs, Kerry O'Brien and Travis Gasper will appear at the management conference.

On behalf of Defendants, Monte K. Hurst and Kristen Brumbalow will appear at the management conference.

**12.     Consent to Magistrate Judge.**

The parties do not jointly consent to a magistrate judge for trial.

**13.     Other Miscellaneous Matters.**

Except as otherwise stated in this Joint Report and Proposed Scheduling Order, the parties have no further matters to bring to the Court's attention at this time.

Respectfully submitted,

| For Plaintiffs: | For Defendants: |
|---|---|
| */s/ Kerry V. O'Brien*<br>**Kerry V. O'Brien**<br>Texas Bar No. 24038469<br>1011 Westlake Drive<br>Austin, Texas 78746<br>phone: (512) 410-1960<br>fax: (512) 410-6171<br>email: ko@obrienlawpc.com<br>**LEAD COUNSEL FOR PLAINTIFFS**<br>and<br>*/s/ Travis Gasper*<br>**Travis Gasper**<br>Texas Bar No. 24096881 | *Monte K. Hurst*<br>Monte K. Hurst<br>State Bar No. 00796802<br>Monte.Hurst@hallettperrin.com<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>KBrumbalow@hallettperrin.com<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142 |

| | |
|---|---|
| GASPER LAW, PLLC<br>1408 N. Riverfront Blvd., Suite 323<br>Dallas, Texas 75207<br>phone: (972) 504-1420<br>fax: (833) 957-2957<br>email: travis@travisgasper.com<br>**CO-COUNSEL FOR PLAINTIFFS** | *Counsel for Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.* |

| | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.3.0.46 Document comparison done on 4/4/2023 10:31:50 AM** ||
| **Style name:** Default Style ||
| **Intelligent Table Comparison:** Active ||
| **Original filename:** 2023.03.31 Joint Report and Proposed Scheduling Order.docx ||
| **Modified filename:** Joint Report and Proposed Scheduling Order - H&P edits 4882-7535-6763 v.1.docx ||
| **Changes:** ||
| Add | 94 |
| Delete | 46 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 1 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 142 |