ORAL AND VIDEOTAPED DEPOSITION OF NATINE LUNDY

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| C.M. COLLINS, N.J. LUNDY, and R.C.L. MAYS, Individually and on behalf of all other similarly situated, | § § § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | NO. 4:22-cv-1073 |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., | § § § § | |
| Defendants. | § | |

ORAL AND VIDEOTAPED DEPOSITION OF

NATINE LUNDY

SEPTEMBER 11, 2023

VOLUME 1

Page 2

1          ORAL AND VIDEOTAPED DEPOSITION of NATINE
2  LUNDY, produced as a witness at the instance of the
3  Defendants, and duly sworn, was taken in the
4  above-styled and numbered cause on the 11th of
5  September, 2023, from 9:10 a.m. to 3:51 p.m., before
6  Kathy E. Weldon, CSR in and for the State of Texas,
7  reported by machine shorthand, at the offices of
8  Hallett & Perrin, 1445 Ross Avenue, Suite 2400, in the
9  City of Dallas, County of Dallas, State of Texas,
10 pursuant to Notice and the Federal Rules of Civil
11 Procedure.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

ORAL AND VIDEOTAPED DEPOSITION OF NATINE LUNDY

Page 40

1     A.  No.

2     Q.  Okay.  You just assume that there is a log of
3 calls?

4     A.  There is through the phone system they had us
5 using.  It would track every inbound, outbound, the
6 amount of time you spent on a call.

7     Q.  And that's CRU or TD that you're talking
8 about?

9     A.  It was on the -- the laptop, the equipment
10 provided.  CRU did have access to everything that --
11 because I dealt specifically with them.  I never dealt
12 directly with TD Insurance.

13     Q.  I didn't ask you --

14     A.  Oh --

15     Q.  -- who you --

16     A.  -- sorry.

17     Q.  -- were dealing with.

18         But my question to you is:  The log that
19 you're talking about, the call log --

20     A.  Uh-huh.

21     Q.  -- was that on a CRU product, or was that on
22 a TD product?

23     A.  I honestly don't know who the laptop belonged
24 to.

25     Q.  Okay.  Do you remember the program that you

ORAL AND VIDEOTAPED DEPOSITION OF NATINE LUNDY

Page 127

1      A.  He was the only one.
2      Q.  So is it fair to say you didn't have a great
3  experience with CRU in that two- to three-day period
4  when you were deployed in 2020?
5      A.  Yes.
6      Q.  Your gut was telling you it wouldn't have
7  been a good fit, right?
8      A.  Yes.
9      Q.  So it was not a good experience, correct?
10     A.  Correct.
11     Q.  Yet, you chose to came -- to come back to CRU
12 the following year?
13     A.  Yes.
14     Q.  2021, middle of the year, with the same
15 client, TD Insurance?
16     A.  Yes.
17     Q.  And you knew or you feared that it would be,
18 your words, a chaotic situation as well?
19     A.  Yes.
20     Q.  You had a team lead in Jyoti.  Again, I may
21 be mispronouncing it.
22     A.  She wasn't a team lead.
23     Q.  All right.
24     A.  She's a manager.
25     Q.  You have a manager in Jyoti telling you, here

1  are the hours of the day you're going to be expected
2  to work, which you found to be a lot and perhaps
3  challenging in light of what time you were picking up
4  your son from school, so you had to get permission,
5  right?
6      A. No. I wouldn't say challenging and picking
7  up my son from school.
8      Q. Oh, wait. So -- so the ten hours a day is
9  not something you found to be challenging?
10     A. No.
11     Q. Okay. And -- and she told you that you would
12 be working from 10:00 to 8:00 -- or expected to work
13 from 10:00 to 8:00?
14     A. I would be working from 10:00 a.m. to 8:00
15 p.m. --
16     Q. She told you that?
17     A. -- Eastern.
18         Yes.
19     Q. Did you find that challenging?
20     A. No.
21     Q. Okay. So that wasn't a problem?
22     A. No.
23     Q. You would be working Monday through Saturday
24 from 10:00 to 8:00. Did you find her telling you that
25 to be challenging?

ORAL AND VIDEOTAPED DEPOSITION OF NATINE LUNDY

Page 161

1  number that you didn't think you could get to?  Was it
2  how she said it that was so offensive?
3              What was it about her -- let's just take
4  the 25 call-outs alone.  What was it that was wrong
5  with her saying "This is the expectation"?
6      A.  It was unreasonable.
7      Q.  Okay.  She is saying this outrageous number
8  of call-outs that you doing your job, doing all these
9  other functions, were never going to be able to get
10 to, and by the way, neither would anybody else.
11             Is that the point?
12     A.  Yes.
13     Q.  Understood.
14             And -- and especially, in light of how
15 much time you guys are telling us to work, from --
16 what was it 10:00 to 8:00?
17     A.  For the hurricane, it was 7:00 a.m. till 5:00
18 p.m. --
19     Q.  Okay.
20     A.  -- Eastern Standard Time.
21     Q.  And so you're thinking, when you hear this
22 from Faye, there's no way that I or anybody else doing
23 our primary functions as an adjuster, which include a
24 bunch of things -- there's no way we can get to 25
25 call-outs in addition to all of that every day?

Page 201

1   A.  Yes.
2   Q.  You ever had a pending claim?
3   A.  Yes.
4   Q.  Would you like it if the adjuster assigned to
5   your file called you in the middle of the night?
6   A.  Prob- -- no.
7   Q.  It would be kind of weird, wouldn't it?
8   A.  It'd be odd, yes.
9   Q.  Okay.  So these same instructions, did they
10  tell you a time in the evening after which to not call
11  policyholders?
12  A.  That'd be -- I remember a 6:00 or 7:00 p.m.
13  Mountain Standard Time.
14  Q.  The answer's yes?
15  A.  Yes.
16  Q.  That's okay.  That's okay.
17          All right.  You had said before that you
18  asked for time off or you were told to ask for time
19  off.  Do you remember that?
20  A.  ==You had to ask permission, yes, and get it==
21  ==approved before we could take time off.==
22  Q.  Okay.  Did you ever ask for time off?
23  A.  Yes.
24  Q.  Okay.  Did you ever get denied a request for
25  time off?

ORAL AND VIDEOTAPED DEPOSITION OF NATINE LUNDY

Page 239

```
 1   STATE   OF   TEXAS )
 2   COUNTY OF DALLAS )
 3              I, Kathy E. Weldon, Certified Shorthand
 4   Reporter, in and for the State of Texas, certify that
 5   the foregoing deposition of NATINE LUNDY was reported
 6   stenographically by me at the time and place
 7   indicated, said witness having been placed under oath
 8   by me, and that the deposition is a true record of the
 9   testimony given by the witness.
10              I further certify that I am neither counsel
11   for nor related to any party in this cause and am not
12   financially interested in its outcome.
13              Given under my hand on this the ____ day of
14   _____, 2023.
15
16                         _____
                           Kathy E. Weldon, CSR No. 6166
17                         Bradford Court Reporting, L.L.C.
                           Firm Registration #38
18                         7015 Mumford
                           Dallas, Texas 75252
19                         Telephone:  (972) 931-2799
                           Fax:        (972) 931-1199
20                         My Commission Expires 10-31-2023
21
     Time used by each party:
22   Mr. Monte K. Hurst - 4:15
     Mr. Kerry O'Brien - 0:00
23
24
25
```