ORAL AND VIDEOTAPED DEPOSITION OF PAMELA JAMES

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

```
C.M. COLLINS, N.J. LUNDY     )
AND R.C.L. MAYS,             )
INDIVIDUALLY AND ON BEHALF   )
OF ALL OTHERS SIMILARLY      )
SITUATED                     )
                             )  CIVIL ACTION NO.
VS.                          )  4:22-CV-1073
                             )
CATASTROPHE RESPONSE UNIT,   )
INC. AND CATASTROPHE         )
RESPONSE UNIT USA, INC.      )
```

---

VIDEOTAPED DEPOSITION OF
PAMELA JAMES
SEPTEMBER 20, 2023

---

ANSWERS AND DEPOSITION OF PAMELA JAMES, produced as a witness at the instance of the Defendant, taken in the above-styled and -numbered cause on SEPTEMBER 20, 2023, from 10:33 a.m. to 4:47 p.m., before CHARIS M. HENDRICK, a Certified Shorthand Reporter in and for the State of Texas, witness located in Lithonia, Georgia, pursuant to the Federal Rules of Civil Procedure, and the provisions stated on the record or attached hereto.

ORAL AND VIDEOTAPED DEPOSITION OF PAMELA JAMES

Page 126

1  Q. (By Mr. Hurst) We were visiting before
2  our last break about the items that you had, both
3  physical and virtual, on which you maintained what
4  you were doing for the day while you were deployed
5  by CRU. We visited about your personal notes that
6  you would take on your legal pad, all of which have
7  been burned since your last deployment with CRU; am
8  I right so far?
9  A. That's correct.
10  Q. And we were talking about what you
11  referred to as your tracking chart, which is one
12  document on the desktop, I presume, of your laptop
13  where you documented everything in an Excel
14  spreadsheet?
15  A. That's correct.
16  Q. And just talking as you and I have been
17  doing all day today, you mentioned that you still
18  have the laptop that was given to you for your
19  employment with -- excuse me -- given to you with
20  your last deployment or in connection with your
21  last deployment with CRU; is that right?
22  A. That's correct.
23  Q. And -- and, again, apologies if I asked
24  you this already. The tracking chart to which you
25  referred is one document?

Page 158

1    answer.
2             MR. HURST:  Everybody okay with the
3    roles?
4       Q.  (By Mr. Hurst)  All right.  Is that still
5    your position that when you are an independent
6    contractor, you cannot be told what time it is that
7    you have to start being available to your
8    policyholders?
9             MR. O'BRIEN:  Objection.  Form.
10      A.  It wasn't my position then and it is not
11   my position now.  I was just referencing what was
12   written in the contract.
13      Q.  (By Mr. Hurst)  And what was written in
14   the contract relevant to whatever point you were
15   trying to make?
16      A.  It did not state in the contract that we
17   had to be at work at 8:00 a.m. and end time's at
18   6:00 p.m.
19      Q.  And what was the point of your mentioning
20   that in the team meeting?
21      A.  Because of the way she had her foot down
22   that everybody had to be there at 8:00 a.m.  So I
23   referenced that part of the contract.
24      Q.  So you responded to her saying to
25   everyone, hey, we need to make sure that we are

ORAL AND VIDEOTAPED DEPOSITION OF PAMELA JAMES

Page 159

1  starting work at 8:00 a.m.; to which you responded,
2  wait a minute, there is nothing in the contract
3  that requires us independent contractors to be
4  starting work at 8:00 a.m.?
5      A.  I cannot tell you that's how the
6  conversation went because I do not remember the
7  conversation word for word.
8      Q.  But that's the gist of it:  She said
9  something about starting work at 8:00 a.m. and you
10 challenged her on that is not in the contract; is
11 that right?
12     A.  That's -- that's the gist of it.
13     Q.  And the point was you just wanted to show
14 her and everybody else in the team meeting that you
15 knew that this wasn't in the contract?
16     A.  No, sir.
17     Q.  What was the point?
18     A.  Everybody had the same contract.  It
19 was --
20     Q.  Right.
21     A.  -- just saying, hey, we're guided here by
22 a contract; that was the point.
23     Q.  What was the point?  What did you want to
24 accomplish by challenging her in that regard?
25     A.  Just reminding her that there is a

ORAL AND VIDEOTAPED DEPOSITION OF PAMELA JAMES

Page 160

1  contract and it would help, from time to time, that
2  if the team leads that are managing us would
3  reference the contract and tried to at least guide
4  us or manage, supervise based on the contract
5  that's given.
6      Q.  You think it would have been helpful to go
7  through the contract in team meetings?
8      A.  Yes.  It would have been helpful if we'd
9  all gone over it, yes, and come to an
10 understanding.
11     Q.  Would that have extended the time of team
12 meetings?
13          MR. O'BRIEN:  Objection.  Form.
14     A.  I -- I don't know.
15     Q.  (By Mr. Hurst)  Do you think other people
16 wanted team leads to go over the contract --
17     A.  I don't --
18     Q.  -- same contract everyone had?
19     A.  I don't know what other people thinks.
20     Q.  Do you recall challenging Faye or anyone
21 else at a team meeting about anything other than
22 the fact that the time of starting to work was not
23 included in the contract?
24     A.  Yes.
25     Q.  What else?

Page 161

1    A.  I -- there was some conversation involved.
2  I think it's this way -- as where she was saying we
3  have to request for time off.
4    Q.  And how did you respond to her saying
5  that?
6    A.  I told her I -- I am an independent
7  contractor; I shouldn't have to request for time
8  off.  It should be, hey, I need to be off this day,
9  this day and that day.  Because with the request,
10  that leaves a yes or no.  And what if you were to
11  say no?  I still need to be off.  So it's a request
12  is different from saying I need to be off these
13  days.  A request is giving permission as to whether
14  or not I can be off.
15    Q.  Those are two things that you challenged
16  Faye about at team meetings.  Can you think of
17  anything else about what you challenged Faye at a
18  team meeting?
19    A.  That wasn't Faye.  I am sorry.  The first
20  one with Faye was the working hours.  The incident
21  I just pointed out, that was on the second
22  deployment -- I am sorry; we're not there yet.  So
23  we stick with Faye.  That stands out specifically
24  in my mind about working hours.  I don't remember
25  other things as pointedly as I do remember that

Page 178

1  whenever you are available.
2             MR. HURST: This is great. Let's take
3  a 10-minute break. Thank you.
4             THE VIDEOGRAPHER: The time is 3:23
5  p.m. and we are off the record.
6             (Recess taken.)
7             THE VIDEOGRAPHER: The time is 3:37
8  p.m. and we are on the record.
9      Q. (By Mr. Hurst) Ms. James, we visited
10 earlier about the revelation that you have -- still
11 have the laptop computer that was sent to you in
12 connection with your last CRU deployment; is that
13 right?
14     A. That's correct.
15     Q. Do you remember answering discovery
16 requests that we sent out to you through your
17 attorney?
18     A. If I remember answering what?
19     Q. Interrogatories.
20     A. If I remember any questions I answered?
21     Q. Do you remember written questions that we
22 had sent to your attorney to send to you?
23     A. That's correct, yes.
24     Q. You do remember those, right?
25     A. Yes.

ORAL AND VIDEOTAPED DEPOSITION OF PAMELA JAMES

Page 228

1          REPORTER'S CERTIFICATION

2       IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF TEXAS
3                 SHERMAN DIVISION

4  C.M. COLLINS, N.J. LUNDY      )
   AND R.C.L. MAYS,              )
5  INDIVIDUALLY AND ON BEHALF    )
   OF ALL OTHERS SIMILARLY       )
6  SITUATED                      )
                                 ) CIVIL ACTION NO.
7  VS.                           ) 4:22-CV-1073
                                 )
8  CATASTROPHE RESPONSE UNIT,    )
   INC. AND CATASTROPHE          )
9  RESPONSE UNIT USA, INC.       )

10      -------------------------------------

11            DEPOSITION OF PAMELA JAMES
                 SEPTEMBER 20, 2023
12
        -------------------------------------
13

14       I, CHARIS M. HENDRICK, Certified Shorthand

15  Reporter in and for the State of Texas, do hereby

16  certify to the following:

17       That the witness, PAMELA JAMES, was by me

18  duly sworn and that the transcript of the oral

19  deposition is a true record of the testimony given

20  by the witness.

21       I further certify that pursuant to Federal

22  Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)

23  as well as Rule 30(e)(2), that review of the

24  transcript and signature of the deponent:

25     __xx__ was requested by the deponent and/or a

Bradford Court Reporting, LLC    972.931.2799    www.bradfordreporting.com

ORAL AND VIDEOTAPED DEPOSITION OF PAMELA JAMES

Page 229

```
 1   party before completion of the deposition.
 2         _____ was not requested by the deponent and/or
 3   a party before the completion of the deposition.
 4         I further certify that I am neither
 5   attorney  nor counsel for, nor related to or
 6   employed by any of the parties to the action in
 7   which this deposition is taken and further that I
 8   am not a relative or employee of any attorney of
 9   record in this cause, nor am I financially or
10   otherwise interested in the outcome of the action.
11         The amount of time used by each party at
12   the deposition is as follows:
13         Mr. Hurst - 5:37 hours/minutes
14
15
16         Subscribed and sworn to on this 28th day
17   of September, 2023.
18
19
20         _____
            CHARIS M. HENDRICK, CSR # 3469
21          Certification Expires: 10-31-23
            Bradford Court Reporting, LLC
22          7015 Mumford Street
            Dallas, Texas  75252
23          Telephone 972-931-2799
            Facsimile 972-931-1199
24          Firm Registration No. 38
25
```