

1011 W<small>ESTLAKE</small> D<small>RIVE</small>
A<small>USTIN</small>, T<small>EXAS</small> 78746
<small>PHONE</small>: 512.410.1960
<small>FAX</small>: 512.410.6171

K<small>ERRY</small> V. O'B<small>RIEN</small>
T<small>EXAS</small> B<small>AR</small> N<small>O</small>. 24038469
ko@obrienlawpc.com
T<small>EXAS</small>E<small>MPLOYEES</small>.<small>COM</small>

# PAMELA ANN MARIE JAMES'S 1ST AMENDED RESPONSE TO CRU USA'S 1st INTERROGATORIES

| | |
|---|---|
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, N. J. Lundy, and R. C. L. Mays, individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | Nov 27 2023 |
| From | Pamela Ann Marie James<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o H<small>ALLET</small> & P<small>ERRIN</small>, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 7 pages + audit trail |
| Certificate of Service | By my signature below, I hereby certify that these 1st Amended Responses to Interrogatories were served on the following via email transmission on the date above:<br><br>Monte K. Hurst<br>State Bar No. 00796802<br>monte.hurst@hallettperrin.com<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>kbrumbalow@hallettperrin.com<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*Kerry O'Brien* (signature)

Kerry V. O'Brien
COUNSEL FOR PLAINTIF

# JAMES'S 1st AMENDED RESPONSES TO
# CRU USA'S FIRST INTERROGATORIES

Notes: For any current or former CRU adjusters who appear in these responses to CRU USA's interrogatories, that individual's last-known address and phone number, if not otherwise stated in Plaintiffs' FRCP 26 disclosures, should be considered the last-known address and phone number as shown in the business records of Defendants. Legal objections and legal responses by Plaintiff's counsel are in italics and do not constitute responses to which Plaintiff's verification applies. All references to minimum wage violations are disregarded, as Plaintiff is not claiming minimum wage violations in this suit. James's responses below are in addition to any responsive information elicited through her testimony from her deposition on September 20, 2023.

**INTERROGATORY NO. 1**: Please provide the following for each person or company for which you have, within the last 10 years, been employed or otherwise provided services in exchange for renumeration (including, but not limited to, independent contractor services):

   a. Dates of employment/work as an independent contractor;
   b. Name of person/company;
   c. Position(s) held;
   d. Brief description of the job duties of each position held;
   e. Whether you were an employee or independent contractor;
   f. Location(s) where you performed services;
   g. Name of supervisor(s);
   h. Rate(s) of pay; and
   i. Reason(s) why you are no longer working or providing services for this person/company.

**RESPONSE**: *Objection. Given the request for 10 years of job history, this request is overly broad and bears no reasonable relation to the issues in dispute in this case. Furthermore, Plaintiff's pay rate, supervisor, and reason for separation bear no relation to the information necessary for Defendants in this unpaid overtime case, regardless of the time period during which such work occurred. Plaintiff will provide responsive information otherwise requested by this Interrogatory, for the period of January 1, 2020 (the earliest year in which the FLSA may apply in this case) to the present:*

Ms. James' began the first desk adjusting job of her career with Pilot in 2020 (classified as W-2), then she worked for Pilot a second time in 2021. James worked for CRU for about three weeks in 2021, from July 15 – August 13, 2021, then she worked for Eberl Claims Service (W-2) in 2021, then went back to Pilot (W-2), worked for Pilot to February 2022, then did a second stint of employment for CRU from February 2022 – August 26, 2022. Since August 2022, she has done work for Claim Consultant Group (classified as 1099) in October 2022 and also Eberl (on a sort of "limited" W-2 basis).

**INTERROGATORY NO. 2**: Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you

performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Furthermore, because Plaintiff did not track the start and stop time of the daily work shifts with specificity, Plaintiff will respond with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference. With the above considered, Plaintiff responds as follows:*

James recalls that she while her mandated hours were 8am-6pm, 6 days a week, for 9 hours a day (on a 10-hour work schedule with a 1-hour lunch break), she typically worked an average of 11 hours a day with extra work she would do after 6pm. James estimates that she would work a 6-day week, she would work no less than 65 hours total in the week.

She was required to check in through Microsoft Teams chat to essentially clock-in at the beginning of her work shift. There was a task tracker, and her emails, and her phone calls, and system log in/log out records, all of which would assist in verifying her estimate of the start time and stop time of her daily work period.

For her work relevant to this suit, James was employed by Catastrophe Response Unit USA, Inc., but was also subject to the direction and control of Canada-based CRU management staff who were employed by Catastrophe Response Unit, Inc.

**INTERROGATORY NO. 3**: Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that it asks her to identify the Defendant legally responsible for her damages pursuant to the Fair Labor Standards Act. It is Plaintiff's contention, through legal arguments put forth by counsel, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are legally responsible for Plaintiff's damages as "employers" under the Fair Labor Standards Act. With the above considered, Plaintiff responds as follows:*

Both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are responsible for James' unpaid overtime wages. The legal reasons that both companies within the CRU business operation are responsible are legal matters for her attorneys to address and are not within her knowledge as a layperson, but generally, it is likely that the Canadian CRU entity employed individuals who supervised and controlled the work of James.

Company information obtained during the appropriate phase of discovery in this case will show her day rate and the date of changes to that day rate during her employment with CRU USA, that will be used to calculate her unpaid overtime wages with more precision, to supplement her good

faith estimate of her work time, and Defendants should refer to those payroll and employment records for such information. However, she recalls her day rate being $500 CAD per day, which may not have changed during her employment.

The calculation method used to determine her unpaid overtime wages is anticipated to be:

(day rate x number of days worked) ÷ (number of hours per week) = regular rate
(regular rate ÷ 2) x (# of hours over 40) = unpaid overtime wages for the week

That calculation method is based on the Fair Labor Standard Act and is therefore provided through the knowledge and experience of her attorneys, as James does not possess the knowledge as a layperson to speak on how overtime is calculated under that law. She is relying on her attorneys to identify and perform those calculations, and she can only speak on her historical knowledge of her work with CRU.

However, given her minimum estimated weekly hours of 65 per week, and what may have been her only day rate, of $500 CAD per day, her unpaid overtime wages based on the calculation above would be $576.92 CAD per week.

She is also asking the court to double the amount of unpaid overtime wages due to her, called "liquidated damages," the basis for which is also something of which she does not have knowledge as a layperson and for which is relying on her attorneys.

**INTERROGATORY NO. 4**: For each Request for Admission that you denied, please explain the basis for your denial.

**RESPONSE**: *Plaintiff will state that each Request for Admission addressed in response to this interrogatory is a "discrete subpart" for purposes of Federal Rule of Civil Procedure 33. Therefore, Plaintiff's responses to this interrogatory constitute 4 additional interrogatories propounded by CRU USA. With that consideration stated, Plaintiff responds as follows:*

Re:   Response to RFA No. 4: CRU expected James to be at work by 8:00 a.m., Monday-Saturday.

Re: Response to RFA No. 5: James could not work another job while working for CRU.

Re: Response to RFA No. 6: Because she didn't work another job while working for CRU.

Re: Response to RFA No. 7: While James understands that her CRU contract referred to her as an independent contractor, CRU prevented her from experiencing employment as an independent contractor, given the high level of supervision and control that CRU exercised over her.

**INTERROGATORY NO. 5 (8th Interrogatory)**: Identify how many minutes each day you met with your supervisor, on average, while performing work for either of the Defendants.

**RESPONSE**: *Plaintiff objects to the extent that the verb "met" is ambiguous, in that it could mean (1) in-person meetings, (2) virtual video meetings, (3) audio-only meetings by phone or internet, and/or (4) asynchronous written communications between Plaintiff and a Team Lead or manager throughout the day, including written chat applications and emails. Considering these*

*objections, Plaintiff will respond with the understanding that "met" in the context of this interrogatory means live,* verbal *conversations between Plaintiff and a Team Lead or manager, regardless of whether it was in a one-on-one or group setting, and with the presumption that these were always remote and not in-person meetings. Plaintiff's response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated, Plaintiff responds as follows:*

James estimates that the morning meeting with supervisors would often last two hours in length. As it got closer to the end of her employment, the length of the morning meetings decreased to about an hour. Therefore, James would say that she spent an average of about 90 minutes in the daily morning meeting during her employment with CRU. She would otherwise speak verbally with a supervisor on average once per week.

**INTERROGATORY NO. 6 (9th Interrogatory)**: Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**: James says that CRU highly supervised her workday.

There was a tracking chart. The adjusters would put information about whatever claims they would touch throughout the day in the chart. The supervisors would closely monitor the tracker, and if a supervisor didn't think that an adjuster had produced enough activity entries by a certain time of the day, that adjuster would get a MS Teams message or a call to question them about it and pressure them to work harder (regardless of how hard the adjuster was actually working).

James had to make it known that she was online and "checked in" on MS Teams by 8am, because by 8:05 a.m. if she wasn't checked in, she would get a call wondering where she was.

In one meeting, a supervisor told James and the other adjusters that they are required to get approval in advance to take time off. James didn't accept that instruction, but that's what CRU told her.

Team leads would monitor the tracker and could contact James if they didn't feel like she had a sufficient quantity of activity on the tracker to that team lead's satisfaction. She was contacted twice on this basis by team lead Esmerelda. One Saturday, Esmerelda called her and asked her why she didn't have enough tasks on the tracker by 1:00 pm. Then on the following Monday, Esmerelda called her again, telling her that she didn't think she had enough activities on the tracker again.

James says that CRU tried to manage everything about the adjusters' workday, and she would hear Esmerelda and Olandria "Faye" Quinnie refer to the adjusters on James' team as their "staff," as if they were their employees.

**INTERROGATORY NO. 7 (10th Interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad, in that the specific identities of her children are private and are not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. With the above considered, Plaintiff responds as follows:*

James has two children who were already over the age of 18 by the time that she began working for CRU.

**INTERROGATORY NO. 8 (11th Interrogatory)**: Please provide the following information for each individual/organization responsible for caring for your child(ren) and/or other dependent(s) (either at your home or another location) during the days you claim to have performed work for either of the Defendants:

   a. Name of individual/organization;
   b. Date(s) the individual/organization provided care;
   c. Hours the individual/organization provided care;
   d. Method the individual/organization was paid for providing care; and
   e. Identity of each document or source of information that shows the foregoing information about your care.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad, in that where her children may or may not have gone to school or received childcare is not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff believes that CRU USA seeks this information in order to create a fractured and piecemeal rendering of her workday, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law.*

Given that James' children are grown, she has no information responsive to this request.

**INTERROGATORY NO. 9 (12th Interrogatory)**: Identify all of your sources of income from January 1, 2019 to the present.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad and unnecessarily invasive, if and to the extent that it requests information about what Plaintiff specifically made from non-concurrent employment outside of CRU that would bear no reasonable relation to Plaintiff's claims or CRU's defenses in this case. Plaintiff further contends that it is overly broad in scope of time, and considering that objection, reasonably responds only from January 1, 2020 (the earliest year to which the FLSA may apply in this case) to the present. With the above considered, Plaintiff responds as follows:*

All of James' income since January 1, 2020 has been from the desk adjusting work identified in response to Interrogatory No. 1.

**INTERROGATORY NO. 10 (13th Interrogatory)**: Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**RESPONSE**: Refer to any materials produced by Plaintiff as potentially relevant materials.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated,* § § § § | | |
| **Plaintiffs,** § | **CIVIL ACTION NO.** | |
| § | **4:22-cv-01073-SDJ** | |
| v. § | | |
| § | **Collective Action under** | |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., § § § § | **29 U.S.C. § 216(b)** **JURY DEMANDED** | |
| **Defendants.** § § | | |

## INTERROGATORY VERIFICATION

Pursuant to 28 U.S.C. §1746, PAMELA ANN MARIE JAMES declares:

1. "My name is Pamela Ann Marie James and I am competent to make this declaration. These 1st Amended Responses to Defendant CRU USA's First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on

   Nov 27 2023 in Dekalb County, State of Georgia ."

Declarant says nothing further.

*Pamela James*
_____
PAMELA ANN MARIE JAMES, Declarant



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | [rev 11-2023] James 1st Amd CRU Interrogatory Responses.pdf |
| **File Name** | [rev 11-2023] James 1st Amd CRU Interrogatory Responses.pdf |
| **Document ID** | 12529ad21e244c3a9e29dcc3ba7d2b76 |
| **Fingerprint** | a329257d8819f20aa4c01028298c2b3d |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created by Kerry O'Brien (ko@obrienlawpc.com)<br>Fingerprint: 3f8021a20207bc67db169693b748987a | Nov 26 2023<br>05:36PM UTC |
| **Document Sent** | Document Sent to Pamela James (pamjames128@yahoo.com) | Nov 26 2023<br>05:36PM UTC |
| **Document Viewed** | Document Viewed by Pamela James (pamjames128@yahoo.com)<br>IP: 70.74.161.105 | Nov 26 2023<br>08:49PM UTC |
| **Document Signed** | Document Signed by Pamela James (pamjames128@yahoo.com)<br>IP: 172.58.139.10<br>*Pamela James* | Nov 27 2023<br>08:33AM UTC |
| **Document Completed** | This document has been completed.<br>Fingerprint: a329257d8819f20aa4c01028298c2b3d | Nov 27 2023<br>08:33AM UTC |