

1011 WESTLAKE DRIVE
AUSTIN, TEXAS 78746
PHONE: 512.410.1960
FAX: 512.410.6171

KERRY V. O'BRIEN
TEXAS BAR NO. 24038469
KO@OBRIENLAWPC.COM
TEXASEMPLOYEES.COM

| | |
|---|---|
| | **PLAINTIFF-LUNDY'S 2ND AMENDED RESPONSE TO CRU USA'S 1ST INTERROGATORIES** |
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, N. J. Lundy, and R. C. L. Mays, individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | Nov 28 2023 |
| From | Plaintiff – N. J. Lundy<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o HALLET & PERRIN, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 12 pages + audit trail |
| Certificate of Service | By my signature below, I hereby certify that these 2nd Amended Responses to CRU USA's Interrogatories were served on the following via email transmission on the date above:<br><br>Monte K. Hurst<br>State Bar No. 00796802<br>*monte.hurst@hallettperrin.com*<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>*kbrumbalow@hallettperrin.com*<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*/s/ Kerry O'Brien*

Kerry V. O'Brien

# LUNDY'S 2nd AMENDED RESPONSES TO CRU USA'S FIRST INTERROGATORIES

Note: For any current or former CRU adjusters who appear in these responses to CRU USA's interrogatories, that individual's last-known address and phone number, if not otherwise stated in Plaintiff's FRCP 26 disclosures, should be considered the last-known address and phone number as shown in the business records of Defendants.

Note: Legal objections and legal responses by Plaintiff's counsel are in italics and do not constitute responses to which Plaintiff's verification applies. In addition, all references to minimum wage violations are disregarded, as Plaintiff is not claiming minimum wage violations in this suit. Furthermore, Lundy's responses below are in addition to any responsive information elicited through her testimony from her deposition on September 11, 2023.

**INTERROGATORY NO. 1**: Please provide the following for each person or company for which you have, within the last 10 years, been employed or otherwise provided services in exchange for renumeration (including, but not limited to, independent contractor services):

a. Dates of employment/work as an independent contractor;
b. Name of person/company;
c. Position(s) held;
d. Brief description of the job duties of each position held;
e. Whether you were an employee or independent contractor;
f. Location(s) where you performed services;
g. Name of supervisor(s);
h. Rate(s) of pay; and
i. Reason(s) why you are no longer working or providing services for this person/company.

**RESPONSE**: *Objection. Given the request for 10 years of job history, this request is overly broad and bears no reasonable relation to the issues in dispute in this case. Furthermore, Plaintiff's pay rate, supervisor, and reason for separation bear no relation to the information necessary for Defendants in this unpaid overtime case, regardless of the time period during which such work occurred. Plaintiff will provide responsive information otherwise requested by this Interrogatory, for the period of January 1, 2020 (the earliest year in which the FLSA may apply in this case) to the present:*

From January 1, 2020 to the present:

**W-2 desk adjuster with private firm with a government contract**
February 27, 2023 to the present
Hourly pay with overtime and holidays paid

**Complex Desk Adjuster** (1099)
October 24, 2022 – February 25, 2023
**CCG**

**Claims Advisor** – (1099) Day Rate
July 10, 2021 – October 5, 2022
**CRU**
TD Insurance

**Quality Assurance** – Hourly (1099)
October 27, 2020 – July 1, 2021

**IAS Claims** – Day Rate
**PA Insurance Specialist** (1099)
August 2019 - October 15, 2020
**CDM Smith – FEMA**

*Plaintiff Lundy is withholding responsive information pursuant to her objections, specifically, her work history prior to January 1, 2020.*

**INTERROGATORY NO. 2**: Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Furthermore, because Plaintiff did not track the start and stop time of the daily work shifts with specificity, Plaintiff will respond with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference. With the above considered, Plaintiff responds as follows:*

Plaintiff Lundy's schedule, as directed by CRU, was Monday through Saturday from 10:00 a.m. to 8:00 p.m Eastern Time for the Calgary hailstorm. However, on average, she would begin work at 9:30 a.m. Eastern Time, and occasionally stay after 8:00 p.m. For the hurricane that hit the Canadian east coast provinces, CRU directed her work schedule to be 7:00 a.m. to 5:00 p.m. Monday through Saturday, Eastern Time. She would typically start her work early, with on average about 90 minutes of extra work time pre-shift per week.

Plaintiff Lundy reported to CRU general managers Pardeep Singh, Jyoti Rayaprol, Olandria Quinnie, and Christopher Smith. She also reported to CRU team leads Lajontay Harris, Priscilla Levy, Duane (last name not recalled at this time). She was paid by CRU USA and performed work for the overall CRU operation, which includes both defendants in this case. Plaintiff Lundy would expect that the dates and times at which she was working may be aided by (1) network information demonstrating Lundy logging into and out of CRU's and the client's networks and computer applications, (2) MS Teams chat (including the requirement to check in at the beginning of the day and check out at the end of the day, although work could still take place outside of that time), (3) the tracker Excel spreadsheet, (4) Lundy's emails demonstrating the date and time of email activity, and (5) any data within CRU's or the client's systems and applications that records the date and time of activity conducted by Lundy on her claims.

For her work relevant to this suit, Lundy was employed by Catastrophe Response Unit USA, Inc., but was also subject to the direction and control of Canada-based CRU management staff who were employed by Catastrophe Response Unit, Inc.

**INTERROGATORY NO. 3**: Please identify the start date and end date for each alleged minimum wage and/or overtime violation under the Fair Labor Standards Act.

**RESPONSE**: Plaintiff Lundy contends that she was working over 40 hours per week during each workweek of her employment with CRU USA. Therefore, CRU violated the overtime provisions of the Fair Labor Standards Act in each complete workweek of Lundy's employment with CRU USA.

**INTERROGATORY NO. 4**: Please describe the basis for each alleged minimum wage and/or overtime violation under the Fair Labor Standards Act.

**RESPONSE**: Plaintiff Lundy was not paid a time-and-a-half overtime rate when she would work over 40 hours in a workweek for CRU USA.

**INTERROGATORY NO. 5**: Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff Lundy objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that it asks her to identify the Defendant legally responsible for her damages pursuant to the Fair Labor Standards Act. It is Plaintiff's contention, through legal arguments put forth by counsel, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are legally responsible for Plaintiff's damages as "employers" under the Fair Labor Standards Act. With the above considered, Plaintiff responds as follows:*

Please refer to Plaintiff Lundy's FRCP 26 damages disclosures in this case. In addition, both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are responsible for Plaintiff Lundy's unpaid overtime wages. Company information obtained during the appropriate phase of discovery in this case will show her day rate and the date of changes to that day rate during her employment with CRU USA, that will be used to calculate her unpaid overtime wages, and Defendants should refer to those payroll and employment records for such information. The legal reasons that both companies within the CRU business operation are responsible are legal matters for her attorneys to address.

*Plaintiff Lundy as a layperson is not withholding responsive information pursuant to her objections.*

**INTERROGATORY NO. 6**: Please provide the following for each medical, dental or any other outside appointment or meeting that you attended or participated in during the time you claim to have been employed or provided work for either of the Defendants:

   a. Date and commencement time;
   b. Duration;
   c. Type of appointment; and
   d. Whether you attended or participated in person, by telephone, or by video.

**RESPONSE**: *Plaintiff Lundy objects to the extent that this interrogatory is overly broad and overly invasive, in that the occurrence of her personal medical or dental appointments is not information reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff Lundy believes that CRU USA seeks this information in order to create a fractured and piecemeal reconstruction of her daily compensable work periods, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law, and also contrary to how CRU USA records compensable time for its now-hourly desk adjusters, and is therefore not relevant to Plaintiff's claims or CRU's defenses. With the above considered, Plaintiff responds as follows:*

It is Plaintiff Lundy's recollection that on any occasion that she had a dental or medical appointment to attend, she arranged to make up that time by either working early, working late, scheduling it for her lunch hour, or not taking lunch on that day or another day that week.

*Plaintiff Lundy is withholding responsive information pursuant to her objections, to the extent that she could even identify specific appointments at this point in time.*

**INTERROGATORY NO. 7**: For each Request for Admission that you denied, please explain the basis for your denial.

**RESPONSE**: *Plaintiff Lundy will state that each Request for Admission addressed in response to this interrogatory is a "discrete subpart" for purposes of Federal Rule of Civil Procedure 33. Therefore, Plaintiff Lundy's responses to this interrogatory constitute 8 additional interrogatories propounded by CRU USA. With that consideration stated, Plaintiff Lundy responds as follows:*

Re: Response to RFA No. 3: Lundy recalls that it was $20,000.

Re: Response to RFA No. 4: They were not routinely approved.

Re: Response to RFA No. 5: Lundy was absolutely expected by CRU to be working certain hours of the day, as specified in her response to Interrogatory No. 2, above.

Re: Response to RFA No. 6: Lundy was told by CRU management that she was not allowed to work another job while working for CRU, and the demands of CRU's work did not leave room for a second job anyway.

Re: Response to RFA No. 7: Because she didn't work another job while working for CRU.

Re: Response to RFA No. 8: Lundy was told by CRU management that she was not allowed to work another job while working for CRU, and the demands of CRU's work did not leave room for a second job anyway.

Re: Response to RFA No. 10: Denied to the extent that CRU treated her like an employee. Please refer to her response to Interrogatory No. 9 for further bases for her denial of Request for Admission No. 10.

Re: Response to RFA No. 11: Denied because CRU treated her like an employee. Please refer to her response to Interrogatory No. 9 for further bases for her denial of Request for Admission No. 11.

**INTERROGATORY NO. 8 (15th Interrogatory)**: Identify how many minutes each day you met with your supervisor, on average, while performing work for either of the Defendants.

**RESPONSE**: *Plaintiff Lundy objects to the extent that the verb "met" is ambiguous, in that it could mean (1) in-person meetings, (2) virtual video meetings, (3) audio-only meetings by phone or internet, and/or (4) asynchronous written communications between Plaintiff Lundy and a Team Lead or manager throughout the day, including written chat applications and emails. Considering these objections, Plaintiff Lundy will respond with the understanding that "met" in the context of this interrogatory means live, verbal conversations between Plaintiff Lundy and a Team Lead or manager, regardless of whether it was in a one-on-one or group setting, and with the presumption that these were always remote and not in-person meetings. Lundy's response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated, Plaintiff Lundy responds as follows:*

Daily morning meetings could last anywhere from 30 minutes to 2 hours. Otherwise, verbal "meeting" total times on any given workday could add up to the 20-30 minutes as an average range, depending upon what was going on or being discussed.

**INTERROGATORY NO. 9 (16th Interrogatory)**: Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**: CRU engaged in a high level of supervision of Lundy and her fellow desk adjusters. As examples:

1. CRU management stated that they were to work 10 claims per day and if they did not, they would end up on a "management list" and had to explain why they did not work a minimum of 10 claims per day.
2. CRU management stated that they had to complete 2 supplements per day, 2 closings per day, and 2 contents claim closures per day during various months and if they did not hit those metrics then they were put on a list and had to explain to management why they did not hit that metric.

3. When giving metrics, CRU management stated that if they did not hit the metrics, management would consider the day worked as a half day and would dock the adjuster half a day's pay.

4. If an adjuster had the day off, was fired, or quit, CRU management would send out random lists of the other adjuster's claims and then assign them to other adjusters to work. If an adjuster refused to do another adjuster's work, they would have a meeting with management or a Team Lead and would be pressured to comply or otherwise face discipline.

5. Also, if an adjuster had the day off, the Team Leads would reassign that adjuster's claim tasks to Lundy and her fellow adjusters who were present and require that they complete them, along with their regularly assigned claim duties.

6. Adjusters like Lundy did not have the discretion to decide not to handle a claim that CRU assigned to her.

7. Adjusters reported to CRU directly and did not communicate with TD Insurance.

8. When handling claims, desk adjusters like Lundy had to use letter templates that were previously approved.

9. CRU used Microsoft Teams to track the adjuster's comings and goings. The check-in and check-out chat for the Calgary hail event along with the individual team chats required each adjuster to state in the chat that they were "checking in" and "checking out," almost like punching in and punching out of a time clock at the beginning and ending of a work shift.

10. Lundy and her fellow desk adjusters had to ask for approval in advance to take time off, even though the time off was unpaid.

11. CRU would send out random spreadsheets with metrics and tasks that they wanted adjusters to complete along with a task completion due date. CRU management and Team Leads made it very clear that you had to meet these deadlines or face pressure or discipline for failing to do so.

12. When requesting an initial inspection estimate revision or re-inspection estimate revision, adjusters were instructed to email their Team Lead, and the Team Lead would email the general manager to decide if the estimate, narrative, or photo report revisions were warranted. There were many instances where the field adjuster made errors on inspection documents, but when the request was sent to CRU management for revisions, CRU management said to just process the inspection documents as is and move the claim forward.

13. CRU provided inspection and supplement review templates that adjusters had to use or else their estimate reviews would be rejected and the claim could not move forward.

14. If Lundy was unable to work, she had to contact the Team Lead or manager with CRU that oversaw the team.

15. Team Lead Lajontay Harris would frequently send Lundy messages requesting claim numbers so that he could review her work on her claims.

16. Team Leads and managers would contact Lundy throughout the day to question why she took certain actions on her claims. She was required to promptly respond to any inquiry from them.

17. The desk adjusters like Lundy were required to enter in the claim numbers of supplements that were completed and then approved by the supplement team. If the adjuster did not complete at least 2 supplements per day, CRU management would make the adjuster explain why and defend themselves. Adjusters like Lundy also had to complete a supplement tracker.

18. On the team tracker, Lundy and her fellow desk adjusters were required to record, throughout the day, information about every task that they completed. If CRU management did

not feel that the desk adjuster was performing a sufficient quantity of activity on any particular day per the tracker, that adjuster could be challenged or verbally disciplined, and even have their pay docked as a result.

19.     At the start of the Calgary hail event, manager Skip McHardy would set up daily meetings that took place at 8:00 a.m./8:30 a.m. and would go over the work that the adjusters were to complete along with CRU's metrics for claims worked per day and tasks that were required to be completed that day. McHardy did state that if Lundy and her fellow desk adjusters did not meet CRU's metrics that CRU would dock the desk adjuster's pay – either a half day or whole day's pay, depending on the circumstances.

20.     Lajontay Harris had signed Lundy up to attend management meetings so that she could assist him while he was out of office. This was not optional for Lundy, and it was over and above Lundy's role as a claim advisor. Lundy did not receive a change in pay or title and was in fact informed about this by being included on the CRU Team Lead/CRU management meeting invite in Microsoft Outlook without her prior knowledge or approval.

21.     Manager Olandria "Faye" Quinnie also required Lundy train two new desk adjusters on another assignment in 2022. Lundy was not within the scope of her duties as a desk adjuster and she was not given a choice about this, either.

22.     Lundy and her fellow desk adjusters were told that they could not work a second job while working for CRU.

23.     The standards and procedures above were enforced by Lundy's Team Leads and managers.

**INTERROGATORY NO. 10 (17th Interrogatory)**: Identify each individual who has knowledge of the hours you performed work for either of the Defendants.

**RESPONSE**: To Plaintiff Lundy's belief, Basil Riley, Carla Collins, Lesa Dean, Sheena Nickelberry, and Priscilla Leyva, as well as Lundy's Team Leads and managers if they provide truthful and accurate information. There may be other individuals who have knowledge of Lundy's hours of which Lundy is not personally aware at this time.

**INTERROGATORY NO. 11 (18th Interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: *Plaintiff Lundy objects to the extent that this interrogatory is overly broad, in that the specific identities of her children are private and are not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. With the above considered, Plaintiff responds as follows:*

Lundy has one child, birth year 2006.

**INTERROGATORY NO. 12 (19th Interrogatory)**: Please provide the following information for each individual/organization responsible for caring for your child(ren) and/or other dependent(s) (either at your home or another location) during the days you claim to have performed work for either of the Defendants:

a. Name of individual/organization;
b. Date(s) the individual/organization provided care;
c. Hours the individual/organization provided care;
d. Method the individual/organization was paid for providing care; and
e. Identity of each document or source of information that shows the foregoing information about your care.

**RESPONSE**: *Plaintiff Lundy objects to the extent that this interrogatory is overly broad, in that where her children may or may not have gone to school or received childcare is not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff Lundy believes that CRU USA seeks this information in order to create a fractured and piecemeal rendering of her workday, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law. With the above considered, Plaintiff provides the following responsive information:*

Lundy's child attended private school during the relevant time period for this lawsuit.

*Lundy is withholding responsive information pursuant to her objections.*

**INTERROGATORY NO. 13 (20th Interrogatory)**: Identify all of your sources of income from January 1, 2019 to the present.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad and unnecessarily invasive, if and to the extent that it requests information about what Plaintiff specifically made from non-concurrent employment outside of CRU that would bear no reasonable relation to Plaintiff's claims or CRU's defenses in this case. Plaintiff further contends that it is overly broad in scope of time, and considering that objection, reasonably responds only from January 1, 2020 (the earliest year to which the FLSA may apply in this case) to the present. With the above considered, Plaintiff responds as follows:*

All of Plaintiff Lundy's income from January 1, 2020 through the present has been from desk adjuster work.

*Plaintiff Lundy is withholding responsive information pursuant to her objections, for the pre-2020 period.*

**INTERROGATORY NO. 14 (21st Interrogatory)**: Please describe in detail any and all communication that you have had with employees or former employees or agents of Defendants or their affiliates relating to the subject matter of this lawsuit. Your answer shall include, but be not limited to, the dates of such communications, the persons involved in such communications, and the subject matters of such communications.

**RESPONSE**: *Plaintiff objects to the extent that this request is overly broad and does not provide any specificity with respect to the information requested. Specifically, the subject matter of the lawsuit involves, in part, Plaintiff's daily employment with CRU, and therefore every communication during that employment, including every communication with every Team Lead*

*and manager, could be arguably be "relat[ed] to the subject matter of this lawsuit." Therefore, Plaintiff will respond to this interrogatory with the reasonable understanding that it is requesting communications that specifically concern this lawsuit or the possibility of participating in this lawsuit. With the above considered, Plaintiff responds as follows:*

Plaintiff Lundy does not recall any communications responsive to this interrogatory.

*Plaintiff Lundy is not withholding responsive information pursuant to her objections.*

**INTERROGATORY NO. 15 (22nd Interrogatory)**: If it is your contention that the Defendants are joint and severally liable in this lawsuit, please describe the facts upon which you rely in making this assertion.

**RESPONSE**: Plaintiff Lundy is not a lawyer and therefore cannot speak to the intricacies of the overtime law the Fair Labor Standards Act. But to the extent that Team Leads and managers are employed by or controlled by Catastrophe Response Unit, Inc., and Plaintiff Lundy's working conditions were subject to the control of Catastrophe Response Unit, Inc., and Catastrophe Response Unit, Inc. maintained the relevant employment records, it is Plaintiff Lundy's position, through her lawyers' arguments, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. should be legally responsible for paying the overtime damages in this lawsuit.

**INTERROGATORY NO. 16 (23rd Interrogatory)**: Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**RESPONSE**: Refer to any materials produced by Plaintiff as potentially relevant materials.

**INTERROGATORY NO. 17 (24th Interrogatory)**: Please identify (a) the date on which you first hired an attorney to represent you in this matter, and (b) each attorney who has represented you in this matter.

**RESPONSE**: December 20, 2022. Kerry O'Brien and Travis Gasper.

**INTERROGATORY NO. 18 (25th Interrogatory)**: Identify the manner in which your attorney or someone from your attorney's office first contacted you regarding representation in this lawsuit (i.e., phone call, e-mail message, text message, etc.).

**RESPONSE**: Phone call.

**INTERROGATORY NO. 19**: If you reported or complained about an alleged minimum wage and/or overtime violation under the Fair Labor Standards Act to a government agency, then please identify each such agency, the date(s) of such reports or complaints, and the outcome or status of each report or complaint.

***Plaintiff Lundy objects that CRU USA has exceeded the total allowable number of interrogatories pursuant to Federal Rule of Civil Procedure 33. While in no way waiving her objection as to future interrogatories, Plaintiff Lundy voluntarily chooses to respond to CRU***

*USA's 26th and 27th Interrogatories, below.*

**RESPONSE**: Plaintiff Lundy has not reported about or filed any such complaints with a government agency.

*Plaintiff Lundy is withholding responsive information pursuant to her objections.*

**INTERROGATORY NO. 20**: If you reported or complained to either of the Defendants (including, but not limited to, supervisors or administrative departments such as human resources, payroll, timekeeping or benefits) about an alleged minimum wage and/or overtime violation under the Fair Labor Standards Act, then please state whether the report or complaint was written or oral, when the report or complaint was made, to whom the report or complaint was made, and any response to the report or complaint.

**RESPONSE**: Plaintiff Lundy does not recall reporting anything as an overtime violation internally within CRU.

*Plaintiff Lundy is withholding responsive information pursuant to her objections.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated,* | § § § § | |
| **Plaintiffs,** | § § | CIVIL ACTION NO. 4:22-cv-01073-SDJ |
| v. | § § | |
| | § | Collective Action under |
| **CATASTROPHE RESPONSE UNIT, INC.** and **CATASTROPHE RESPONSE UNIT USA, INC.**, | § § § § | 29 U.S.C. § 216(b) |
| | § | JURY DEMANDED |
| **Defendants.** | § § | |

---

## INTERROGATORY VERIFICATION
---

Pursuant to 28 U.S.C. §1746, NATINE J. LUNDY declares:

1. "My name is Natine J. Lundy and I am competent to make this declaration. These 2nd Amended Responses to Defendant CRU USA's First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on __Nov 28 2023__ in __Osceola__ County, State of __Florida__."

Declarant says nothing further.

*/s/ Natine Lundy*
_____
NATINE J. LUNDY, Declarant



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | 2nd Amended Interrogatory Responses (Lundy) |
| **File Name** | [rev 11-2023] P-Lundy 2nd Amd Resp to CRU USA 1st Rogs.pdf |
| **Document ID** | 617ae8d40df848be97d6642c67ae214f |
| **Fingerprint** | 18987a0bbc7ffaefc9cb21acfe3a013f |
| **Status** | Completed |

## Document History

**Document Created**  
Document Created by Kerry O'Brien (ko@obrienlawpc.com)  
Fingerprint: 235a448f18a3828fe272f3ff0a3fe876  
Nov 28 2023 09:23PM UTC

**Document Sent**  
Document Sent to Natine Lundy (nlundy81@gmail.com)  
Nov 28 2023 09:23PM UTC

**Document Viewed**  
Document Viewed by Natine Lundy (nlundy81@gmail.com)  
IP: 97.103.210.52  
Nov 28 2023 09:34PM UTC

**Document Signed**  
Document Signed by Natine Lundy (nlundy81@gmail.com)  
IP: 97.103.210.52  
*Natine Lundy*  
Nov 28 2023 09:35PM UTC

**Document Completed**  
This document has been completed.  
Fingerprint: 18987a0bbc7ffaefc9cb21acfe3a013f  
Nov 28 2023 09:35PM UTC

Processed by xodo sign