O'BRIEN LAW FIRM

1011 WESTLAKE DRIVE
AUSTIN, TEXAS 78746
PHONE: 512.410.1960
FAX: 512.410.6171

KERRY V. O'BRIEN
TEXAS BAR NO. 24038469
KO@OBRIENLAWPC.COM
TEXASEMPLOYEES.COM

| | |
|---|---|
| **JILL MANSFIELD'S 1ST AMENDED RESPONSE TO CRU USA'S 1ST INTERROGATORIES** | |
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, N. J. Lundy, and R. C. L. Mays, individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | Nov 26 2023 |
| From | Jill Mansfield<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o HALLET & PERRIN, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 8 response pages + audit trail |
| Certificate of Service | By my signature below, I hereby certify that these 1st Amended Responses to Interrogatories were served on the following via email transmission on the date above:<br><br>Monte K. Hurst<br>State Bar No. 00796802<br>*monte.hurst@hallettperrin.com*<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>*kbrumbalow@hallettperrin.com*<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*Kerry O'Brien*

Kerry V. O'Brien
COUNSEL FOR PLAINTIFFS

# MANSFIELD'S 1st AMENDED RESPONSES TO
# CRU USA'S FIRST INTERROGATORIES

Notes: For any current or former CRU adjusters who appear in these responses to CRU USA's interrogatories, that individual's last-known address and phone number, if not otherwise stated in Plaintiffs' FRCP 26 disclosures, should be considered the last-known address and phone number as shown in the business records of Defendants. Legal objections and legal responses by Plaintiff's counsel are in italics and do not constitute responses to which Plaintiff's verification applies. All references to minimum wage violations are disregarded, as Plaintiff is not claiming minimum wage violations in this suit. Mansfield's responses below are in addition to any responsive information elicited through her testimony from her deposition on October 29, 2023.

**INTERROGATORY NO. 1**: Please provide the following for each person or company for which you have, within the last 10 years, been employed or otherwise provided services in exchange for renumeration (including, but not limited to, independent contractor services):

   a. Dates of employment/work as an independent contractor;
   b. Name of person/company;
   c. Position(s) held;
   d. Brief description of the job duties of each position held;
   e. Whether you were an employee or independent contractor;
   f. Location(s) where you performed services;
   g. Name of supervisor(s);
   h. Rate(s) of pay; and
   i. Reason(s) why you are no longer working or providing services for this person/company.

**RESPONSE**: *Objection. Given the request for 10 years of job history, this request is overly broad and bears no reasonable relation to the issues in dispute in this case. Furthermore, Plaintiff's pay rate, supervisor, and reason for separation bear no relation to the information necessary for Defendants in this unpaid overtime case, regardless of the time period during which such work occurred. Plaintiff will provide responsive information otherwise requested by this Interrogatory, for the period of January 1, 2020 (the earliest year in which the FLSA may apply in this case) to the present:*

See Mansfield's resume, which is being contemporaneously served with these interrogatory responses.

**INTERROGATORY NO. 2**: Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such*

*responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Furthermore, because Plaintiff did not track the start and stop time of the daily work shifts with specificity, Plaintiff will respond with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference. With the above considered, Plaintiff responds as follows:*

Mansfield would typically work a schedule of Monday–Saturday, 5am–4pm Pacific Time, 11 hours a day (sometimes 10 hours when she would take a lunch break). Occasionally she would work Sunday, and CRU should have a record of which Sundays she worked. Beyond her basic 10-11 hours a day, she recalls that she would probably work on average an extra hour on a day twice a week. Therefore, her minimum estimate of hours based on 10 hours a day, 6 days a week, with an extra 2 hours a week from working past her scheduled stop time, is 62 hours. That number does not include days on which she did not take a lunch break, or weeks in which she also worked Sunday. This was her work situation throughout her employment with CRU.

Mansfield was required to check in through the Microsoft Teams chat at 5am Pacific Time to essentially clock-in at the beginning of her work shift, then clock-out in the same manner at the end of her work shift. There was a task tracker that tracked her activity throughout the day, and her emails, and her phone calls, and system log in/log out records, all of which would assist in verifying her estimate of the start time and stop time of her daily work period.

For her work relevant to this suit, Mansfield was employed by Catastrophe Response Unit USA, Inc., but was also subject to the direction and control of Canada-based CRU management staff who were employed by Catastrophe Response Unit, Inc.

**INTERROGATORY NO. 3**: Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that it asks her to identify the Defendant legally responsible for her damages pursuant to the Fair Labor Standards Act. It is Plaintiff's contention, through legal arguments put forth by counsel, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are legally responsible for Plaintiff's damages as "employers" under the Fair Labor Standards Act. With the above considered, Plaintiff responds as follows:*

Both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are responsible for Mansfield's unpaid overtime wages. The legal reasons that both companies within the CRU business operation are responsible are legal matters for her attorneys to address and are not within her knowledge as a layperson, but generally, it is likely that the Canadian CRU entity employed individuals who supervised and controlled the work of Mansfield.

Company information obtained during the appropriate phase of discovery in this case will show her day rate and the date of changes to that day rate during her employment with CRU USA, that will be used to calculate her unpaid overtime wages with more precision, to supplement her good faith estimate of her work time, and Defendants should refer to those payroll and employment

records for such information.

The calculation method used to determine her unpaid overtime wages is anticipated to be:

> (day rate x number of days worked) ÷ (number of hours per week) = regular rate
> (regular rate ÷ 2) x (# of hours over 40) = unpaid overtime wages for the week
>
> That calculation method is based on the Fair Labor Standard Act and is therefore provided through the knowledge and experience of her attorneys, as Mansfield does not possess the knowledge as a layperson to speak on how overtime is calculated under that law. She is relying on her attorneys to identify and perform those calculations, and she can only speak on her historical knowledge of her work with CRU.

However, just as an example for computation purposes, and given her minimum estimated weekly hours of 62 hours per week, if her day rate was $500 CAD per day, her unpaid overtime wages based on the calculation above would be $532.26 CAD per week.

She is also asking the court to double the amount of unpaid overtime wages due to her, called "liquidated damages," the basis for which is also something of which she does not have knowledge as a layperson and for which is relying on her attorneys.

**INTERROGATORY NO. 4**: For each Request for Admission that you denied, please explain the basis for your denial.

**RESPONSE**: *Plaintiff will state that each Request for Admission addressed in response to this interrogatory is a "discrete subpart" for purposes of Federal Rule of Civil Procedure 33. Therefore, Plaintiff's responses to this interrogatory constitute 5 additional interrogatories propounded by CRU USA. With that consideration stated, Plaintiff responds as follows:*

Re: Response to RFA No. 2: Ms. Mansfield simply doesn't recall what recommendation authority level applied to her.

Re: Response to RFA No. 4: CRU expected Mansfield, who is in California to work at least from 5am-4pm Pacific Time, and had to "check in" in the morning on MS Teams by saying "good morning" in the chat to show that she was at work by 5am. She could not choose the times of her work shift.

Re: Response to RFA No. 5: The supervisors would often say during morning meetings that CRU did not allow the desk adjusters to have second jobs while working for CRU and that CRU would fire the adjuster if they found out they had a second job.

Re: Response to RFA No. 6: Because she didn't work another job while working for CRU.

Re: Response to RFA No. 7: Mansfield didn't think of that issue one way or another while she worked for CRU, but she certainly didn't feel like an independent contractor given the way that CRU controlled her work.

**INTERROGATORY NO. 5 (9th interrogatory):** Identify how many minutes each day you met

with your supervisor, on average, while performing work for either of the Defendants.

**RESPONSE**: *Plaintiff objects to the extent that the verb "met" is ambiguous, in that it could mean (1) in-person meetings, (2) virtual video meetings, (3) audio-only meetings by phone or internet, and/or (4) asynchronous written communications between Plaintiff and a Team Lead or manager throughout the day, including written chat applications and emails. Considering these objections, Plaintiff will respond with the understanding that "met" in the context of this interrogatory means live,* verbal *conversations between Plaintiff and a Team Lead or manager, regardless of whether it was in a one-on-one or group setting, and with the presumption that these were always remote and not in-person meetings. Plaintiff's response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated and without waiving those objections, Plaintiff responds as follows:*

The morning meeting lasted anywhere from 30 minutes to 2 hours. Otherwise, her average daily time verbally talking to team leads or managers was probably another 10 minutes.

**INTERROGATORY NO. 6 (10th interrogatory)**: Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**: According to Mansfield, the CRU team leads and managers were really, really strict. Some team leads or managers didn't even want you to leave your desk. Olandria "Faye" Quinnie was the most difficult, as she would often call Mansfield to check on her to see if she was at her desk. This was even more problematic when Mansfield took a lunch break, as she was two hours behind Faye, and therefore Faye in Central Time was often expecting Mansfield to be at her desk during Mansfield's lunch break on Pacific Time.

Mansfield was required to check in over Microsoft Teams chat first thing in the morning to show that she was at work by 5am Pacific Time. At the end of her shift, she had to say "goodbye" to essentially clock-out, even though Mansfield would occasionally work after she said "goodbye" over the chat.

If Mansfield wanted to take off time from work, CRU required her to ask for permission in advance.

Neither Mansfield nor her fellow desk adjusters on her team had the right to decline work that they were assigned.

Mansfield had to put all of her claims activities into a "tracker" that was heavily monitored by the supervisors. CRU also required her to perform a certain amount of activities per day (she doesn't remember the specific quota amount). Whether she met the quota or not was based on what she put in the tracker. If she or her fellow desk adjusters didn't keep up with their quota, a supervisor would call the adjuster to question them about it and pressure them to work harder, or perhaps terminate them altogether. Mansfield has witnessed her supervisors threatening to dock the adjusters' pay if they didn't keep up with the quotas, and she has heard of that actually

happening although it didn't specifically happen to her.

Mansfield recalls that working for CRU was stressful, partly because the team leads and managers were always on her and her to do this or do that. When a supervisor would contact her, she was expected to reply quickly. The supervisors pushed very high, stressful production expectations on Mansfield and her fellow desk adjusters and would threaten them or discipline if they didn't meet those standards to the supervisors' satisfaction.

**INTERROGATORY NO. 7 (11th interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad, in that the specific identities of her children are private and are not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. With the above considered, Plaintiff responds as follows:*

The birth years of Mansfield two children are 1984 and 1998. Therefore, they were adults at the time that she worked for CRU.

**INTERROGATORY NO. 8 (12th interrogatory)**: Please provide the following information for each individual/organization responsible for caring for your child(ren) and/or other dependent(s) (either at your home or another location) during the days you claim to have performed work for either of the Defendants:

   a. Name of individual/organization;
   b. Date(s) the individual/organization provided care;
   c. Hours the individual/organization provided care;
   d. Method the individual/organization was paid for providing care; and
   e. Identity of each document or source of information that shows the foregoing information about your care.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad, in that where her children may or may not have gone to school or received childcare is not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff believes that CRU USA seeks this information in order to create a fractured and piecemeal rendering of her workday, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law.*

Given that Mansfield's children are grown, she has no information responsive to this request.

**INTERROGATORY NO. 9 (13th interrogatory)**: Identify all of your sources of income from January 1, 2019 to the present.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad and unnecessarily invasive, if and to the extent that it requests information about what Plaintiff specifically made from non-concurrent employment outside of CRU that would bear no reasonable relation to Plaintiff's claims or CRU's defenses in this case. Plaintiff further contends that it is overly broad in scope of time, and considering that objection, reasonably*

*responds only from January 1, 2020 (the earliest year to which the FLSA may apply in this case) to the present. With the above considered, Plaintiff responds as follows:*

All of Mansfield's income since January 1, 2020 has been from the desk adjusting work.

**INTERROGATORY NO. 10 (14th interrogatory):** Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**RESPONSE**: Refer to any materials produced by Plaintiff as potentially relevant materials.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated,* § § § § | | |
| **Plaintiffs,** § | **CIVIL ACTION NO.** | |
| § | **4:22-cv-01073-SDJ** | |
| v. § § | | |
| § | **Collective Action under** | |
| **CATASTROPHE RESPONSE UNIT, INC.** and § § | **29 U.S.C. § 216(b)** | |
| **CATASTROPHE RESPONSE UNIT USA, INC.,** § § | **JURY DEMANDED** | |
| § | | |
| **Defendants.** § | | |

---

## INTERROGATORY VERIFICATION

---

Pursuant to 28 U.S.C. §1746, JILL MANSFIELD declares:

1. "My name is Jill Mansfield and I am competent to make this declaration. The 1st Amended Responses to CRU USA's First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on _Nov 26 2023_ in _Los Angeles_ County, State of _California_."

Declarant says nothing further.

*Jill Mansfield*
_____
JILL MANSFIELD, Declarant