# O'BRIEN LAW FIRM

1011 WESTLAKE DRIVE
AUSTIN, TEXAS 78746
PHONE: 512.410.1960
FAX: 512.410.6171

KERRY V. O'BRIEN
TEXAS BAR NO. 24038469
ko@obrienlawpc.com
TexasEmployees.com

| | **PLAINTIFF-MAYS'S 1st AMENDED RESPONSE TO CRU USA'S 1st INTERROGATORIES** |
|---|---|
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, et al., individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | Nov 13 2023 |
| From | Plaintiff – R. Mays<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o HALLET & PERRIN, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 9 response pages + verification page |
| Certificate of Service | By my signature below, I hereby certify that these 1st Amended Responses to CRU USA's Interrogatories were served on the following via email transmission on the date above:<br><br>Monte K. Hurst<br>State Bar No. 00796802<br>*monte.hurst@hallettperrin.com*<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>*kbrumbalow@hallettperrin.com*<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*Kerry O'Brien*

Kerry V. O'Brien
COUNSEL FOR PLAINTIFFS

# MAYS'S 1st AMENDED RESPONSES TO
# CRU USA'S FIRST INTERROGATORIES

Note: For any current or former CRU adjusters who appear in these responses to CRU USA's interrogatories, that individual's last-known address and phone number, if not otherwise stated in Plaintiff's FRCP 26 disclosures, should be considered the last-known address and phone number as shown in the business records of Defendants.

Note: Legal objections and legal responses by Plaintiff's counsel are in italics and do not constitute responses to which Plaintiff's verification applies. In addition, all references to minimum wage violations are disregarded, as Plaintiff is not claiming minimum wage violations in this suit. Furthermore, Mays's responses below are in addition to any responsive information elicited through her testimony from her deposition on September 18, 2023.

**INTERROGATORY NO. 1**: Please provide the following for each person or company for which you have, within the last 10 years, been employed or otherwise provided services in exchange for renumeration (including, but not limited to, independent contractor services):

a. Dates of employment/work as an independent contractor;
b. Name of person/company;
c. Position(s) held;
d. Brief description of the job duties of each position held;
e. Whether you were an employee or independent contractor;
f. Location(s) where you performed services;
g. Name of supervisor(s);
h. Rate(s) of pay; and
i. Reason(s) why you are no longer working or providing services for this person/company.

**RESPONSE**: *Objection. Given the request for 10 years of job history, this request is overly broad and bears no reasonable relation to the issues in dispute in this case. Furthermore, Plaintiff's pay rate, supervisor, and reason for separation bear no relation to the information necessary for Defendants in this unpaid overtime case, regardless of the time period during which such work occurred. Plaintiff will provide responsive information otherwise requested by this Interrogatory, for the period of January 1, 2020 (the earliest year in which the FLSA may apply in this case) to the present:*

From January 1, 2020 to the present, other than CRU USA:

Please refer to Mays' résumé, which has been produced. Also refer to her testimony from her deposition on September 18, 2023, where she provided responsive information about her prior employments with Burton Claims and CRU as well as her inactive relationship with Century 21. She also testified about her current employment with Griston Claims.

**INTERROGATORY NO. 2**: Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Furthermore, because Plaintiff did not track the start and stop time of the daily work shifts with specificity, Plaintiff will respond with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference. With the above considered, Plaintiff responds as follows:*

Mays would typically work 10 hours a day, from Monday through Saturday, with some Sundays, for which there should be a record with CRU. The designated time of the shift would depend upon on which deployment Mays was working and in what time zone the weather event and sites of property loss were located. When she began, she started at 10am Eastern and worked at least until 8pm Eastern, because she was handling claims for an Alberta, Canada weather event, and Alberta was two hours behind Mays, who lives in the US Eastern Time Zone. When she was working Ontario claims, her required work hours were at least from 8am to 6pm Eastern. When she moved to BAU claims, it remained at least 8am-6pm Eastern. When she then worked Newfoundland claims, it was at least 7am-5pm Eastern. To keep up with the work assigned to her by CRU Team Leads and managers, Mays estimates that she worked an additional 10-15 hours per week in addition to the required hours above, trying to keep up with the work and avoid being designated as in the "red" by the Team Leads for getting behind. On some occasions, she took a 30-minute lunch break where she completely disengaged from work, but more often than not she either did not take a lunch break or ate at her desk while she worked. For her work relevant to this suit, Mays was employed by Catastrophe Response Unit USA, Inc., but was also subject to the direction and control of Canada-based CRU management staff who were employed by Catastrophe Response Unit, Inc.

**INTERROGATORY NO. 3**: Please identify the start date and end date for each alleged minimum wage and/or overtime violation under the Fair Labor Standards Act.

**RESPONSE**: Plaintiff Mays contends that she was working over 40 hours per week during each workweek of her employment with CRU USA. Therefore, CRU violated the overtime provisions of the Fair Labor Standards Act in each complete workweek of Mays' employment with CRU USA.

**INTERROGATORY NO. 4**: Please describe the basis for each alleged minimum wage and/or overtime violation under the Fair Labor Standards Act.

**RESPONSE**: Plaintiff Mays was not paid a time-and-a-half overtime rate when she would work over 40 hours in a workweek for CRU USA.

**INTERROGATORY NO. 5**: Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the

name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff Mays objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that it asks her to identify the Defendant legally responsible for her damages pursuant to the Fair Labor Standards Act. It is Plaintiff's contention, through legal arguments put forth by counsel, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are legally responsible for Plaintiff's damages as "employers" under the Fair Labor Standards Act. With the above considered, Plaintiff responds as follows:*

Please refer to Plaintiff Mays' FRCP 26 damages disclosures in this case. In addition, both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are responsible for Plaintiff Mays' unpaid overtime wages. Company information obtained during the appropriate phase of discovery in this case will show her day rate and the date of changes to that day rate during her employment with CRU USA, that will be used to calculate more precisely her unpaid overtime wages, and Defendants should refer to those payroll and employment records for such information. The legal reasons that both companies within the CRU business operation are responsible are legal matters for her attorneys to address.

**INTERROGATORY NO. 6**: Please provide the following for each medical, dental or any other outside appointment or meeting that you attended or participated in during the time you claim to have been employed or provided work for either of the Defendants:

   a. Date and commencement time;
   b. Duration;
   c. Type of appointment; and
   d. Whether you attended or participated in person, by telephone, or by video.

**RESPONSE**: *Plaintiff Mays objects to the extent that this interrogatory is overly broad, in that the occurrence of her personal medical or dental appointments is not information reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff Mays believes that CRU USA seeks this information in order to create a fractured and piecemeal reconstruction of her daily compensable work periods, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law, and also contrary to how CRU USA records compensable time for its now-hourly desk adjusters, and is therefore not relevant to Plaintiff's claims or CRU's defenses. With the above considered, Plaintiff responds as follows:*

Mays does not recall taking off for any medical or dental appointments while she worked for CRU.

**INTERROGATORY NO. 7**: For each Request for Admission that you denied, please explain the basis for your denial.

**RESPONSE**: *Plaintiff Mays will state that each Request for Admission addressed in response to this interrogatory is a "discrete subpart" for purposes of Federal Rule of Civil Procedure 33.*

*Therefore, Plaintiff Mays' responses to this interrogatory constitute 7 additional interrogatories propounded by CRU USA. With that consideration stated, Plaintiff Mays responds as follows:*

Re: Response to RFA No. 5: Mays was absolutely expected by CRU to be working certain hours of the day.

Re: Response to RFA No. 6: Mays and her fellow desk adjusters were told by CRU management that they were not allowed to work another job while working for CRU. Mays also believes that there was no way she could have worked a second job while working at CRU, given the demands that CRU put upon her.

Re: Response to RFA No. 7: Because she didn't work another job while working for CRU.

Re: Response to RFA No. 8: Mays and her fellow desk adjusters were told by CRU management that they were not allowed to work another job while working for CRU. Mays also believes that there was no way she could have worked a second job while working at CRU, given the demands that CRU put upon her.

Re: Response to RFA No. 9: Because Mays didn't work a second job while working at CRU.

Re: Response to RFA No. 10: Denied, because of the way that CRU treated her. They micromanaged her workday and how she did her claims. She was not treated like an independent contractor nor did she feel like one.

Re: Response to RFA No. 11: Denied, because CRU treated her like an employee. The way she was treated was not consistent with someone believing she was an independent contractor. Please refer to her response to Interrogatory No. 9 for further bases for her denial of Request for Admission No. 11.

**INTERROGATORY NO. 8 (14th interrogatory)**: Identify how many minutes each day you met with your supervisor, on average, while performing work for either of the Defendants.

**RESPONSE**: *Plaintiff Mays objects to the extent that the verb "met" is ambiguous, in that it could mean (1) in-person meetings, (2) virtual video meetings, (3) audio-only meetings by phone or internet, and/or (4) asynchronous written communications between Plaintiff Mays and a Team Lead or manager throughout the day, including written chat applications and emails. Considering these objections, Plaintiff Mays will respond with the understanding that "met" in the context of this interrogatory means live, verbal conversations between Plaintiff Mays and a Team Lead or manager, regardless of whether it was in a one-on-one or group setting, and with the presumption that these were always remote and not in-person. Mays's response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated, Plaintiff Mays responds as follows:*

The daily morning meeting was anywhere from 30-60 minutes in length, sometimes as long as 2 hours (which occurred more frequently in BAU with Manger Tameika Williams). It could depend on the manager or Team Lead running the morning meeting. Olandria "Faye" Quinnie's morning meetings were typically 30-60 minutes in length. Zina Williams' morning meeting averaged 30 minutes in length. Mays would also have calls with Team Leads or a manager

during the day for open file reviews or about an issue on a claim that she may have missed. But on average, she would have a one-on-one call with a Team Lead once a week.

**INTERROGATORY NO. 9 (15th interrogatory)**: Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**: Mays contends that CRU Team Leads and managers were micromanaging the heck out of the desk adjusters. As examples:

Mays was required put in each task that she completed for each claim she touched in an Excel spreadsheet that was monitored by the Team Leads and managers. If a Team Lead didn't feel like Mays had performed a sufficient quantity of tasks per the tracker information (even if Mays was constantly working), the Team Lead would contact her to inquire about it and pressure her to work faster. In fact, Mays understood that the supervisors were pulling an activity report about every two hours, and if the apparent quantity of activity was the same as or less than the previous two hours, she would get contacted about it and pressured to work faster, and Mays would have to justify her activities to the Team Lead. And this was just based on the Team Lead's impression based on the tracker information, even if Mays was working as fast as she can.

Mays recalls also that each desk adjuster was required to make at least 10 calls a day, or otherwise would be verbally disciplined or pressured to do more. In fact, Mays recalls that if a Team Lead felt like the length of the calls was not "long enough" for that Team Lead's satisfaction, the adjuster could be verbally coached or admonished for not engaging in longer calls – again, regardless of the reason.

Mays had to check in over Teams in the morning by her start time to let them know that she was online and working by that time, as if clocking in.

Mays had to ask off in advance to take time off from work and get permission before taking off, just like regular employment, even though the time off would be unpaid.

All of these things were enforced by all of the Team Leads and managers.

**INTERROGATORY NO. 10 (16th interrogatory)**: Identify each individual who has knowledge of the hours you performed work for either of the Defendants.

**RESPONSE**: Richard Wilson, Zina Williams, Tamekia Williams, Duane Magnuson, Ryan Pearcey, Ashley Ruise, Esmeralda Hernandez, LaTara Bailey, Mike Weeks, Lashay Thompson, and an adjuster named Anitra/Anita for whom Mays cannot remember her last name.

**INTERROGATORY NO. 11 (17th interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: *Plaintiff Mays objects to the extent that this interrogatory is overly broad, in that the specific identities of her children are private and are not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. With the above considered, Plaintiff responds as follows:*

One child, birth year 2009, although that child would stay at their dad's during the weekdays and would only stay with Mays on the weekends.

**INTERROGATORY NO. 12 (18th interrogatory)**: Please provide the following information for each individual/organization responsible for caring for your child(ren) and/or other dependent(s) (either at your home or another location) during the days you claim to have performed work for either of the Defendants:

a. Name of individual/organization;
b. Date(s) the individual/organization provided care;
c. Hours the individual/organization provided care;
d. Method the individual/organization was paid for providing care; and
e. Identity of each document or source of information that shows the foregoing information about your care.

**RESPONSE**: *Plaintiff Mays objects to the extent that this interrogatory is overly broad, in that where her children may or may not have gone to school or received childcare is not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff Mays believes that CRU USA seeks this information in order to create a fractured and rendering of her workday, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law. With the above considered, Plaintiff provides the following responsive information:*

Mays' child lived with the child's father during the weekdays.

**INTERROGATORY NO. 13 (19th interrogatory)**: Identify all of your sources of income from January 1, 2019 to the present.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad and unnecessarily invasive, if and to the extent that it requests information about what Plaintiff specifically made from non-concurrent employment outside of CRU that would bear no reasonable relation to Plaintiff's claims or CRU's defenses in this case. Plaintiff further contends that it is overly broad in scope of time, and considering that objection, reasonably responds only from January 1, 2020 (the earliest year to which the FLSA may apply in this case) to the present. With the above considered, Plaintiff responds as follows:*

Mays' desk adjuster positions as set out in her résumé provide all of her sources of income since January 1, 2020.

**INTERROGATORY NO. 14 (20th interrogatory)**: Please describe in detail any and all communication that you have had with employees or former employees or agents of Defendants or their affiliates relating to the subject matter of this lawsuit. Your answer shall include, but be not limited to, the dates of such communications, the persons involved in such communications, and the

subject matters of such communications.

**RESPONSE**: *Plaintiff objects to the extent that this request is overly broad and does not provide any specificity with respect to the information requested. Specifically, the subject matter of the lawsuit involves Plaintiff's daily employment with CRU, and therefore every communication during that employment, including every communication with every Team Lead and manager, could be arguably be "relat[ed] to the subject matter of this lawsuit." Therefore, Plaintiff will respond to this interrogatory with the reasonable understanding that it is requesting communications that specifically concern this lawsuit or the possibility of participating in this lawsuit. With the above considered, Plaintiff responds as follows:*

Ashley Ruise and Pam James, just about this overtime lawsuit, when Mays gave them the contact information for the O'Brien Law Firm, shortly before those two women joined the case. Mays also spoke to Cynthia Bell, just about the lawsuit.

**INTERROGATORY NO. 15 (21st interrogatory)**: If it is your contention that the Defendants are joint and severally liable in this lawsuit, please describe the facts upon which you rely in making this assertion.

**RESPONSE**: Plaintiff Mays is not a lawyer and therefore cannot speak to the intricacies of the overtime law the Fair Labor Standards Act. But to the extent that Team Leads and managers were employed by or controlled by Catastrophe Response Unit, Inc., and Plaintiff Mays' working conditions were subject to the control of Catastrophe Response Unit, Inc., and Catastrophe Response Unit, Inc. maintained the relevant employment records, it is Plaintiff Mays' position, through her lawyers' arguments and her lawyers' understanding of the law (and not hers as a layperson), that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. should be legally responsible for paying the overtime damages in this lawsuit.

**INTERROGATORY NO. 16 (22nd interrogatory)**: Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**RESPONSE**: Refer to any materials produced by Plaintiff as potentially relevant materials.

**INTERROGATORY NO. 17 (23rd interrogatory)**: Please identify (a) the date on which you first hired an attorney to represent you in this matter, and (b) each attorney who has represented you in this matter.

**RESPONSE**: December 21, 2022. The O'Brien Law Firm and Gasper Law, PLLC.

**INTERROGATORY NO. 18 (24th interrogatory)**: Identify the manner in which your attorney or someone from your attorney's office first contacted you regarding representation in this lawsuit (i.e., phone call, e-mail message, text message, etc.).

**RESPONSE**: Phone call.

**INTERROGATORY NO. 19 (25th interrogatory)**: If you reported or complained about an alleged minimum wage and/or overtime violation under the Fair Labor Standards Act to a

government agency, then please identify each such agency, the date(s) of such reports or complaints, and the outcome or status of each report or complaint.

**RESPONSE**: Mays did not make such a report or complaint.

**INTERROGATORY NO. 20 (26th interrogatory)**: If you reported or complained to either of the Defendants (including, but not limited to, supervisors or administrative departments such as human resources, payroll, timekeeping or benefits) about an alleged minimum wage and/or overtime violation under the Fair Labor Standards Act, then please state whether the report or complaint was written or oral, when the report or complaint was made, to whom the report or complaint was made, and any response to the report or complaint.

*Plaintiff Mays objects that CRU USA has exceeded the total allowable number of interrogatories pursuant to Federal Rule of Civil Procedure 33. While in no way waiving her objection as to future interrogatories, Plaintiff Mays voluntarily chooses to respond to CRU USA's 26th Interrogatory (referred to by CRU USA as Interrogatory No. 20), below.*

**RESPONSE**: Please see the emails produced contemporaneously with Mays's original responses to these interrogatories.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, et al., *individually and on behalf of all others similarly situated*, | § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:22-cv-01073-SDJ |
| v. | § § | |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., | § § § § | Collective Action under 29 U.S.C. § 216(b) |
| | § § | JURY DEMANDED |
| Defendants. | § | |

## INTERROGATORY VERIFICATION

Pursuant to 28 U.S.C. §1746, RASHEEDAH MAYS declares:

1. "My name is Rasheedah Mays and I am competent to make this declaration. The responses to Defendants' First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge and recollection.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on

 __Nov 13 2023__ in _____ County, State of _____."

Declarant says nothing further.

*R. Mays*
_____
RASHEEDAH MAYS, Declarant



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | Mays - 1st Amended Responses to CRU USA's Interrogatories |
| **File Name** | [rev 11-2023] P-Mays 1st Amd Resp to CRU USA 1st Rogs.pdf |
| **Document ID** | c9e66f0384244df38553ea9ca6625dc4 |
| **Fingerprint** | a64e13bc3cbd8714d18926b4e2c062b5 |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created by Kerry O'Brien (ko@obrienlawpc.com)<br>Fingerprint: ed3576d336acec768c5acec8e788a082 | Nov 13 2023<br>03:36PM UTC |
| **Document Sent** | Document Sent to Rasheedah Mays (rasheedahmays@yahoo.com) | Nov 13 2023<br>03:36PM UTC |
| **Document Viewed** | Document Viewed by Rasheedah Mays (rasheedahmays@yahoo.com)<br>IP: 104.28.103.150 | Nov 13 2023<br>03:45PM UTC |
| **Document Signed** | Document Signed by Rasheedah Mays (rasheedahmays@yahoo.com)<br>IP: 104.28.103.150<br>*R. Mays* | Nov 13 2023<br>03:46PM UTC |
| **Document Completed** | This document has been completed.<br>Fingerprint: a64e13bc3cbd8714d18926b4e2c062b5 | Nov 13 2023<br>03:46PM UTC |

Processed by xodo sign