

| | |
|---|---|
| 1011 WESTLAKE DRIVE<br>AUSTIN, TEXAS 78746<br>PHONE: 512.410.1960<br>FAX: 512.410.6171 | KERRY V. O'BRIEN<br>TEXAS BAR NO. 24038469<br>KO@OBRIENLAWPC.COM<br>TEXASEMPLOYEES.COM |

| | |
|---|---|
| **SHEENA NICKELBERRY'S 1st AMENDED RESPONSE TO CRU USA'S 1st INTERROGATORIES** ||
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, N. J. Lundy, and R. C. L. Mays, individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | Nov 27 2023 |
| From | Sheena Nickelberry<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o HALLET & PERRIN, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 7 pages + audit trail |
| Certificate of Service | By my signature below, I hereby certify that these 1st Amended Responses to Interrogatories were served on the following via email transmission on the date above: |
| | Monte K. Hurst<br>State Bar No. 00796802<br>*monte.hurst@hallettperrin.com*<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>*kbrumbalow@hallettperrin.com*<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*/s/ Kerry O'Brien*

Kerry V. O'Brien
COUNSEL FOR PLAINTIFFS

# NICKELBERRY'S 1st AMENDED RESPONSES TO CRU USA'S FIRST INTERROGATORIES

Notes: For any current or former CRU adjusters who appear in these responses to CRU USA's interrogatories, that individual's last-known address and phone number, if not otherwise stated in Plaintiffs' FRCP 26 disclosures, should be considered the last-known address and phone number as shown in the business records of Defendants. Legal objections and legal responses by Plaintiff's counsel are in italics and do not constitute responses to which Plaintiff's verification applies. All references to minimum wage violations are disregarded, as Plaintiff is not claiming minimum wage violations in this suit. Mansfield's responses below are in addition to any responsive information elicited through her testimony from her deposition on September 15, 2023.

**INTERROGATORY NO. 1**: Please provide the following for each person or company for which you have, within the last 10 years, been employed or otherwise provided services in exchange for renumeration (including, but not limited to, independent contractor services):

  a. Dates of employment/work as an independent contractor;
  b. Name of person/company;
  c. Position(s) held;
  d. Brief description of the job duties of each position held;
  e. Whether you were an employee or independent contractor;
  f. Location(s) where you performed services;
  g. Name of supervisor(s);
  h. Rate(s) of pay; and
  i. Reason(s) why you are no longer working or providing services for this person/company.

**RESPONSE**: *Objection. Given the request for 10 years of job history, this request is overly broad and bears no reasonable relation to the issues in dispute in this case. Furthermore, Plaintiff's pay rate, supervisor, and reason for separation bear no relation to the information necessary for Defendants in this unpaid overtime case, regardless of the time period during which such work occurred. Plaintiff will provide responsive information otherwise requested by this Interrogatory, for the period of January 1, 2020 (the earliest year in which the FLSA may apply in this case) to the present:*

To her recollection, since February 2018, Nickelberry has worked as a desk adjuster for CRU, National Disaster Recovery, and State Farm. Since August 2022, Nickelberry has been on a break from work as she goes to school.

**INTERROGATORY NO. 2**: Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable*

*hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Furthermore, because Plaintiff did not track the start and stop time of the daily work shifts with specificity, Plaintiff will respond with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference. With the above considered, Plaintiff responds as follows:*

Nickelberry's work shift started at 8:00am Central and she was expected to work until 6:00pm Central. In reality, she typically worked 10-12 hours per day to keep up with the workload, otherwise said as an average of 11 hours per day.

For her work relevant to this suit, Nickelberry was employed by Catastrophe Response Unit USA, Inc., but was also subject to the direction and control of Canada-based CRU management staff who were employed by Catastrophe Response Unit, Inc.

**INTERROGATORY NO. 3**: Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that it asks her to identify the Defendant legally responsible for her damages pursuant to the Fair Labor Standards Act. It is Plaintiff's contention, through legal arguments put forth by counsel, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are legally responsible for Plaintiff's damages as "employers" under the Fair Labor Standards Act. With the above considered, Plaintiff responds as follows:*

Both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are responsible for Nickelberry's unpaid overtime wages. The legal reasons that both companies within the CRU business operation are responsible are legal matters for her attorneys to address and are not within her knowledge as a layperson, but generally, it is likely that the Canadian CRU entity employed individuals who supervised and controlled the work of Nickelberry.

Company information obtained during the appropriate phase of discovery in this case will show her day rate and the date of changes to that day rate during her employment with CRU USA, that will be used to calculate her unpaid overtime wages with more precision, to supplement her good faith estimate of her work time, and Defendants should refer to those payroll and employment records for such information.

The calculation method used to determine her unpaid overtime wages is anticipated to be:

(day rate x number of days worked) ÷ (number of hours per week) = regular rate
(regular rate ÷ 2) x (# of hours over 40) = unpaid overtime wages for the week

That calculation method is based on the Fair Labor Standard Act and is therefore provided through the knowledge and experience of her attorneys, as Nickelberry does not possess the

knowledge as a layperson to speak on how overtime is calculated under that law. She is relying on her attorneys to identify and perform those calculations, and she can only speak on her historical knowledge of her work with CRU.

However, as an example, given that her minimum estimated weekly hours are 66 hours per week, if her day rate was for example's sake only $500 CAD per day, her unpaid overtime wages based on the calculation above would be $590.91 CAD per week.

She is also asking the court to double the amount of unpaid overtime wages due to her, called "liquidated damages," the basis for which is also something of which she does not have knowledge as a layperson and for which is relying on her attorneys.

**INTERROGATORY NO. 4**: For each Request for Admission that you denied, please explain the basis for your denial.

**RESPONSE**: *Plaintiff will state that each Request for Admission addressed in response to this interrogatory is a "discrete subpart" for purposes of Federal Rule of Civil Procedure 33. Therefore, Plaintiff's responses to this interrogatory constitute 4 additional interrogatories propounded by CRU USA. With that consideration stated, Plaintiff responds as follows:*

Re: Response to RFA No. 4: CRU expected Nickelberry to work from at least 8am to 6pm Central Time, Monday through Saturday.

Re: Response to RFA No. 5: Nickelberry could not work another job while working for CRU.

Re: Response to RFA No. 6: Because she didn't work another job while working for CRU.

Re: Response to RFA No. 7: While Nickelbery understands that her CRU contract referred to her as an independent contractor, CRU prevented her from experiencing employment as an independent contractor, given the high level of supervision and control that CRU exercised over her.

**INTERROGATORY NO. 5 (8th interrogatory)**: Identify how many minutes each day you met with your supervisor, on average, while performing work for either of the Defendants.

**RESPONSE**: *Plaintiff objects to the extent that the verb "met" is ambiguous, in that it could mean (1) in-person meetings, (2) virtual video meetings, (3) audio-only meetings by phone or internet, and/or (4) asynchronous written communications between Plaintiff and a Team Lead or manager throughout the day, including written chat applications and emails. Considering these objections, Plaintiff will respond with the understanding that "met" in the context of this interrogatory means live,* verbal *conversations between Plaintiff and a Team Lead or manager, regardless of whether it was in a one-on-one or group setting, and with the presumption that these were always remote and not in-person meetings. Plaintiff's response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated, Plaintiff responds as follows:*

The morning meetings with the supervisors lasted from 30-60 minutes. Nickelberry would verbally speak with a supervisor sporadically throughout the week, but cannot estimate an

average amount of minutes per day verbally speaking to supervisors at this point in time.

**INTERROGATORY NO. 6 (9th interrogatory)**: Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**: Nickelberry says that CRU micromanaged her and her fellow desk adjusters.

She was required to "check in" and "check out" over Microsoft Teams chat, essentially like clocking in and out. If she hadn't checked in at or near 8am Central, she would hear from a supervisor asking where she is.

The supervisors monitored Nickelberry's work and claims activity all day. She would have to input her claims activity in a tracker sheet throughout the day whenever she would perform a task on a claim. She would receive negative comments from supervisors if they felt that she hadn't performed enough tasks to their satisfaction, regardless of how hard she was in fact working.

Supervisors would listen in on her phone calls and comment to her on her performance during the calls. They would also pick apart her work on her assigned claims. On multiple occasions, her supervisors have disciplined her over the phone, even yelled at her, and have threatened discipline against her.

She would get harassed by supervisors if they couldn't get ahold of her immediately, and to Nickelberry, it felt like she couldn't even go to the restroom without the chance that they would accuse her of not being available or not working if they tried to contact her in that moment. On one occasion, Nickelberry left her desk because her car was being towed, and supervisor Duane Magnuson still told her that she should never leave her desk like that because he couldn't reach her when he tried to contact her.

Nickelberry and her fellow desk adjusters had to work on all claims assigned to them, and did not get to pick and choose which claims they worked on.

If she needed to take off time from work, CRU had told her and her fellow adjusters that they have to ask for permission from a supervisor in advance.

To her current recollection, Nickeberry's supervisors during her time with CRU were Duane Magnuson, Pardeep Sidhu, and Tameika Williams.

**INTERROGATORY NO. 7 (10th interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad, in that the specific identities of her children, if any, are private and are not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. With the above considered, Plaintiff responds as*

*follows:*

Nickelberry has no children.

**INTERROGATORY NO. 8 (11th interrogatory)**: Please provide the following information for each individual/organization responsible for caring for your child(ren) and/or other dependent(s) (either at your home or another location) during the days you claim to have performed work for either of the Defendants:

   a. Name of individual/organization;
   b. Date(s) the individual/organization provided care;
   c. Hours the individual/organization provided care;
   d. Method the individual/organization was paid for providing care; and
   e. Identity of each document or source of information that shows the foregoing information about your care.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad, in that where her children, if any, may or may not have gone to school or received childcare is not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Furthermore, Plaintiff believes that CRU USA seeks this information in order to create a fractured and piecemeal rendering of her workday, which is contrary to how compensable time is to be measured under the Fair Labor Standards Act, pursuant to* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946) *and subsequent related case law.*

Nickelberry has no information responsive to this request.

**INTERROGATORY NO. 9 (12th interrogatory)**: Identify all of your sources of income from January 1, 2019 to the present.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad and unnecessarily invasive, if and to the extent that it requests information about what Plaintiff specifically made from non-concurrent employment outside of CRU that would bear no reasonable relation to Plaintiff's claims or CRU's defenses in this case. Plaintiff further contends that it is overly broad in scope of time, and considering that objection, reasonably responds only from January 1, 2020 (the earliest year to which the FLSA may apply in this case) to the present. With the above considered, Plaintiff responds as follows:*

All of her income since January 1, 2020 has been from desk adjusting work.

**INTERROGATORY NO. 10 (13th interrogatory)**: Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**RESPONSE**: Refer to any materials produced by Plaintiff as potentially relevant materials.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated*, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:22-cv-01073-SDJ |
| v. | § § | |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., | § § § § § | Collective Action under 29 U.S.C. § 216(b) |
| | § § | JURY DEMANDED |
| Defendants. | § § | |

---

### INTERROGATORY VERIFICATION

---

Pursuant to 28 U.S.C. §1746, SHEENA NICKELBERRY declares:

1. "My name is Sheena Nickelberry and I am competent to make this declaration. These 1st Amended Responses to CRU USA's First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on ___Nov 27 2023___ in ___Harris, Houston___ County, State of ___Texas___."

Declarant says nothing further.

*Sheena Nickelberry*
_____
SHEENA NICKELBERRY, Declarant



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | [rev 11-2023] Nickelberry 1st Amd CRU Interrogatory Responses.pdf |
| **File Name** | [rev 11-2023] Nickelberry 1st Amd CRU Interrogatory Responses.pdf |
| **Document ID** | 75830c31c183496398f3e066b329e72d |
| **Fingerprint** | 3255fc388d00432a937794dd0546188a |
| **Status** | Completed |

## Document History

**Document Created**
Document Created by Kerry O'Brien (ko@obrienlawpc.com)
Fingerprint: b613e5f689b7ce00b8bc5b75c8526d1c
Nov 26 2023
05:32PM UTC

**Document Sent**
Document Sent to Sheena Nickelberry (nickelberrysheena@gmail.com)
Nov 26 2023
05:32PM UTC

**Document Viewed**
Document Viewed by Sheena Nickelberry (nickelberrysheena@gmail.com)
IP: 73.6.170.254
Nov 27 2023
05:11AM UTC

**Document Signed**
Document Signed by Sheena Nickelberry (nickelberrysheena@gmail.com)
IP: 73.6.170.254

*Sheena Nickelberry*

Nov 27 2023
05:13AM UTC

**Document Completed**
This document has been completed.
Fingerprint: 3255fc388d00432a937794dd0546188a
Nov 27 2023
05:14AM UTC

Processed by xodo sign