# O'BRIEN LAW FIRM

1011 WESTLAKE DRIVE
AUSTIN, TEXAS 78746
PHONE: 512.410.1960
FAX: 512.410.6171

KERRY V. O'BRIEN
TEXAS BAR NO. 24038469
KO@OBRIENLAWPC.COM
TEXASEMPLOYEES.COM

| | ASHLEY RUISE'S 2nd AMENDED RESPONSE TO<br>CRU USA'S 1st INTERROGATORIES |
|---|---|
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, N. J. Lundy, and R. C. L. Mays, individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | Nov 26 2023 |
| From | Ashley Ruise<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o HALLET & PERRIN, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 8 pages + audit trail |
| Certificate of Service | By my signature below, I hereby certify that these 2nd Amended Responses to Interrogatories were served on the following via email transmission on the date above: |
| | Monte K. Hurst<br>State Bar No. 00796802<br>*monte.hurst@hallettperrin.com*<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>*kbrumbalow@hallettperrin.com*<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*Kerry O'Brien*

Kerry V. O'Brien
COUNSEL FOR PLAINTIFFS

# RUISE'S 2nd AMENDED RESPONSES TO
# CRU USA'S FIRST INTERROGATORIES

Notes: For any current or former CRU adjusters who appear in these responses to CRU USA's interrogatories, that individual's last-known address and phone number, if not otherwise stated in Plaintiffs' FRCP 26 disclosures, should be considered the last-known address and phone number as shown in the business records of Defendants. Legal objections and legal responses by Plaintiff's counsel are in italics and do not constitute responses to which Plaintiff's verification applies. All references to minimum wage violations are disregarded, as Plaintiff is not claiming minimum wage violations in this suit. Ruise's responses below are in addition to any responsive information elicited through her testimony from her deposition on October 12, 2023.

**INTERROGATORY NO. 1**: Please provide the following for each person or company for which you have, within the last 10 years, been employed or otherwise provided services in exchange for renumeration (including, but not limited to, independent contractor services):

   a. Dates of employment/work as an independent contractor;
   b. Name of person/company;
   c. Position(s) held;
   d. Brief description of the job duties of each position held;
   e. Whether you were an employee or independent contractor;
   f. Location(s) where you performed services;
   g. Name of supervisor(s);
   h. Rate(s) of pay; and
   i. Reason(s) why you are no longer working or providing services for this person/company.

**RESPONSE**: To the best of Ruise's recollections:

2015 - 2016 Ruise worked for Converges. Her duties are reflected in her résumé. She worked in Tamarac, Florida. She was a W-2 employee. She doesn't remember why or how this employment ended. She doesn't remember a supervisor's name. She recalls she was making around $10-11/hour.

In 2016-2017, she worked for Dollar Tree and Elegant Beauty. There were other short-term part-time jobs that she worked for a short period of time that she can't recall at this time.

2018-2021 Ruise worked for Broward County Transportation TOPS in Broward County. Her duties are reflected in her résumé. Supervisor was Roxy D__. Pay rate started at around $13/hour and ended up near $15/hour when her employment ended. Employment ended when she found another job that would pay more, which is Lindstrom.

In 2021, Ruise worked for Lindstrom Air Conditioning & Plumbing for 5-6 months. She worked as a dispatcher. Pay rate was around $18/hour. She had a supervisor that she believes was named Dave, and a second supervisor who she cannot recall the name of at all. Quit to take a job with

CRU. W-2 employee. Worked from an office at 3581 W McNab Rd Pompano Beach FL 33069.

2021-2022. Ruise worked for CRU.

November 2022 through March 2023, she worked for Jacobson Group. Paid as a W-2 at a rate of $40/hour. Worked from an office in Fort Lauderdale. Supervisor was Melissa, and her husband Skip. She doesn't recall their last names. Left Jacobson when deployment ended.

April 2023 to the present, she works for Accuserve Solutions. She works from home. She is a salaried W-2 employee, at a rate of around $61,000-$62,000 per year. Supervisor David Demel.

**INTERROGATORY NO. 2**: Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Furthermore, because Plaintiff did not track the start and stop time of the daily work shifts with specificity, Plaintiff will respond with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference. With the above considered, Plaintiff responds as follows:*

Throughout her employment with CRU, Ruise was always working 10 hours a day 6 days a week, from Monday through Saturday, but putting in a lot of time after hours. On the CAT side, she was supposed to just work from 10am-8pm Eastern, but she would typically work later until 9pm or 10pm trying to keep up, an average of 13 ½ hours a day. She would sometimes work Sundays, and CRU should have a record of which Sundays she worked.

When Ruise was transferred to BAU claims, the situation got worse for her. Her shift was supposed to be 8am-6pm Eastern, Monday through Saturday, but she would sometimes be required to work Sundays. But because she didn't want to work on Sundays, she would work extra during the week to try to stay ahead. However, she was often working 15-18 hours a day, sometimes 20 hours a day, where she would go to sleep, get back up, and continue working at 7 or 8am Eastern. Ruise roughly estimates that in BAU, she was averaging 16 hours per day.

For her work relevant to this suit, Ruise was employed by Catastrophe Response Unit USA, Inc., but was also subject to the direction and control of Canada-based CRU management staff who were employed by Catastrophe Response Unit, Inc.

**INTERROGATORY NO. 3**: Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that it asks her to identify the Defendant legally responsible for her damages pursuant to the Fair Labor Standards Act. It is Plaintiff's contention, through legal arguments put forth by counsel, that both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are legally responsible for Plaintiff's damages as "employers" under the Fair Labor Standards Act. With the above considered, Plaintiff responds as follows:*

Both Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. are responsible for Ruise's unpaid overtime wages. The legal reasons that both companies within the CRU business operation are responsible are legal matters for her attorneys to address and are not within her knowledge as a layperson, but generally, it is likely that the Canadian CRU entity employed individuals who supervised and controlled the work of Ruise.

Company information obtained during the appropriate phase of discovery in this case will show her day rate and the date of changes to that day rate during her employment with CRU USA, that will be used to calculate her unpaid overtime wages with more precision, to supplement her good faith estimate of her work time.

The calculation method used to determine her unpaid overtime wages is anticipated to be:

$$(\text{day rate} \times \text{number of days worked}) \div (\text{number of hours per week}) = \text{regular rate}$$
$$(\text{regular rate} \div 2) \times (\text{\# of hours over 40}) = \text{unpaid overtime wages for the week}$$

That calculation method is based on the Fair Labor Standard Act and is therefore provided through the knowledge and experience of her attorneys, as Ruise does not possess the knowledge as a layperson to speak on how overtime is calculated under that law. She is relying on her attorneys to identify and perform those calculations, and she can only speak on her historical knowledge of her work with CRU.

However, purely for example's sake, in CAT when she estimates at least 81 hours per week, if her day rate for example was $500 CAD per day, her unpaid overtime wages based on the hypothetical calculation above would be $759.26 CAD per week.

She is also asking the court to double the amount of unpaid overtime wages due to her, called "liquidated damages," the basis for which is also something of which she does not have knowledge as a layperson and for which is relying on her attorneys.

**INTERROGATORY NO. 4**: For each Request or Admission that you denied, please explain the basis for your denial.

**RESPONSE**: *Plaintiff will state that each Request for Admission addressed in response to this interrogatory is a "discrete subpart" for purposes of Federal Rule of Civil Procedure 33. Therefore, Plaintiff's responses to this interrogatory constitute 5 additional interrogatories propounded by CRU USA. With that consideration stated, Plaintiff responds as follows:*

Re: Response to RFA No. 2: Ruise recalls that it was $20,000.

Re: Response to RFA No. 4: CRU expected Ruise to work a schedule of at least 8am-6pm Eastern Time, although that schedule would sometimes switch to 10am-8pm Eastern Time.

Re: Response to RFA No. 5: Ruise could not work another job while working for CRU.

Re: Response to RFA No. 6: Because she didn't work another job while working for CRU.

Re: Response to RFA No. 7: Ruise never thought of herself as an independent contractor while working for CRU because of the amount of control and supervision that CRU would exercise over her.

**INTERROGATORY NO. 5 (9th interrogatory)**: Identify how many minutes each day you met with your supervisor, on average, while performing work for either of the Defendants.

**RESPONSE**: *Plaintiff objects to the extent that the verb "met" is ambiguous, in that it could mean (1) in-person meetings, (2) virtual video meetings, (3) audio-only meetings by phone or internet, and/or (4) asynchronous written communications between Plaintiff and a Team Lead or manager throughout the day, including written chat applications and emails. Considering these objections, Plaintiff will respond with the understanding that "met" in the context of this interrogatory means live,* verbal *conversations between Plaintiff and a Team Lead or manager, regardless of whether it was in a one-on-one or group setting, and with the presumption that these were always remote and not in-person meetings. Plaintiff's response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated, Plaintiff responds as follows:*

Ruise estimates that the morning meeting with supervisors would last between 30 minutes to 2 hours. She would also have a weekly 1x1 with a supervisor that would last between 30-60 minutes. Throughout the week, there may have been other sporadic calls with supervisors.

**INTERROGATORY NO. 6 (10th interrogatory)**: Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**: Ruise says that CRU would constantly control and supervise her work day. The team leads would sometimes send so many demands to her by email and chat throughout the work day that it was hard to get her work done. The supervisors expected that she and her fellow desk adjusters meet a quota of work activities each day that the supervisors felt was acceptable. Ruise had to input a record of her claims activity throughout the day in a tracking sheet that the supervisors would monitor throughout the day to determine if she was meeting that quota or otherwise performing enough work activities to their satisfaction. They would critique her performance and threaten discipline if they didn't feel like she was working hard enough or performing up to whatever standards they had.

She did not have a choice to decide not to handle any of the claims assigned to her. If she was assigned a claim, she was required to work it.

If she needed to take time off work, CRU had told her and her fellow desk adjusters that they would have to ask for approval for the off time a reasonable amount of time in advance. She also had to notify supervisors when leaving for lunch and coming back from lunch.

Ruise had to be at work at the beginning of her shift, and she would have to let the managers know that she was at work by saying "good morning" in the Microsoft Teams chat. She would also have to say "goodbye" at the end of her designated shift, although she would typically keep working, but by saying "goodbye," it would help keep her from being interrupted as she continued working.

**INTERROGATORY NO. 7 (11th interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: Plaintiff has no information responsive to this request because she has no children.

**INTERROGATORY NO. 8 (12th interrogatory)**: Please provide the following information for each individual/organization responsible for caring for your child(ren) and/or other dependent(s) (either at your home or another location) during the days you claim to have performed work for either of the Defendants:

   a. Name of individual/organization;
   b. Date(s) the individual/organization provided care;
   c. Hours the individual/organization provided care;
   d. Method the individual/organization was paid for providing care; and
   e. Identity of each document or source of information that shows the foregoing information about your care.

**RESPONSE**: Plaintiff has no information responsive to this request because she has no children.

**INTERROGATORY NO. 9 (13th interrogatory)**: Identify all of your sources of income from January 1, 2019 to the present.

**RESPONSE**: *Plaintiff objects to the extent that this interrogatory is overly broad and unnecessarily invasive, if and to the extent that it requests information about what Plaintiff specifically made from non-concurrent employment outside of CRU that would bear no reasonable relation to Plaintiff's claims or CRU's defenses in this case. Plaintiff further contends that it is overly broad in scope of time, and considering that objection, reasonably responds only from January 1, 2020 (the earliest year to which the FLSA may apply in this case) to the present. With the above considered, Plaintiff responds as follows:*

Since she started working at CRU, which was her first desk adjusting position, all of her income has been from her desk adjusting work.

**INTERROGATORY NO. 10 (14th interrogatory)**: Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**RESPONSE**: Refer to any materials produced by Plaintiff as potentially relevant materials.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated*, § § § § | | |
| **Plaintiffs,** § | CIVIL ACTION NO. 4:22-cv-01073-SDJ | |
| v. § § | | |
| § | Collective Action under 29 U.S.C. § 216(b) | |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., § § § § | | |
| § | JURY DEMANDED | |
| **Defendants.** § § | | |

## INTERROGATORY VERIFICATION

Pursuant to 28 U.S.C. §1746, ASHLEY RUISE declares:

1. "My name is Ashley Ruise and I am competent to make this declaration. The 2nd Amended responses to CRU USA's First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on

\_\_\_Nov 26 2023\_\_\_ in Broward County, Florida.

Declarant says nothing further.

*/s/ A. Ruise*
ASHLEY RUISE, Declarant



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | [rev 11-2023] Ruise 2nd Amd CRU Interrogatory Responses.pdf |
| **File Name** | [rev 11-2023] Ruise 2nd Amd CRU Interrogatory Responses.pdf |
| **Document ID** | 770c3602b68944c59ea57dee54f27c3e |
| **Fingerprint** | 62b83f3a83d0f4925640bc1c07c112e1 |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created by Kerry O'Brien (ko@obrienlawpc.com)<br>Fingerprint: 4c4f436f1e6c9dfed0e96017dda5cac3 | Nov 26 2023<br>10:33PM UTC |
| **Document Sent** | Document Sent to Ashley Ruise (ruiseashley@ymail.com) | Nov 26 2023<br>10:33PM UTC |
| **Document Viewed** | Document Viewed by Ashley Ruise (ruiseashley@ymail.com)<br>IP: 67.38.10.103 | Nov 26 2023<br>11:02PM UTC |
| **Document Signed** | Document Signed by Ashley Ruise (ruiseashley@ymail.com)<br>IP: 67.38.10.103 | Nov 26 2023<br>11:03PM UTC |
| **Document Completed** | This document has been completed.<br>Fingerprint: 62b83f3a83d0f4925640bc1c07c112e1 | Nov 26 2023<br>11:03PM UTC |

Processed by xodo sign