**EXHIBIT B**



| | |
|---|---|
| 1011 Westlake Drive | Kerry V. O'Brien |
| Austin, Texas 78746 | Texas Bar No. 24038469 |
| phone: 512.410.1960 | ko@obrienlawpc.com |
| fax: 512.410.6171 | TexasEmployees.com |

| | |
|---|---|
| **Plaintiff-Collins's Response to 1st Interrogatories** | |
| Case Style | Civil Action No. 4:22-CV-1073-SDJ; *C. M. Collins, N. J. Lundy, and R. C. L. Mays, individually and on behalf of all others similarly situated v. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*, In the United States District Court for the Eastern District of Texas, Sherman Division |
| Date | June 28, 2023 |
| From | Plaintiff – C. M. Collins<br>℅ O'Brien Law Firm, 1011 Westlake Drive, Austin, Texas 78746 |
| To | Defendant – Catastrophe Response Unit USA, Inc.<br>c/o Hallet & Perrin, P.C., 1445 Ross Avenue, Ste, 2400, Dallas, Texas 75202 |
| Total pages | 11 |
| Certificate of Service | By my signature below, I hereby certify that these Responses to Interrogatories were served on the following via email transmission on the date above:<br><br>Monte K. Hurst<br>State Bar No. 00796802<br>*monte.hurst@hallettperrin.com*<br><br>Kristen A. Laster<br>State Bar No. 24076499<br>*kbrumbalow@hallettperrin.com*<br><br>HALLETT & PERRIN, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, Texas 75202<br>214.953.0053<br>(f) 214.922.4142<br><br>COUNSEL FOR DEFENDANTS |

Respectfully submitted,

*Kerry O'Brien*

Kerry V. O'Brien
COUNSEL FOR PLAINTIFFS

**INTERROGATORY NO. 2**:  Please identify (a) each day you performed work for either one of the Defendants, (b) the number of hours you performed work that day, (c) the specific hours you performed work that day, (d) the name of the Defendant for which you performed work, and (e) each document or source of information that shows the days/hours you performed work.

**RESPONSE**: *While Plaintiff has the general burden of proof on demonstrating her compensable hours, Plaintiff objects to the extent that this Interrogatory is intending to put the burden on Plaintiff to have tracked the start and stop time of her work periods on a daily basis when such responsibility belongs to the employer pursuant to federal law. Therefore, the interrogatory is misleading and harassing. Without waiving these objections, Plaintiff responds with her good faith estimate to assist in demonstrating her compensable hours as a matter of just and reasonable inference:*

On average, Collins worked from around 6:00 a.m. until 6:00 p.m., Monday-Saturday, although she often worked late into the evening and sometimes in the middle of the night in order to keep up with all of the claims work that CRU expected of her and to be able to do such work without the frequent interruptions from the Team Leads and managers that would occur during the day. Also, she worked many Sundays. At first, it was only a request, but later it became mandatory. Her pay records should demonstrate the instances on which she worked on Sundays.

*Plaintiff Collins is not withholding responsive information pursuant to her objections.*

**INTERROGATORY NO. 3**: Please identify the start date and end date for each alleged minimum wage and/or overtime violation under the Fair Labor Standards Act.

**RESPONSE**:  Plaintiff Collins does not have the exact dates of her employment with CRU USA. However, she worked for CRU USA for 4 years, until October 2022. She was working over 40 hours in each complete workweek of her employment with CRU USA and was never actually paid time-and-a-half for all hours over 40 in each such workweek. Therefore, the start date and end date is the beginning and ending date of each complete week of her employment with CRU USA.

**INTERROGATORY NO. 4**:  Please describe the basis for each alleged minimum wage and/or overtime violation under the Fair Labor Standards Act.

**RESPONSE**: Plaintiff Collins was not paid a time-and-a-half overtime rate for all hours over 40 when she would work over 40 hours in a workweek for CRU USA.

**INTERROGATORY NO. 5**:  Please provide a computation of each category of damages claimed by you in this lawsuit, including (a) applicable dates, (b) amounts of claimed unpaid wages, (c) the name of the Defendant responsible, and (d) the method used for computation (including applicable rates and hours).

**RESPONSE**: *Plaintiff Collins objects to the extent that this interrogatory asks her a question of pure law (which is outside of the scope of Federal Rule of Civil Procedure 33), to the extent that*

*setting, and with the presumption that these were always remote and not in-person. Collins' response does not include time spent on written chat and email with her Team Leads and managers throughout the work day. With those considerations and objections stated, Plaintiff Collins responds as follows:*

The daily morning meeting was anywhere from 30-60 minutes in length, sometimes as long as two hours.

Most every day, Collins would have a video or phone call that could last anywhere from 10-30 minutes. Team Lead Olandria "Faye" Quinnie also had a practice of calling Collins and other adjusters to test to see if the work-from-home adjusters like Collins was at their desk, through these random calls. Collins recalls that during one team meeting, Quinnie specifically said that she was doing these random calls to check on the desk adjusters to make sure they were at their desks at home. Collins would estimate that in addition to the morning meetings, she would average perhaps 30 minutes of additional time per day "meeting" with a Team Lead.

**INTERROGATORY NO. 9 (17th Interrogatory)**:  Describe the level of supervision that you received while performing work as a Desk Adjuster for either of the Defendants. Your answer should include, but not be limited to, the following: (1) the identity of each supervisor who supervised you, (2) the level of supervision that he/she/they asserted over you, and (3) examples of how he/she/they supervised your work on a daily or weekly basis.

**RESPONSE**:  Collins would describe the level of supervision as micro-managing her. As some examples:

When her light went yellow, a Team Lead would check in out of concern that she was doing enough work activity to satisfy them. Team Leads would question her using the bathroom too much. Each minute of every day has to be accounted for. Collins and her fellow desk adjusters would have to say "good morning" and "good night" on MS Teams chat, essentially clocking in and clocking out for the view of the Team Leads (even if Collins) did additional work outside of the hours between clocking in and clocking out. If Collins didn't put "good morning" in MS Teams, she risked not getting paid for part or all of that day, even if it was obviously that she was working her regular schedule that day. Collins would have to put everything in a shared "tracker," which was an Excel spreadsheet, where she and her fellow desk adjusters would have to log every task they did, throughout the day, with the claim number, time of the task, and information about the task, the next step on the claim, and the end time of the task. Collins and other desk adjusters would be judged and even threatened with having their pay docked if the Team Leads (led by Faye Quinnie) didn't feel like the adjuster had done a sufficient quantity of activities that day. Collins in fact had her pay docked like this, and had to prove to HR that she had worked that day to get properly paid for that day.

To take off time, Collins would have to get permission in advance from a Team Lead. The one exception that Collins can recall is when her house caught on fire, where her Team Lead Tameika allowed to take off the rest of that day without pre-approval.

CRU managers made it clear that you were not allowed to have a second job while working for CRU.

Collins would be interrupted throughout the day by Team Leads asking questions about her claims, or her claims activity, or just to test whether or not she was at her desk at that moment. It was very disruptive to her focus, such that she would sometimes work evenings and even in the middle of the night to complete her required claims work without those interruptions. Sometimes she would do the evening work to keep from getting in trouble the next day for not keeping up with her required claims activities. The Team Leads expected her to respond immediately to any inquiry, often having to justify what they did and why they did it for certain activities on a claim. Collins was expected to answer any calls as they came to her, because if she didn't, it would be perceived that she wasn't working at could get verbally disciplined for it.

All Team Leads enforced these standards.

As an example of the level of supervision involved, Collins recalls a required conference with manager Pradeep Singh. One particular time, Singh required Collins to have a video conference with him to talk to her about one of her claims. Collins got on the video conference on an audio-only basis, but Pardeep kept insisting that she get on video. He said he wanted to see her face-to-face. When she said she wasn't properly dressed for a video call, that she didn't feel comfortable getting on video, and that she wasn't required to do video calls per her contract with CRU, he still insisted that she get on video, and said he would wait until she changed clothes and was prepared to get on video. She complied. Then, during the conversation, he talked to her in a condescending manner. For instance, he would explain something and would ask her, in a belittling tone, "Do you understand what I'm saying?" And he would also often make her repeat back to him what he told her, in an extremely condescending way.

**INTERROGATORY NO. 10 (18th Interrogatory)**: Identify each individual who has knowledge of the hours you performed work for either of the Defendants.

**RESPONSE**: Natine "Nikki" Lundy, Rasheedah Mays, Olandria "Faye" Quinnie (if she is being truthful about those hours), Priscilla Leyva, DeLondon Kyles, Jamar last name not recalled by Collins at this moment), Pam James, Jeff Acosta, Jill Mansfield, and Basil Riley.

**INTERROGATORY NO. 11 (19th Interrogatory)**: Please identify any child(ren) and/or other dependent(s) who you were responsible for, and/or who lived with you, during the days you claim to have performed work for either of the Defendants, as well as his/her/their year of birth.

**RESPONSE**: *Plaintiff Collins objects to the extent that this interrogatory is overly broad, in that the specific identities of her children are private and are not reasonably needed by CRU USA for any legitimate purpose in this lawsuit. Without waiving these objections:*

Collins has two children, birth years 2000 and 2015.

*Plaintiff Collins is not withholding responsive information pursuant to her objections.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated,* | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:22-cv-01073-SDJ |
| v. | § § | |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., | § § § § § | Collective Action under 29 U.S.C. § 216(b) |
| Defendants. | § § § | JURY DEMANDED |

**INTERROGATORY VERIFICATION**

Pursuant to 28 U.S.C. §1746, CARLA M. COLLINS declares:

1. "My name is Carla M. Collins and I am competent to make this declaration. The responses to Defendants' First Interrogatories, to which this verification is attached, are true and correct to the best of my knowledge.

2. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This Declaration was executed on:

    __Jun 28 2023__ in _____ County, State of _____."

Declarant says nothing further.

*Carla M. Collins*
_____
CARLA M. COLLINS, Declarant



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | [FINAL] 2023-06-28 P-Collins Resp to 1st Rogs.pdf |
| **File Name** | [FINAL] 2023-06-28 P-Collins Resp to 1st Rogs.pdf |
| **Document ID** | 8233a8399bf945a190b6f3b61a8b58dc |
| **Fingerprint** | 57b18590e55214298d2e11b6a15a77eb |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created by Kerry O'Brien (ko@obrienlawpc.com)<br>Fingerprint: c5f581e4ca866ee719247c4678828e9b | Jun 28 2023<br>07:19PM UTC |
| **Document Sent** | Document Sent to Carla M. Collins (carlamcollins@yahoo.com) | Jun 28 2023<br>07:19PM UTC |
| **Document Viewed** | Document Viewed by Carla M. Collins (carlamcollins@yahoo.com)<br>IP: 152.179.187.10 | Jun 28 2023<br>09:30PM UTC |
| **Document Viewed** | Document Viewed by Carla M. Collins (carlamcollins@yahoo.com)<br>IP: 152.179.187.10 | Jun 28 2023<br>10:08PM UTC |
| **Document Signed** | Document Signed by Carla M. Collins (carlamcollins@yahoo.com)<br>IP: 152.179.187.10<br>*Carla M. Collins* | Jun 28 2023<br>10:10PM UTC |
| **Document Completed** | This document has been completed.<br>Fingerprint: 57b18590e55214298d2e11b6a15a77eb | Jun 28 2023<br>10:10PM UTC |

Processed by **xodo sign**