**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **C. M. COLLINS, N. J. LUNDY and R. C. L. MAYS,** *individually and on behalf of all others similarly situated*, | § § § § § § § | |
| *Plaintiffs,* | § § | |
| VS. | § § | **CIVIL ACTION NO. 4:22-cv-1073** |
| **CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC.,** | § § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' AMENDED MOTION TO COMPEL DISCOVERY

Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively, "CRU") hereby file this Amended Motion to Compel Discovery, pursuant to Rule 7(l) of the Local Rules of the U.S. District Court for the Eastern District of Texas.  CRU respectfully asks the Court for the following relief:

- Plaintiffs[1] be ordered to produce the following items that they had previously agreed to produce:

  o All Plaintiffs be ordered to produce their résumés;

  o Riley be ordered to produce his paystubs for payments he received from July 1, 2021 through September 30, 2022; and

  o Mansfield, Mays, Nickelberry, and Russell-Brown be ordered to produce all Forms W-2 and 1099 from 2019 to the present.

---

[1] For purposes of this Motion, the term "Plaintiffs" refers to Plaintiffs Carla Collins ("Collins"), Nikki Lundy ("Lundy"), Rasheedah Mays ("Mays"), Pamela James ("James"), Jill Mansfield ("Mansfield"), Sheena Nickelberry ("Nickelberry"), Basil Leo Riley, III ("Riley"), Ashley Ruise ("Ruise"), and Tammy Russell-Brown ("Russell-Brown").

- Plaintiffs be ordered to produce their tax returns or Tax Return Transcripts from 2019 to the present.

- Collins be ordered to produce her Facebook data, which she had previously committed to produce but now refuses to do so.

- Mays be ordered to amend her discovery responses, in light of her lack of involvement with her previous responses.

**A.      Plaintiffs Must be Compelled to Produce the Important Documents That They Had Previously Committed to Produce**

Plaintiffs committed in November and December 2023—in their representations to the Court, in their discovery responses, and in their written and binding agreements with CRU—to produce the following important items: (a) all Plaintiffs' résumés; (b) Riley's paystubs for payments he received from July 1, 2021 through September 30, 2022; and (c) Mansfield's, Mays', Nickelberry's, and Russell-Brown's Forms W-2 and 1099.[2]

Plaintiffs have simply failed to honor their agreements and representations.  Not a single Plaintiff has produced a résumé following CRU's request for all résumés Plaintiffs had not previously produced, nor has a single Plaintiff represented that no such document exists.[3]  Riley

---

[2] On November 21, 2023, Plaintiffs' counsel represented the following in an e-mail message to the Court: (a) Riley stated in both his interrogatory responses and deposition testimony that he had continued to work for another company during his approximately first two months with CRU; (b) Plaintiffs agree that those records may concern the claims and defenses in this case; and (c) Plaintiffs' counsel were working with Riley to promptly produce any tax forms and pay stubs in his possession, custody, or control that concern that concurrent employment.  *See* Ex. A.3, E-mail message from K. O'Brien to L. Munoz (Nov. 21, 2023).

On December 14, 2023, Plaintiffs committed to produce by December 28, 2023, any of the Plaintiffs' résumés that had not already been produced.  *See* Ex. A.6, Plaintiffs' responses to CRU's requests for résumés (for each Plaintiff, this is Request No. 7).

On December 4, 2023, Plaintiffs committed to do the following by December 8, 2023: (a) Plaintiffs will remove their objections to CRU's requests for production seeking tax information specifically as to the eight identified Plaintiffs' W-2s, 1099s, and T4A-NR for 2019, 2020, 2021, and 2022, and respond to the requests. *See* Ex. A.4, E-mail message exchange between K. O'Brien and M. Hurst (Dec. 4, 2023).

In her discovery responses served on CRU on December 14, 2023, Russell-Brown committed to produce all of her Forms 1099 and W-2 by December 28, 2023.  *See* Ex. A.5, Russell-Brown's Resp. to CRU USA's First Req. for Produc. No. 13.

[3] At least one Plaintiff testified that she has "several" résumés, not only the one resume she initially produced in this litigation.  *See* Ex. B, Deposition of Sheena Nickelberry at 54:7-12.  For this reason, CRU requested (in Request No.7 of CRU's Second Set of Requests for Production) the production of *all* résumés from the Plaintiffs, not only the one résumé they initially produced.  *See* Ex. A, Declaration of Monte K. Hurst ("Hurst Decl."), ¶ 10.

has not produced any paystubs for payments he received from July 1, 2021 through September 30, 2022.[4]  Finally, even though Plaintiffs had agreed to produce all of their Forms W-2 and 1099s for 2019 to the present, CRU has still not received the following:

- Any Forms W-2 and/or 1099 for Mays;

- Any Forms W-2 and/or 1099 for Russell-Brown;

- Any Forms W-2 and/or 1099 for Nickelberry for 2020; or

- Any Forms W-2 and/or 1099 for Mansfield for 2022.[5]

These four Plaintiffs do not represent in their discovery responses or elsewhere that they do not have any Forms W-2 and/or 1099 for these particular years.  To the contrary, the résumés of the three of these Plaintiffs who have produced résumés show that they were providing adjusting services during this time, and would thus have had Forms W-2 and/or 1099 issued on their behalf.[6]  And while CRU accepts as true the representation of Plaintiffs' counsel that they have instructed their clients to produce these materials that they had committed to produce to CRU, the fact of the matter is that Plaintiffs have still not done so, in total disregard of their discovery obligations owed to this Court.

Because Plaintiffs have failed to comply with their commitments to produce these important documents, CRU has no choice but to seek an order from the Court compelling their production.

---

[4] *See* Ex. A, Hurst Decl., ¶ 11.
[5] *See* Ex. A, Hurst Decl., ¶ 12.
[6] *See* Ex. A.9, Mays' résumé (identifying that she worked for CRU and multiple other companies between 2019 and 2022); Ex. A.10, Mansfield's résumé (identifying that she worked for CRU and another company in 2022); and Ex. A.11, Nickelberry's résumé ((identifying that she worked for CRU and multiple other companies in 2020).  Russell-Brown has still not produced any of her résumés in this litigation.  *See* Ex. A, Hurst Decl., ¶ 14.

#### B.      Plaintiffs Must Produce Their Tax Returns Because of the Significance of Their Business Deductions and Schedule C's

This Court must compel Plaintiffs to produce their federal income tax returns because the returns indicate deductions taken for business expenses and Schedule C's, which is information courts have considered in their application of the economic-realities test.  CRU has requested each Plaintiff to produce their federal tax returns and Forms W-2 and 1099s from 2019 to the present.[7] Plaintiffs subsequently agreed to produce all of their Forms W-2 and 1099s, but, as set forth above, some of them have failed to do so.  Plaintiffs continue to refuse to produce their tax returns.

The Fifth Circuit has made clear that "[t]ax returns are neither privileged nor undiscoverable."  *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 587 (N.D. Tex. 2016). Courts within the Fifth Circuit have routinely found tax records are relevant in independent-contractor-misclassification cases.  *Rafeedie v. L.L.C., Inc.*, No. A-10-CA-743, 2011 WL 5352826, at *2 (W.D. Tex. Nov. 7, 2011) ("The Fifth Circuit has looked to the income and deductions in a plaintiff's tax returns in examining whether a plaintiff was an employee or independent contractor under the FLSA.").

With such clear guidance that all of the Plaintiffs' tax returns from 2019 to the present are relevant and discoverable to this FLSA independent-contractor-misclassification case, the only question then is whether Plaintiffs must produce their tax records now, or wait until after the Court rules on their Motion for Notice.  In this post-*Swales* world, the time is now.  CRU will be demonstrating to the Court in its response to Plaintiffs' Motion for Notice that the Plaintiffs are not similarly situated to one another or the members of the putative class.  CRU believes the tax records will show that some of the Plaintiffs worked for numerous other companies as independent

---

[7] *See* Ex. A.1, Plaintiffs' responses to CRU's requests for tax records (for Collins, Lundy and Mays, this is Request No. 18; for James, Mansfield, Nickelberry, Riley, Ruise and Russell-Brown, this is Request No. 13).

contractors while others did not, and some of the Plaintiffs made tax deductions for business expenses related to their work as desk adjusters for CRU while others did not.

While Plaintiffs should have produced by now all of their Forms W-2 and 1099s for 2019 to the present (or their Wage and Income Transcripts for those years), these Forms W-2 and 1099s and/or Wage and Income Transcripts would still not show the following information that is included on their tax returns: (1) deductions for business expenses made by each Plaintiff; (2) Schedule C (which report profits or losses from a business operated by the tax-filer) for each Plaintiff; or (3) any amended return information.  This critical information is only available on their tax returns or the corresponding Tax Return Transcripts (the latter of which can be retrieved online for each of the last three years).  A Tax Return Transcript does not identify the sources of earnings, nor does it separate earnings by source.

As demonstrated in the following chart, the only two documents that would provide the critical information regarding (i) the business deductions credits made by the Plaintiffs related to their adjusting work, and (ii) any Schedule C data, which reports profits or losses from a business operated by the filer, are either the tax return or the Tax Return Transcript.  The production of Forms W-2 and 1099s and/or Wage and Income Transcripts alone are insufficient as they simply do not contain this important information.

| Information Included | Forms W-2 and 1099 | Wage and Income Transcript | Tax Return Transcript | Tax Return |
|---|---|---|---|---|
| Earnings Data from Forms W-2 and 1099 | ✅ | ✅ | ❌ | ✅ |
| Business Deductions and Credits Made by Plaintiff Related to Their Adjusting Work | ❌ | ❌ | ✅ | ✅ |
| Schedule C (which reports profits or losses from a business operated by the tax-filer) | ❌ | ❌ | ✅ | ✅ |
| Amended Return Information | ❌ | ❌ | ❌ | ✅ |

Evidence that a Plaintiff made deductions for business expenses will be important in the Court's upcoming application of the economic-realities factors.  *See, e.g.*, *Carrell v. Sunland Construction, Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (considering the plaintiffs' tax returns when evaluating the fifth factor of the economic-realities test, noting that the tax records indicated that the plaintiffs' profits depended on their ability to control their own costs and that the plaintiffs worked for numerous companies in each of the years relevant to the dispute); *Wilkerson v. Pioneer Nat. Res. Co.*, No. MO21CV00192DCRCG, 2022 WL 2783849, at *3 (W.D. Tex. May 24, 2022) (finding that the plaintiff's tax returns were relevant to the determination of the plaintiff's employee/independent contractor status using the economic-realities test); *Hargrave v. Aim Directional Services, LLC*, No. 2:18-cv-449, 2021 WL 5155697, at *6 (S.D. Tex. May 24, 2021) ("The Court is not persuaded that Hargrave should be allowed to take advantage of the tax status of an independent contractor, yet claim entitlement to employee overtime benefits … As such, the Court finds the opportunity for profit or loss to weighs [sic] against employee status.").

Mansfield and Lundy both admitted in their sworn depositions that they made deductions for business expenses.[8]  CRU and the Court will only be able to examine the deductions for business expenses made by these two Plaintiffs and those made by the other Plaintiffs through their tax returns or Tax Return Transcripts.

Accordingly, CRU would ask the Court to overrule the objections of Collins, Lundy, and Mays to CRU USA's Request for Production No. 18, overrule the objections of the other Plaintiffs to CRU USA's Request for Production No. 13, and compel Plaintiffs to produce unredacted copies

---

[8] *See* Ex. C, Deposition of Jill Mansfield ("Mansfield Dep.") at 127:23-128:19 (testifying that she believes she claimed business expenses on her tax returns for years in which she performed services for CRU); Ex. D, Deposition of Nikki Lundy at 103:20-104:5 (testifying that she claimed thousands of dollars of business deductions on her taxes in various years).

of all of their tax returns or Tax Return Transcripts from 2019 to the present.[9]  For any tax

return/Tax Return Transcript during this time period that a Plaintiff claims he/she does not have in

his/her possession or custody, CRU would ask the Court to order that Plaintiff to order his/her tax

return or Tax Return Transcript directly from the IRS, so that the tax return or Tax Return

Transcript can be produced to CRU.  Tax Return Transcripts are available for download from the

IRS website from 2020 to 2022.[10]  Downloading a Tax Return Transcript takes very little time and

is free.[11]  In the event that a Plaintiff has to order his/her tax return from the IRS, CRU has offered,

and remains willing, to pay the $30 fee for each such order.  For each year a Plaintiff did not file

a tax return, CRU would ask the Court to order the Plaintiff to produce a Verification of Nonfiling

Letter, which he/she can easily obtain online for free.[12]

CRU anticipates that Plaintiffs will claim that they do not have their tax returns and

complain that ordering their tax returns from the IRS may delay matters.[13]  CRU is not looking to

delay anything.  This argument highlights the frustrations that CRU has encountered in dealing

with Plaintiffs' unwillingness to comply with their discovery obligations, and is merely an attempt

to minimize the importance of the Plaintiffs' tax returns.  For starters, several of the Plaintiffs

testified that they did not file tax returns for all or some of the years between 2019 and 2022.[14]

---

[9] For any year in which a Plaintiff filed an amended tax return, a Tax Return Transcript would be insufficient, as it would not contain any data from that amended tax return.  Accordingly, CRU would ask that, for any year in which the Plaintiff filed an amended tax return, they be ordered to produce their amended tax return.

[10] *See* Transcript types and ways to order them, *https://www.irs.gov/individuals/transcript-types-and-ways-to-order-them*.  (last visited Feb. 8, 2024).

[11] *See* Ex. A, Hurst Decl., ¶ 15.

[12] *See* Transcript types and ways to order them, *https://www.irs.gov/individuals/transcript-types-and-ways-to-order-them*.  (last visited Feb. 8, 2024).

[13] IRS Form 4506, Request for Copy of Tax Return, states that it can take up to 75 days for a request for copies of tax returns to be processed.  *See https://www.irs.gov/pub/irs-pdf/f4506.pdf.*  (last viewed February 8, 2024).

[14] *See e.g.*, Ex. E, Deposition of Carla Collins ("Collins Dep.") at 233:21–234:10 (did not file taxes in 2021 or 2022); Ex. F, Deposition of Pamela James at 81:18–83:7 (did not file taxes in 2020, 2021, and 2022); Ex. C, Mansfield Dep. at 37:17–24 (did not file taxes in 2021 and 2022); Ex. G, Deposition of Basil Leo Riley, III at 93:7–11 (did not file taxes in 2022); Ex. H, Deposition of Ashley Ruise at 154:24–155:2 (did not file taxes in 2021 or 2022).

Obviously, there would be no delay in each such Plaintiff obtaining his/her tax return for a year in which a tax return was not even filed.

Plaintiffs have had custody and/or control over their tax returns during this entire case, and may very well have had them in their possession this whole time.  In fact, in an e-mail message from Plaintiffs' counsel to CRU's counsel on October 6, 2023 (seeking an extension of the deadline by which two of the Plaintiffs had to respond to written discovery requests), Plaintiffs' counsel represented that they were waiting to receive the tax returns from those two Plaintiffs so that he could respond to the discovery requests.[15]

This e-mail message suggests that at least two of the Plaintiffs have had their tax returns this whole time.  With this, CRU cannot simply accept each Plaintiff's representation that their tax returns are nowhere to be found, or buy the anticipated argument that their having to produce the tax returns would cause some sort of delay.  Plaintiffs could be expected to respond with more enthusiasm to an order from the Court compelling them to produce their tax returns, and promptly.

C.    **Collins Must be Compelled to Produce the Facebook Data That She Previously Committed to Produce**

In CRU's Emergency Motion to Compel Discovery and to Extend Deadline to File Response in Opposition to Plaintiff's Motion for Notice ("CRU's Emergency Motion"), CRU sought the production of Collins' Facebook records, which she had previously committed to produce.[16]  *See* CRU's Emergency Motion (Dkt. #45) at 6.  In Plaintiffs' Response to CRU's Emergency Motion to Compel Discovery and to Extend Deadline to File Response in Opposition

---

[15] *See* Ex. A.2, E-mail message from K. O'Brien to M. Hurst (Oct. 6, 2023).

[16] On December 4, 2023, Plaintiffs committed to do the following by December 8, 2023: (a) Collins will produce for each Facebook account she manages, all of the items under each of the following subfolders under Collins' Facebook Activity Log, for days when she claimed to have been working for CRU, in HTML format: (i) Your Posts; (ii) Messages; (iii) Comments and reactions; (iv) Stories; (v) Groups; (vi) Pages; (vii) Events; and (viii) Other activity. *See* Ex. A.4, E-mail message exchange between K. O'Brien and M. Hurst (Dec. 4, 2023).

to Plaintiffs' Motion for Notice ("Pls.' EM Response"), Plaintiffs make the blatantly false statement that "Collins has produced as much of the demanded Facebook data as she has been able to access and reasonably produce." *See* Pls.' EM Response (Dkt. #47) at 2.  Plaintiffs claim that Collins has been unable to access *all but one of her six or more Facebook accounts*,[17] and that she has only produced *some* of what she previously agreed to produce from the one account that she claims she can access.  *See id.* at 4–5.  Additionally, Plaintiffs admit that they are intentionally withholding production of Collins' Facebook direct messages because they are so voluminous that Plaintiffs' counsel has "not had sufficient time to go through those messages" to redact any sensitive or confidential communications.  *See id.* at 4–5; Gasper Decl. (Dkt. #47-1), ¶¶ 1–14.  Ironically, it is the fact that these messages are so voluminous that helps show their importance to CRU's forthcoming response to Plaintiffs' Motion for Notice.

Contrary to Plaintiffs' attempt to minimize their importance, Collins' direct messages to and from her multiple Facebook accounts (that Plaintiffs had already agreed to produce, along with the other Facebook data) are highly relevant.  Collins' voluminous direct messages to and from other Facebook users during the days that she claims she was working for, and being micromanaged by, CRU for 12+ hours/day are directly relevant to CRU's response to Plaintiffs' Motion for Notice.[18]

---

[17] Collins testified in her deposition that she had only four Facebook accounts ("Carla Collins," "Shesus," "Carla Marie," and "Ask Shesus"). Ex. E, Collins Dep. at 57:17-58:2; 58:17-19; 218:18-25.  However, it is clear from Figure 1 to the Declaration of Travis Gasper that Collins also controls two other Facebook accounts: "Katie J & Lauren Nicole" and "Carla Marie The Goddess."  *See* Declaration of Travis Gasper ("Gasper Decl.") (Dkt. #47-1), ¶ 8.  CRU seek production of the relevant records from *all* of Collins' Facebook accounts, including those that she failed to identify in deposition.

[18] As the Fifth Circuit explained in *Swales v. KLLM Transport Services, LLC,* 985 F.3d 430, 442 (5th Cir. 2021)*,* the central question in determining whether a case such as this one can proceed on a collective basis is whether the application of the economic-realities test would require a highly individualized inquiry into each plaintiff and potential opt-in's circumstances.  Consistent with *Swales,* CRU intends to show the Court that this case could not proceed on a collective basis because, among other reasons, the application of the economic-realities test at trial would be riddled with individual credibility assessments of each Plaintiff and putative class member.

Collins' complete Facebook data for the time periods that she was working for CRU is directly relevant to show just how individualized the credibility assessment would be for each Plaintiff and putative class member.  For example, in support of her claim that CRU exercised considerable control over her (the first factor in the economic-realities test), Collins claims in this lawsuit that she was "micromanaged," going so far as to claim that "[e]ach minute of every day has to be accounted for."[19]  Yet, Collins' extensive Facebook activity during the days she claims to have been working 12+ hour days for CRU would challenge her claim that she had to account for "each minute of every day."  The following is a summary of Collins' Facebook activity on August 9, 2021, a day that she claims she worked for CRU.  This summary is based on the Facebook data produced from *one* of Collins' many Facebook accounts *and does not even include her direct messages that Plaintiffs are refusing to produce*:

- **183** posts/comments/reactions made by Collins, only 22 of which CRU's counsel were aware prior to Plaintiffs' production the evening of December 19, 2023;[20]

- **133** of Ms. Collins' 183 posts/comments/reactions were made between the hours of 6:00 a.m. and 6:00 p.m., which are the hours she claims to have worked most days per her Interrogatory answer;[21] and

- One Facebook Live video totaling **90 minutes**.[22]

CRU must be able to review all of Collins' Facebook data, especially her direct messages, to present a complete picture of just what Collins actually did during days she claims to have been working, on average 12+ hours/day, and being micromanaged by CRU.

---

[19] *See* Ex. I, Collins' Am. Resp. to CRU USA's Interrog. No. 9.
[20] *See* Ex. A.12, Carla Collins' Facebook posts/comments/reactions on August 9, 2021; *see also* Ex. A.13, Carla Collins' public Facebook posts/comments on August 9, 2021.
[21] *See* Ex. I, Collins' Am. Resp. to CRU USA's Interrog. No. 2.
[22] *See* Ex. A.12, Carla Collins' Facebook posts/comments/reactions on August 9, 2021; *see also* Ex. A.13, Carla Collins' public Facebook posts/comments on August 9, 2021.

Plaintiffs claim that some of Collins' Facebook messages contain communications with domestic violence victims and are thus too sensitive to produce. *See* Pls.' EM Response (Dkt. #47) at 4 n.2. But, even if some of Collins' Facebook messages do contain communications with domestic violence victims, such a situation does not justify Collins' non-production of the Facebook messages that she had previously promised to provide. Plaintiffs could either redact names of domestic violence victims,[23] or produce all of these messages unredacted under an "Attorneys' Eyes Only" ("AEO") designation.[24] CRU's counsel has proposed specific and logical terms for an AEO provision that would provide for an AEO designation for documents that only the receiving party's counsel, and not the receiving party itself, could review, as well as a means to challenge the designation.[25] Plaintiffs' counsel has refused to agree to such a provision.[26]

Additionally, it has been *52 days* since Plaintiffs filed their EM Response, wherein they claim Collins and her counsel had not had sufficient time to go through the messages to redact the "highly sensitive and confidential communications and are therefore withholding her messages at this time." *See* Pls.' EM Response (Dkt. #47) at 4 n.2. Collins and her counsel have certainly now had ample time to review these messages and redact any names of purported domestic violence victims. Plaintiffs' continued refusal to produce these materials, which they had previously committed to produce, is inexcusable.

---

[23] Plaintiffs' claim that redacting the names of any domestic violence victims would be too time-consuming is simply untrue. CRU's legal team completed a download of one of the team member's Facebook messages. *See* Ex. A, Hurst Decl., ¶ 22. We learned that Facebook maintains in separate folders all direct messages exchanged between a Facebook user and each other Facebook user with whom they exchanged messages. *Id.* When a Facebook user asks Facebook to send to them all Facebook direct messages sent to or received by them over a certain period of time, Facebook responds by sending the requesting party all of those folders, each one of which is labeled with the name of the individual (or the names of the multiple individuals) with whom the requesting user exchanged messages. *Id.* Therefore, Plaintiffs' identification of the messages to be redacted would not be time-consuming at all, as Collins could simply provide to her counsel a list of domestic violence victims whose identities she seeks to protect, and those names could be redacted from the folders listing their names.
[24] The Court's Protective Order (Dkt. #19), does not contemplate an AEO designation.
[25] *See* Ex. A.17, E-mail message from M. Hurst to K. O'Brien (Dec. 28, 2023).
[26] *See* Ex. A, Hurst Decl., ¶ 23.

Finally, Collins' sudden inability to access all but one of her six or more Facebook accounts does not somehow absolve her of her obligations to produce the relevant and responsive documents that her attorneys had committed to produce over two months ago.  CRU would ardently take issue with Collins' convenient representation, in light of the timing of it as well as her continued robust Facebook activity from many of her accounts.

On December 1, 2023, one week before the day on which Plaintiffs' counsel would be producing all of Collins' Facebook data by agreement, Collins made two Facebook posts from different accounts.  She posted a picture from her "Marie Collins" Facebook account[27] and she made a post from her "Carla Marie The Goddess" Facebook account.[28]  On December 6, 2023, two days after Plaintiffs' counsel had agreed to produce all of Collins' Facebook data by December 8, 2023, and two days before the deadline, Collins posted a picture from her "Shesus Christiana" Facebook account.[29]

Obviously, Collins remained, in early December 2023, active on at least three of her same Facebook accounts that she would have her attorneys claim in late December 2023 she could not even access.  This reeks of the very type of discovery abuse that delays cases from proceeding, deprives parties of opportunities to conduct discovery in good faith, and unnecessarily runs up legal bills.  This is exactly why an order from the Court is necessary.[30]

---

[27] *See* Ex. A.14, Collins' public Facebook post on December 1, 2023, from her "Marie Collins" Facebook account.
[28] *See* Ex. A.15, Collins' public Facebook post on December 1, 2023, from her "Carla Marie The Goddess" Facebook account.
[29] *See* Ex. A.16, Collins' public Facebook post on December 6, 2023, from her "Shesus Christiana" Facebook account.
[30] Plaintiffs also claim that all of Collins' Facebook accounts are linked to the same e-mail account and phone number and that Collins' attempts to reset her password using her phone number failed.  *See* Pls.' EM Response (Dkt. #47) at 7.  However, Facebook's Help Center specifies that one can only have up to four additional Facebook profiles under one account.  *See* Facebook, https://www.facebook.com/help/967154637433480 (last visited Dec. 22, 2023).  Thus, Collins could not have six of her Facebook accounts linked to the same e-mail address and phone number as she claims.  Collins must be ordered to enter all of the e-mail addresses and phone numbers that she has used in the past until she is able to reset her Facebook passwords to access all of her accounts.

### D.    Mays' Continued Failure to Comply with Her Discovery Obligations

Plaintiffs communicated to the Court in their EM Response that, despite attempting to contact her on eight separate days since December 2, 2023, Mays had not responded to them, and therefore they have been unable to obtain from her any of her responsive tax documents that they had previously committed to produce.  *See* Pls.' EM Response (Dkt. #47) at 3.  However, on December 14, 2023, Plaintiffs served CRU with "All Plaintiffs' and Opt-Ins' Responses to CRU, Inc.'s 1st Request for Admissions," in which Mays denied CRU's Request for Admission No. 2 (asking her to admit or deny whether she used a mouse moving device or software program while working for CRU).[31]  Logically, Mays would have had to communicate to Plaintiffs' counsel her specific denial to CRU's Request for Admission No. 2, in order for Plaintiffs' counsel to have provided Mays' specific denial in the Plaintiffs' discovery responses.  When CRU's counsel asked Plaintiffs' counsel about this inconsistency, Plaintiffs' counsel confirmed that they have not been in communication with Mays, and informed CRU that they would be seeking to withdraw from representing Mays.

To be clear, CRU would not oppose a request of Plaintiffs' counsel to withdraw as Mays' counsel, so long as the Court orders the following prior to permitting Plaintiffs' counsel to withdraw: (i) Plaintiffs' counsel amends Mays' specific denial to CRU's Request for Admission No. 2, and any other of Mays' discovery responses that did not actually come from Mays, (ii) Mays be instructed to, within seven business days from the date of the order, remove her objections and amend her discovery responses consistent with this communication to the Court (notably CRU USA's Request for Production No. 18, CRU's Request for Production No. 7, and CRU's Request for Admission No. 2), and (iii) Mays, within 21 days from the date of the order, either (a) retain

---

[31] *See* Ex. A.7, Mays' response to CRU's Request for Admission No. 2, in All Plaintiffs' and Opt-Ins' Responses to CRU Inc.'s 1st Request for Admissions.

new counsel and have that counsel file a written appearance with the Court, or (b) file a written

notice with the Court advising that she will represent herself.

## **PRAYER**

For all of these reasons, CRU respectfully requests the Court to order the following relief:

- All Plaintiffs be ordered to produce their résumés;

- Riley be ordered to produce his paystubs for payments he received from July 1, 2021 through September 30, 2022;

- Mansfield, Mays, Nickelberry, and Russell-Brown be ordered to produce all Forms W-2 and 1099 from 2019 to the present;

- Plaintiffs be ordered to produce their tax returns or Tax Return Transcripts from 2019 to the present;

- Collins be ordered to produce her Facebook data, which she had previously committed to produce but now refuses to do so;

- Mays be ordered to amend her discovery responses, in light of her lack of involvement with her previous responses.

- The Court grant CRU any other relief to which CRU may just be entitled.

Respectfully submitted,

HALLETT & PERRIN, P.C.
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
(o) 214.953.0053
(f) 214.922.4142

By:    *Monte K. Hurst*
      Monte K. Hurst
      State Bar No. 00796802
      Monte.Hurst@hallettperrin.com

      Kristen A. Laster
      State Bar No. 24076499
      KBrumbalow@hallettperrin.com

      HALLETT & PERRIN, P.C.
      1445 Ross Avenue, Suite 2400
      Dallas, Texas 75202
      (t) 214.953.0053
      (f) 214.922.4142

      *Counsel for Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*

## CERTIFICATE OF CONFERENCE

On February 1, 2024, CRU's counsel and Plaintiffs' counsel discussed the relief sought herein.  Plaintiffs' counsel has communicated that Plaintiffs are not opposed to CRU's request for the Court to order the production of the Plaintiffs' résumés and Riley's payroll records, but are opposed to all other relief requested herein.

*Monte K. Hurst*
Monte K. Hurst

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 9, 2024, I served a copy of the foregoing document on Plaintiffs' counsel as follows in compliance with Rule 5(b) of the Federal Rules of Civil Procedure:

Mr. Kerry O'Brien
O'BRIEN LAW FIRM
1011 Westlake Drive
Austin, Texas 78746
KO@obrienlawpc.com

Mr. Travis Gasper
GASPER LAW, PLLC
1408 North Riverfront Boulevard, Suite 323
Dallas, Texas 75207
Travis@travisgasper.com

*Monte K. Hurst*
Monte K. Hurst