A.3



| | |
|---|---|
| **From:** | Kerry O'Brien <ko@obrienlawpc.com> |
| **Sent:** | Tuesday, November 21, 2023 1:31 PM |
| **To:** | Lori Munoz |
| **Cc:** | Monte K. Hurst; Travis Gasper; OLPC; Kristen A. Brumbalow; Ceicili S. Morales |
| **Subject:** | Re: Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes |

Good afternoon Ms. Munoz,

I will summarize Plaintiffs' response to Mr. Hurst's November 20, 2023 email.

Mr. Gasper and I have been representing the 3 named plaintiffs and 5 original opt-ins ("the Original 8") in this case. Since last Monday, we have filed Consents to Join for an additional 5 opt-ins. We may file more in the future. Therefore, it is important for the Court to define (and from our perspective, curtail) the extent of additional discovery at this late-point in Phase I of this case.

With respect to the Original 8, Defendants ("CRU") have conducted extensive written and oral discovery, including CRU's counsel taking over 43 hours of cross-examination testimony over 8 oral depositions of those individuals.

**Plaintiff and Opt-In Earnings Documents from Prior Employments**
In this case, CRU has made written production requests for (a) a complete download of an individual's various social media accounts, (2) complete personal cell phone records, (3) all personal photos and videos on the individual's personal cell, (4) all personal emails, (5) and, where applicable, their children's school files, for the time period of their work for CRU. Furthermore, CRU's counsel's deposition questioning of these workers has overtly suggested an interest in procuring each individual's bank statements and credit cards statements as well. In light of this, these workers are reasonably hesitant to produce non-relevant personal financial information that is unrelated to their work for CRU.

With that said, the Original 8 have already provided both verified interrogatory responses as well as deposition testimony concerning their recent prior insurance adjuster employments and the W-2 or 1099 status of each of those employments. Therefore, they have produced the information for which CRU referenced *Talbert v. American Risk Company, Inc*. CRU seeks the tax forms as well as payroll records demonstrating each adjuster's gross earnings from each period of those prior employments. None of this data will impact the Court's evaluation of whether their specific work for CRU was misclassified, especially the gross wages earned per pay period or per year from these prior employments. We therefore do not believe that this financial information from non-CRU employments is permissible discovery for Phase I of this case.

One worker, Basil Riley, did state in both his interrogatory responses and deposition testimony that he had continued to work for another company during his approximately first two months with CRU. We agree that those records may concern the claims and defenses in this case and are working with Mr. Riley to promptly produce any tax forms and pay stubs in his possession, custody, or control that concern that concurrent employment.

At the same time, if CRU has a specific concern about one of the 8 adjusters (as they raised regarding Opt-In Ashley Ruise), they should direct their request to that specific individual. Instead, CRU takes the position that if they have a concern about the veracity of one individual's sworn responses, CRU should be permitted to fish

through the records of all Original 8 individuals (and of every individual who has opted in or will opt in at a later time). A specific discovery deficiency for one plaintiff or opt-in should be directed only to that specific plaintiff or opt-in.

**Cellphone and social media records**
Courts rarely allow unrestricted access to a plaintiff's social media accounts.

* See *Keller v. Arrieta,* No. CV 20-259 KG/SCY, 2021 WL 3169229, at *2 (D.N.M. July 27, 2021). The defendant was not permitted to fish through the plaintiff's social media searching for potential communications that violate an NDA the plaintiff signed. "Discovery...is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (Citing *Landry v. Swire Oilfield Servs.,* L.L.C., 323 F.R.D. 360, 376 (D.N.M. 2018).)

In *Scott v. United States Postal Serv.,* No. CV 15-712-BAJ-EWD, 2016 WL 7440468, at *5 (M.D. La. Dec. 27, 2016), the Court narrowed the defendant's social media request for production to only those postings related to the specific injuries for which the plaintiff had based her lawsuit. "However, a request for discovery must still be tailored so that it appears reasonably calculated to lead to the discovery of admissible evidence. Otherwise, the Defendant would be allowed to engage in the proverbial fishing expedition, in the hope that there might be something of relevance in Plaintiff's SNS accounts."

In *Rodriguez-Ruiz v. Microsoft Operations Puerto Rico, L.L.C.,* No. CV 18-1806 (PG), 2020 WL 1675708, at *5 (D.P.R. Mar. 5, 2020), the Court limited Microsoft's social media production request to only those postings that may concern the plaintiff's mental anguish claims, specifically relating to the plaintiff's "emotions, feelings, mental status, or mood status." "[T]he court will not allow Defendant to have unrestricted access to Plaintiff's social media account(s)."

CRU has made it clear that they want to fish through each and every Plaintiff and Opt-In's social media accounts looking for unspecified events. In their Requests for Production, CRU has not even identified the nature or content of whatever social media posts they seek. Given that, we contend that the breadth of their request is not discoverable, and cannot be narrowed by the Court to particular discoverable content under the circumstances presented by CRU.

And if the Court is sympathetic to their example of Ms. Collins, then, as previously stated, the Court should consider an individualized order based on that particular individual, and should not impute Ms. Collins's circumstances on the current other 12 participants.

With respect to cell phone records, this data is simply not probative of anything. The records will not identify the owner of any of the phone numbers listed in the call and text records. There will simply be text events at certain dates and times (with no information about the content or length of the text), and phone calls at a certain date and time. With respect to any phone calls of any sort of "significant" length (whatever that might mean to CRU, but not necessarily FLSA law), there will be no information as to whether the call was personal or business, or, even if personal, whether the adjuster was multitasking and performing adjusting work while on the call. Or, perhaps an "extended" call time may be explained that the adjuster was waiting on hold with a customer service department while continuing to work. Any inferences that CRU attempts to draw from such data would be pure speculation.

And, similar to the social media accounts, CRU desires to fish through each individual's personal cell records in the hope that they *might* find relevant nuggets of data for their case, which is an impermissible basis for granting such extensive discovery access. Also similar to the social media accounts, we do not believe that the Court can narrow CRU's impermissible cell phone records request into a permissible one under the circumstances

2

that CRU has presented.

## New depositions

With the Original 8, Defendants have conducted full and substantial oral and written discovery over the course of 6 months of this Phase I, including deposing each individual for a combined total of over 43 hours of cross-examination on the record over those 8 depositions (with an average of 5 hours and 32 minutes on the record per Phase I deposition). Plaintiffs' Motion for Notice is due in 7 days. This deadline was already twice extended by the Court from August 8 and October 10, to the current deadline of November 28.

With 3 of the 5 new opt-ins (Wilson, P. Leyva, and A. Leyva), CRU and its counsel specifically emailed each of them on or around August 22, 2023 to interview them about their relevant knowledge. Yet, CRU chose not to identify them to us as persons with relevant knowledge or depose them to get their testimonies on the record. As to new opt-in Richard Wilson, we specifically identified him as a person with relevant knowledge in our April 2023 disclosures, 7 months ago, yet CRU has demanded to take an emergency deposition of him at this late date.

At the same time, these individuals have simply filed Consent to Join forms in the case, to bring the total participants to 13. They have the right to opt in to the case at any time, and do not have to opt in on a date that is convenient for CRU. Furthermore, setting aside the schedules and deadlines of counsel in other cases, each of these individuals is understood to be working and will likely be unable to take off work on such short notice without jeopardizing their current employments.

Defendants have conducted sufficient representative discovery for purposes of Phase I. It is time for the parties to brief their arguments to the Court. New Phase I discovery will interfere with that briefing and should be disallowed or significantly curtailed.

Thank you, and have a nice Thanksgiving.

Kerry O'Brien
on behalf of Plaintiffs/Opt-Ins

On Mon, Nov 20, 2023 at 12:38 PM Lori Munoz <Lori_Munoz@txed.uscourts.gov> wrote:

Thank you, counsel. Tomorrow is fine too if that makes it easier.

Lori Munoz

Judicial Assistant

U.S. District Judge Sean D. Jordan

U. S. District Court, Eastern District of Texas

3

7940 Preston Road

Plano, TX  75024

(214) 872-4860

Lori_munoz@txed.uscourts.gov

---

**From:** Kerry O'Brien <ko@obrienlawpc.com>
**Sent:** Monday, November 20, 2023 12:26 PM
**To:** Lori Munoz <Lori_Munoz@txed.uscourts.gov>
**Cc:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>; Travis Gasper <travis@travisgasper.com>; OLPC <beth@obrienlawpc.com>; Kristen A. Brumbalow <KBrumbalow@hallettperrin.com>; Ceicili S. Morales <cmorales@hallettperrin.com>
**Subject:** Re: Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes

CAUTION - EXTERNAL:

Ms. Munoz, I am traveling at the moment but should be able to respond by the end of today, albeit after hours.

Kerry O'Brien

On Mon, Nov 20, 2023, 9:16 AM Lori Munoz <Lori_Munoz@txed.uscourts.gov> wrote:

Thank you, Mr. Hurst.

Plaintiffs' counsel, please send me a summary of your position on this discovery dispute by the end of today if you can.

Thank you.

Lori Munoz

Judicial Assistant

U.S. District Judge Sean D. Jordan

U. S. District Court, Eastern District of Texas

7940 Preston Road

Plano, TX  75024

(214) 872-4860

Lori_munoz@txed.uscourts.gov

---

**From:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Sent:** Monday, November 20, 2023 8:31 AM
**To:** Lori Munoz <Lori_Munoz@txed.uscourts.gov>
**Cc:** ko@obrienlawpc.com; travis@travisgasper.com; OLPC <beth@obrienlawpc.com>; Kristen A. Brumbalow <KBrumbalow@hallettperrin.com>; Ceicili S. Morales <cmorales@hallettperrin.com>
**Subject:** Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes

**CAUTION - EXTERNAL:**

Good morning, Ms. Munoz.  I represent Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively "Defendants").  In accordance with the Court's preferred discovery dispute procedure, this e-mail message serves to set out a summary of the issues in dispute, as a preface to a potential motion to compel.  Defendants regard these discovery issues as time-sensitive because Defendants' deadline to file a response to Plaintiffs' certification motion is less than one month away.  I am copying Plaintiffs' counsel on this e-mail message.

*Introduction/Background*

This lawsuit is based on Plaintiffs' allegations that they and others who are similarly situated were improperly classified as independent contractors and are owed overtime compensation under the Fair Labor Standards Act ("FLSA").  We are in "Phase I" of the case, pursuant to *Swales v. KLLM Transportation Services,* 985 F.3d 430, 437 (5th Cir. 2021).  Defendant Catastrophe Response Unit USA, Inc. originally served its First Requests for Production, First Set of Interrogatories and First Requests for Admission on the Named Plaintiffs on May 30, 2023.  It then served its First Requests for Production, First Set of Interrogatories and First Requests for Admission on the first six Opt-In Plaintiffs on June 8, 2023.  After receiving the Plaintiffs' responses to these written discovery requests, Defendants' counsel sent an extensive deficiency letter to Plaintiffs' counsel on September 19, 2023.  On November 3, 2023, Plaintiffs' counsel responded to the deficiency letter.  On November 17, 2023, the parties' counsel conferred over the telephone regarding these outstanding discovery disputes.  The issues discussed in this e-mail message remain in dispute.

As set forth below, Plaintiffs have asserted problematic and improper objections to specific requests for production and interrogatories.  Contrary to Plaintiffs' assertions, the documents and information sought by Defendants are directly relevant to the Phase I discovery ordered by the Court.  Plaintiffs will be filing in the next few days a motion seeking to certify a class of individuals whom they claim are similarly situated to the Named Plaintiffs.  Defendants must be permitted to obtain the discovery necessary to respond to that motion.  The information sought by Defendants is directly relevant to the issue of whether others are similarly situated to the Named Plaintiffs, and thus whether any class is appropriate.

In this case, Plaintiffs, all of whom are independent insurance desk adjusters, claim that Defendants misclassified them as independent contractors instead of employees, and that they are now owed overtime compensation as a result.  In *Swales*, the Fifth Circuit explicitly addressed the importance of determining whether the economic-realities test can be applied on a collective basis prior to the certification of a class, as follows:

> …the threshold issue here depends on the economic-realities test, which asks how much control the employer had over the independent contractor.  Thus, the district court needed to consider the evidence relating to this threshold question in order to determine whether the economic-realities test could be applied on a collective basis.  If answering this question requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions.  As KLLM points out, the individualized nature of the economics-realities test is why misclassification cases rarely make it to trial on a collective basis.

*Swales*, 985 F.3d 430, 443 (5th Cir. 2021).

When applying the economic-realities test to determine whether an individual was properly characterized as an independent contractor, the following non-exhaustive factors are considered: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *See Talbert v. American Risk Co. Inc*., 405 Fed.Appx. 848, 855 (5th Cir. 2010).

In *Talbert v. American Risk Company, Inc*., the Fifth Circuit upheld the district court's judgment that an independent insurance adjuster was an independent contractor and not an employee.  *See Talbert*, 405 Fed.Appx. at 856.  In reaching this conclusion, the Fifth Circuit looked at the specific facts regarding the independent contractor's work, concluding that those that weighed in favor of independent contractor status outweighed those that weighed in favor of employee status.  *See generally id*.  As set forth below, the information and documents sought by Defendants in this case all directly relate to the five non-exhaustive factors that are considered in the economic-realities test, and address issues that the *Talbert* court analyzed in upholding the district court's determination that the independent insurance adjuster was properly classified as an independent contractor.

***Information Regarding Plaintiffs' Other Employment/Sources of Income***

Consistent with the evidence relied upon in *Talbert*, Defendants seek the production of the Plaintiffs' Forms W-2 and 1099 from 2019 to the present as well as payroll records that the Plaintiffs possess from the work they performed from 2019 to the present.  In *Talbert,* the court considered the fact that the individual's résumé indicated that she had worked for various insurance companies as an independent contract adjuster for a number of years as a factor that weighed in favor of the plaintiff being an independent contractor.  *See Talbert* at 856.  Here, the records pertaining to the Plaintiffs' employment histories are relevant because they will show that many, if not all, of the Plaintiffs also worked for other insurance companies as an independent contractor adjuster, just like the plaintiff in *Talbert*.

Defendants anticipate that Plaintiffs will claim that Defendants obtained sufficient information from the Plaintiffs' production of their résumés as well as deposition testimony.  But, that is not so.  Many of the Plaintiffs could not recall their work history with any degree of certainty.  In fact, multiple Plaintiffs admitted that their résumés were blatantly false or inaccurate.  By way of example, Ashley Ruise testified that the résumé she produced in discovery listed jobs that she never had and companies for which she had never worked.  For these reasons, Defendants respectfully request that the Court order the Plaintiffs to produce all of their Forms W-2 and 1099 from 2019 to the present, as well as any payroll records that they possess from those positions during the same time period.

***Information Regarding Plaintiffs' Social Media Activity and Cellphone Activity During Hours They Claim to Have Been Working***

Defendants require the production of critical social media records and cellphone records to challenge the Plaintiffs' self-serving claims that they were "micromanaged" by Defendants.  As evidenced by their answers to Interrogatories, Plaintiffs clearly intend to argue that Defendants "micromanaged" them such that the degree of control exercised (the first of the five non-exhaustive factors considered in the economic realities test) should weigh in favor of employment status.  Defendants must be permitted access to discovery to challenge these self-serving claims, and to demonstrate the individualized analysis necessary when considering this factor.

One need only look at the actions and claims of Named Plaintiff Carla Collins to recognize the importance and relevance of each Plaintiff's social media and phone records.  In response to Interrogatory No. 9, Ms. Collins wrote that she would describe the "level of supervision as micro-managing her," and that "[e]ach minute of every day has to be accounted for."  However, the public portion of Ms. Collins' Facebook account clearly refutes these allegations.  For example, Ms. Collins' public Facebook account shows that on one day that Ms. Collins reported to have worked a full day for Catastrophe Response Unit, she made 25 public posts to Facebook, including a live video that was one and one-half hours long, with the majority of these posts being made during the hours she reported to have worked.  On another day that she reported to have worked a full day for Catastrophe Response Unit, she made 22 public posts, including three live videos that were each close to half an hour in length.  Then, on yet another day that she reported that she worked a full day for Catastrophe Response Unit, Ms. Collins made 28 public posts between 8:40 a.m. and 3:40 p.m., including a 29:48 live video.  This public portion of Ms. Collins' Facebook activity only accounts for the posts that were made public and that remain on her public Facebook page.  They do not include her private Facebook activity, which would include her messages in Facebook Messenger or her posts on other people's Facebook accounts.  Defendants need access to this critical evidence to challenge Ms. Collins' and the other Plaintiffs' bold claims that they were "micromanaged" and that they had to account for every minute of the workday to Catastrophe Response Unit.  For this reason, Defendants respectfully request that the Court order the Plaintiffs to produce:

- Their Facebook history report for the days and times that the Plaintiffs claim to have been working for either Defendant;

- Their Instagram history report for the days and times that the Plaintiffs claim to have been working for either Defendant;

- Their Tik-Tok history report for the days and times that the Plaintiffs claim to have been working for either Defendant; and

- Their cellphone records for the days and times that the Plaintiffs claim to have been working for either Defendant, showing the time and length of telephone calls made on their cellphones as well as the number of text messages sent during the time that they claim to have been working for either Defendant.

***Depositions of New Opt-In Plaintiffs***

It is also imperative that Defendants are given the opportunity to take the depositions of the new Opt-in Plaintiffs. Specifically, Russell Wilson, Sr., Tammy Russell Brown, Abigail Leyva, Priscilla Leyva, and Jennifer Shelton ("New Opt-in Plaintiffs") all joined this lawsuit in the past two weeks, and we are less than one month away from Defendants' deadline to file to Plaintiffs' motion to certify a collective under 29 U.S.C. § 216(b). Despite Defendants' requests to depose the New Opt-in Plaintiffs, Plaintiffs have refused to provide dates, improperly contending that Defendants have had enough discovery. In support of their refusal to make the New Opt-in Plaintiffs available for remote depositions, Plaintiffs rely on a scheduling order in *Gabrielle Rogers and Ashley Wilburn, on behalf of themselves and all others similarly situated v. 12291 CBW, LLC, RCI Dining Services (Beaumont), Inc. and RCI Hospitality Holdings, Inc.*, in which U.S. District Judge Michael Truncale, of the Eastern District of Texas— Sherman Division, determined that the parties would be entitled to one deposition per party during Phase 1 of discovery. However, in that case, the parties had agreed to one deposition per side, and only disagreed as to other scheduling order issues. *See Rogers*, Civil Action No. 1:19-CV-00266, Dkt. 71 ("Defendants have agreed that one deposition per side is appropriate.").

Plaintiffs' reliance is further misplaced as the proposed class in *Rogers* was a group of dancers at a gentlemen's club who worked in-person under the same supervisor. As the dancers all had the same work experiences, a deposition of one was representative of the group of dancers. However, after even a cursory review of the Plaintiffs that have opted into this lawsuit thus far, it is readily apparent that this case is far more nuanced, as it involves remote workers, with varying commitments to perform work during the day, with different supervisors, on different deployments, during different time periods. As shown by the depositions already taken, the Plaintiffs' experiences while independent contractors for CRU vastly differ. The experience of one Plaintiff may provide no insight at all as to another Plaintiff. Accordingly, Plaintiffs' "precedent" is simply the judge entering an order to reflect the parties' agreement, not authority to support the argument that taking depositions of all opt-ins in Phase 1 should not be permitted.

Not only does Plaintiffs' argument to avoid depositions lack any support, but it would greatly prejudice Defendants if they were not permitted to depose the New Opt-in Plaintiffs.  Again, as recognized by the Fifth Circuit in *Swales* and many other courts, the economic-realities test, which must be used in analyzing misclassification, is inherently highly individualized.  *See Swales*, 985 F.3d at 443; *see also Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 295 (S.D. Tex. 2012); *Clay v. New Tech Global Ventures, LLC*, 2019 WL 1028532, at *11–12  (W.D. La. Mar. 4, 2019).

Here, Plaintiffs' counsel has unfettered access to its clients, including the New Opt-in Plaintiffs, and can obtain all the information they want without depositions.  Furthermore, Plaintiffs' counsel has the ability to pick and choose the information that makes the New Opt-in Plaintiffs appear most similarly situated to the Named Plaintiffs.  If Defendants are not permitted to depose the New Opt-in Plaintiffs, then Defendants will be faced with an impossible task—to rebut Plaintiffs' contentions that the New Opt-in Plaintiffs are similarly situated to the Named Plaintiffs, without any ability to obtain information from the New Opt-in Plaintiffs.  This is especially problematic in light of the highly individualized inquiry required to analyze alleged misclassification.  For these reasons, Defendants respectfully request that the Court order the Plaintiffs to immediately provide deposition dates for the New Opt-in Plaintiffs to take place in the next 10 days.  Defendants would limit the scope of these depositions to that appropriate for phase-1 discovery, as has been the case with the prior depositions.

***Conclusion***

Defendants thank the Court for its consideration of these important and time-sensitive issues.

MONTE K. HURST
Shareholder

HALLETT&PERRIN
D 214.922.4111 F 214.922.4142 | monte.hurst@hallettperrin.com
1445 Ross Ave., Suite 2400 | Dallas, Texas 75202
Disclaimer

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

--
Kerry V. O'Brien
Attorney