IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated,* § § § § | | |
| Plaintiffs, § | CIVIL ACTION NO. 4:22-cv-01073-SDJ | |
| § | | |
| v. § | | |
| § | Collective Action under 29 U.S.C. § 216(b) | |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC. , § § § § | | |
| § | JURY DEMANDED | |
| Defendants. § § | | |

**PLAINTIFFS' AND OPT-INS' RESPONSE TO
DEFENDANTS' AMENDED MOTION TO COMPEL DISCOVERY**

COME NOW, Plaintiffs and Opt-ins,[1] and hereby file their Response to Dkt. No. 53, Defendants' Amended Motion to Compel Discovery. As will be described below, Plaintiffs oppose the Motion in substantial part, but will also describe the issues that have been rendered moot or that Plaintiffs' do not otherwise oppose. In support of this Response, Plaintiffs would show as follows:

I. **RELEVANT CASE HISTORY**

Exactly 14 months ago, the named plaintiffs Collins, Lundy, and Mays filed this suit for unpaid overtime wages under the Fair Labor Standards Act on behalf of themselves as well as all other similarly situated U.S.-based desk adjusters who worked for CRU from home within the past three years. Pursuant to *Swales v. KLLM Transport Services,* 985 F.3d 430 (5th Cir. 2021),

---

[1] Going forward in this pleading, "Plaintiffs" will refer to both the named plaintiffs as well as the opt-in individuals subject to Defendants' Motion to Copmel, unless otherwise speciifed, solely for convenience of discussion.

this case would procedurally take place in two phases. The first phase would involve limited discovery to determine whether the Court should issue notice and an opportunity to join to all similarly situated class members. The Court specifically instructed that this "Phase I" discovery:

> shall be limited to issues directly relevant to the Section 216(b) motion, such as the number of proposed collective group members, their job descriptions and procedures, and wage and hour policies and training provided. Broad discovery into the merits of the claims at issue, rather than focused exclusively on issues related to the Court's resolution of Plaintiff's anticipated Section 216(b) motion, is premature and improper at this time.

(Dkt. No. 18.)

On April 10, 2023, the Court set August 8, 2023 as the deadline for Plaintiffs to file their Motion for Notice (Dkt. No. 18).

Between April 25 and May 8, 2023, Opt-Ins Mansfield, James, Nickelberry, Riley, and Ruise filed their Consent to Join forms with the Court.

On July 12, 2023, the Court issued an Amended Preliminary Scheduling Order, pushing back the Motion for Notice deadline to October 10, 2023 (Dkt. No. 26).

On October 2, 2023, the Court pushed back the deadline a second time, to November 28, 2023, with Defendants' Response due December 19, 2023 (Dkt. No. 32).

On November 9, 2023, additional Opt-In Russell-Brown filed her Consent to Join with the Court.[2]

On November 14, Defendant Catastrophe Response Unit, Inc. ("CRU, Inc.") served discovery requests on Plaintiffs (which again, includes the relevant Opt-Ins), with those responses due three days before Defendants' December 19 Response deadline.

After over six months of extensive Phase I discovery, including 49 hours of depositions on the record, on November 28, 2023, Plaintiffs timely filed their Motion for Notice. Since that time, the Phase I adjudication process has been stuck in a holding pattern because of complaints

---

[2] While other opt-ins have joined and, in some cases, withdrawn from this case, this Response only concerns the Opt-Ins that are relevant to the discovery complaints raised by Defendants.

by Defendants that they do not have sufficient information or materials to prepare their response to the Motion for Notice. In this Response to the Motion to Compel, Plaintiffs call attention the ever-expanding discovery demands of Defendants and ask the Court to deny discovery demands that have either been waived by Defendants' prior agreement or subsequent delay, or that are otherwise disproportionate to Defendants' limited legitimate needs in Phase I.

## II. RESOLVED ISSUES

With the exception of ongoing issues with the non-responsive Plaintiff Mays,[3] Plaintiffs believe, subject to disagreement by Defendants, that certain issues from Defendants' Amended Motion to Compel have been resolved and/or rendered moot.

A. <u>Three years of résumés</u>

Defendants previously issued a Request for Production of each Plaintiff and Opt-in's résumé, and timely responses were served in response to that Request. On November 14, 2023, 34 days before the deadline for Defendants' Response to Plaintiffs' Motion for Notice, Defendant CRU, Inc. served a Request for Production demanding production of three years of all versions of résumés for each Plaintiff. Since Defendants' First Amended Motion to Compel was filed, Plaintiffs (again, except Mays) have produced all responsive documents, and each individual's written response has notified CRU, Inc. that production in response to that Request is now complete for all such individuals. Plaintiffs believe this issue is moot for all individuals other than Mays. This Response expresses no opposition to an Order compelling Mays to make production of the responsive résumés.

B. <u>Opt-in Riley's records from a concurrent employment</u>

---

[3] Plaintiff Mays ceased communicating with her counsel in mid-November 2023. However, her counsel have good reason to believe that she has received their communications. Counsel for Mays do not know her current whereabouts. Counsel for Mays will be filing a Motion to Withdraw as Counsel for Mays within the next 7 days due to her non-cooperation.

Plaintiff Riley is the only adjuster to testify that he worked for CRU and another adjusting firm at the same time, as dual employments. He testified that he worked for two months for the Littleton Group (for client Progressive Insurance) and CRU simultaneously in the July-September 2021 timeframe. (Exh. 1, 51:3-13.) He then testified that he quit the position with the Littleton Group when CRU manager Randy Bray told Riley and his adjuster group that they were not allowed to work for CRU and another adjusting firm at the same time. (Exh. 1, 183:11-185:19.) Plaintiff Riley agrees that CRU is entitled to materials concerning his contemporaneous employment for the Littleton Group. He has since supplemented with PLAINTIFFS 000807-000825_Riley that he has stated constitute all materials in his possession, custody, or control concerning his Littleton Group employment. He has also stated through his amended written production response he does not have any pay stubs from that employment. Therefore, his production on this issue is complete and he believes that this issue is now moot. Plaintiff Riley contends that any further demands for pay stubs or employment records beyond the supplemental production for the requested period of time are outside the scope of Defendants' needs in Phase I of this case.

### III. CONTESTED ISSUES

A. **Plaintiffs' Tax Returns from 2019-2022, *and beyond***

This issue concerns CRU USA's demand for production of "any and all federal income tax returns, W-2 and 1099 forms filed by you for the past five years." Plaintiffs lodged various objections in response to the Request and resisted production. (See Exh. 2.) Some history may help the Court understand why Defendants' current demands for tax returns are not only unreasonable, but are contrary to their prior agreement on these issues.

Pursuant to this Court's procedures, on November 27, 2023, the Court held a telephone conference with counsel for the parties to discuss Defendant's outstanding discovery concerns,

prior to the filing of a formal Motion to Compel. As a result of the conference, the Court's Minute Entry (Dkt. No. 38) on the issue of W-2/1099 information stated as follows:

> First, Plaintiffs should produce W-2 and 1099 forms from 2019 to the present. The Court views production of payroll information as unnecessary at this stage of the case.

Following the Court's opinion, counsel for the parties conferred. Plaintiffs' counsel agreed that:

> Plaintiffs will, by December 8, 2023, remove their objections to the Defendants' requests for production seeking tax information specifically as to the eight identified Plaintiffs' W-2s, 1099s, and T4A-NR for Tax Years 2019, 2020, 2021, and 2022, and respond in accordance with the Federal Rules of Civil Procedure.

(Dkt. No. 45.)

Plaintiffs[4] worked diligently to produce the W-2 and 1099 information as promptly as possible. Because a number of these individuals could not locate responsive W-2 and/or 1099 forms in their possessions, as an alternative, each of those individuals obtained their Wage & Income Transcripts directly from the IRS for each of the years 2019-2022. These federal Wage & Income transcripts provide the details on all income reported to the federal government in each tax year, and identify whether that income was reported on form W-2 or 1099 (or some other tax form). It provides *exactly* the earnings information that Defendants were requesting through the forms themselves, as reported by employers to the federal government in each tax year (and in fact, W2/1099 tax forms are sometimes inaccurate and reissued with corrections).[5] By December 8, 2023, five of the eight Plaintiffs had produced all of their responsive records, with tax documents from Collins, James, and Mays outstanding.

---

[4] At this point in time, Russell-Brown had only recently opted in, and Defendants' subsequent discovery requests to Russell-Brown were not yet due. And, as stated elsewhere in this Response, Plaintiff Mays refused to communicate or cooperate with her counsel on these issues.

[5] On Reply, Defendants may complain that the reporting employer on a Wage & Income transcript is identified by only the first three letters of the employer's name. However, through discovery, Plaintiffs have identified each of their employers for those years in *multiple* places, through interrogatory responses, deposition testimony, and résumés. Furthermore, in the event Defendants were unsure of the identity of any employer on a plaintiff's Wage & Income transcript, counsel for Plaintiffs agreed to provide that individual's declaration specifying the employer. Defendants' counsel never made any such request.

On December 14, 2023, Defendants filed an Emergency Motion to Compel (Dkt. No. 45). In light of the Emergency Motion to Compel, the Court stayed Defendants' deadline to respond to Plaintiffs' Motion for Notice (Dkt. No. 46). In their Emergency Motion to Compel, Defendants never raised an issue concerning tax returns. *Defendants' sole concern was the delayed production of W-2 and 1099 tax documents from the three remaining individuals.* In fact, the agreement between counsel set out within Dkt. No. 45 is Defendants' own description of the Parties' agreement concerning outstanding tax records.

By the time that Plaintiffs filed their Response on December 19, 2023, all responsive W-2 and 1099 documents had been produced for 7 out of 8 of those individuals that had previously resisted that production (with Mays once again outstanding). With the exception of Russell-Brown, whose recent discovery responses had just become due, Defendants had in substance the W-2 and 1099 information for 2019-2022 tax years that they demanded through their Emergency Motion to Compel. Plaintiffs believed that they had fulfilled their agreement, and Defendants made no complaints about the production.

However, on January 24, 2024, over a month later, Defendants' counsel raised a new complaint demanding production of every Plaintiff's tax return:

> To be clear, we are entitled to discover all of the Plaintiffs' federal income tax returns, W-2 and 1099 forms for the past five years, and we are perturbed that our receipt of these important pieces of evidence continues to be delayed.

(Exh. 6.) This was contrary to the agreement reached between counsel after the November 27, 2023 court conference, and with which Plaintiffs worked diligently to comply. Furthermore, the Court only stayed the Second Preliminary Scheduling Order for the issues raised by Defendants in Dkt. No. 45:

> It is further ORDERED that all remaining deadlines in the Second Amended Preliminary Scheduling Order, (Dkt. #32), are STAYED pending the resolution of the **present discovery dispute**. **Once resolved, the Court will issue** a Third Amended Preliminary Scheduling Order.

(Dkt. No. 46, emphasis added.) Phase I is now continuing into the 15th month of the case. Plaintiffs are concerned that the expanding list of Defendants' discovery complaints could extend Phase I indefinitely.

The attempt to obtain a copy of Ruise's tax return underscores this concern. On January 30, 2024, Ruise and her counsel submitted a form and a check to the IRS requesting a copy of her 2019 tax return. (Exh. 3.) On February 15, 2024, the IRS rejected the request for reasons that are yet unknown, and that request will presumably have to be resubmitted, further delaying procurement of the copy of that single return. (Exh. 4.) Given that numerous Plaintiffs do not have copies of one or more of their responsive tax returns, and being in the middle of tax season for the IRS, it could be many months before all of the demanded tax returns are collected. Without a doubt, CRU will claim that it cannot file its Response to the Motion for Notice until all 3-4 dozen complete, responsive tax returns are fully in its possession. Furthermore, implicit in Defendants' demand for tax returns from 2019 "to the present" is a demand for each Plaintiff's newly-filed, or forthcoming 2023 tax returns, again, leading to a never-ending parade of additional demands by Defendant. Plaintiffs must continue to resist production of their federal tax returns, and believe that they have in good faith provided the responsive 1099 and W-2 information agreed to by the Parties and that may be appropriate for Defendants' limited Phase I considerations.

1. **Argument and Authorities on the Tax Records Issues**

"The district court…has broad discretion in all discovery matters." *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982); See *Swales,* 985 F.3d at 430 (district court has broad, litigation-management discretion). In this vein, Rule 26(b)(2)(C) allows the Court to limit the "frequency or extent of use of the discovery methods otherwise permitted under the rules" if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from

some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs the likely benefits of the discovery. *ION, Inc. v. Sercel, Inc.,* 2009 WL 10677595, at *2 (E.D. Tex. 2009). Plaintiffs contend that the burden of the newly demanded tax return discovery and the substantial delay it will cause outweighs the proportionate benefits of the discovery.

It is essentially undisputed in this case that all Plaintiffs were working as full-time desk adjusters for CRU, at least Monday through Saturday, with a specified work shift during normal business hours (with various extra hours works nights and evenings). Because they were paid a day rate, there is no opportunity for profit-and-loss that might otherwise be demonstrated in a tax return under the circumstances of a true independent contractor. To determine employee status under the FLSA, the Court focuses on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he or she renders his or her services. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The overwhelming evidence produced in discovery thus far demonstrates that each desk adjuster had to work exclusively for CRU at least 6 days a week, at least 10 hours per day. Given these working conditions that have been consistently undisputed by all Plaintiffs, access to their tax returns will not provide any probative information concerning an opportunity for profit and loss. Requiring all Plaintiffs to produce such tax returns would be unduly burdensome given the limited value of the returns for the present circumstances of these desk adjusters.

With respect to business deductions, Defendants state that Phase I discovery has identified two Plaintiffs who took business deductions in relevant years – Lundy and Mansfield. Nevertheless, CRU uses this as the basis to demand tax return production for all 9 Plaintiffs. Again, should the Court find the inquiry into Lundy and Mansfield probative and not otherwise

waived by Defendants, the Court should narrowly tailor a discovery order towards those individuals only. To require all Plaintiffs to produce their federal tax returns contemporaneously would simply be to allow Defendants to fish through the remainder.

With the above having been said, Plaintiffs contend that Defendants have waived the issue regarding tax returns by (1) previously agreeing to accept production of only 1099 and W-2 tax documents, and (2) exhibiting substantial delay before raising the tax return issue otherwise. Should the Court order production of each Plaintiffs' tax returns for 2019 through the present – which would include their forthcoming 2023 tax returns, and beyond – Phase I will likely be extended indefinitely, which will frustrate the resolution of the *Swales* inquiry. The request should be denied.

### B. The Court has no authority to set aside Plaintiff Mays's Response to CRU, Inc's Request for Admission No. 2.

On November 14, 2023, Defendant CRU, Inc. served Request for Admission No. 2 on Plaintiff Mays. Through RFA No. 2, CRU asked Mays to "Admit that you used a mouse moving device or software program while you were performing services for either Catastrophe Response Unit, Inc. or Catastrophe Response Unit USA, Inc." Mays, through counsel, denied that contention.

CRU complains that counsel for Mays could not have communicated with her to prepare that response, and therefore the Court should invalidate her otherwise timely discovery response. Unfortunately, neither Mays nor her counsel can respond as to how that response was formed, due to both the attorney-client confidentiality privilege as well as the attorney work product privilege. For instance, counsel for Mays cannot disclose whether the response was formed from information that Mays had previously provided to them during the prior 11 months of the case. Furthermore, counsel for Mays cannot disclose whether the response was formed in light of the phrasing of the Request (and CRU, Inc.'s use of undefined terms).

CRU, Inc. could have served this Request for Admission earlier in discovery, and then cross-examined Mays about her response during the 5-hour-8-minute deposition that CRU took of her in September 2023. Instead, CRU, Inc. chose to serve Request for Admission No. 2 only 34 days before Defendants' Response to Plaintiffs' Motion for Notice was originally due. Plaintiff Mays timely served a good faith response to Request for Admission No. 2 through counsel and pursuant to the Federal Rules of Civil Procedure, and CRU, Inc.'s speculation on how the answer was formed does not provide a basis for the Court to invalidate her discovery response.

### C. **Defendants' demands for extensive social media data go beyond permissible discovery in this FSLA overtime case.**

Defendants' broad and sweeping requests to pry into Plaintiff Collins' personal, private Facebook messages goes so far beyond the scope of discovery properly limited by this Court,[6] that granting their request would be contrary to Fifth Circuit's instructions regarding putative collective actions brought under the FLSA. *See Swales,* 985 F.3d. at 434.

First, Plaintiffs' counsel made multiple efforts to confer with defense counsel to understand what exactly they were seeking and spent numerous hours on the phone and on Zoom with their client, Ms. Collins, trying to provide that to Defendants.[7] However, since Defendants

---

[6] "[D]iscovery in this case shall be **limited to issues directly relevant to the Section 216(b) motion**, such as the number of proposed collective group members, their job descriptions and procedures, and wage and hour policies and training provided. **Broad discovery** into the merits of the claims at issue, rather than focused exclusively on issues related to the Court's resolution of Plaintiff's anticipated Section 216(b) motion, **is premature and improper** at this time." (Doc. 32 at 2) (emphasis added).

[7] *See generally* Dec. of Travis Gasper (Doc. 47-1) (providing an exhaustive, step-by-step explanation of the efforts made by Ms. Collins and Plaintiffs' counsel to access and produce the information Defendants demanded, with 13 screenshots). Not including the time spent drafting his declaration, Mr. Gasper spent 5.9 hours on this process. *Id.* at ¶ 14. At his billable rate of $400/hour, that amounts to $2,360 for *this one individual Plaintiff.* And Defendants are still demanding additional production from Ms. Collins. Extrapolated out over the other 11 Plaintiffs who have filed consents in this case, and the total attorney's fees would equal $28,320 for this

first demanded production of Ms. Collins' Facebook data, Plaintiffs' counsel have clearly stated that they reserve the right to continue to oppose Defendants' request (see Ex. 5) and have raised objections to Defendants' requests. (*See* Doc. 53-5 at 3.)

The information Defendants seeks is too broad to withstand scrutiny. Defendants seek "to review all of Collins' Facebook data, especially her direct messages," during the days she was working for Defendants. Although such social media content is generally not recognized as privileged, Defendants have not made a sufficient predicate showing that this broad class of material is reasonably calculated to lead to the discovery of evidence establishing "just what Collins actually did during the days she claims to have been working, on average[,] 12+ hours/day, and being micromanaged by CRU."[8] (Doc. 53 at 10.) *See Jewell v. Aaron's, Inc.*, CV 12-0563, 2013 U.S. Dist. LEXIS 102182, at *10-*11 (N.D. Ga., July 19, 2013) (in an FLSA collective action for, inter alia, alleged failure to pay employees for meal periods, denying discovery of social media information to show that employees were, in fact, taking lunch breaks).

For example, in *Palma v. Metro PCS Wireless, Inc.*, 8:13-cv-698-T-33MAP, 18 F. Supp. 3d 1346, 1347-48 (M.D. Fla., Apr. 29, 2014), the defendants in an FLSA collective action moved to compel production of "all posts to Plaintiffs' social media accounts that relate[d] to 'any job descriptions or similar statements about th[e] case or job duties and responsibilities or hours worked which Plaintiff posted on LinkedIn, Facebook, or other social media sites," including "all private messages Plaintiffs sent from these sites." *Id.* Similar to here, the defendants in *Palma* claimed that the plaintiffs "may have posted comments which contradict[ed] their testimony in

---

data alone—antithetical to "advancing the goals of . . . collective actions" and ensuring "efficient resolution of common issues." *Swales*, 985 F.3d at 435 (5th Cir. 2021).

[8] To be clear, "sending a text message or posting on Facebook [is] brief, fleeting, and not incompatible with work." *Radford v. Pevator Cos.*, No. H-17-3381, 2018 U.S. Dist. LEXIS 135861, at *4 (S.D. Tex. Aug. 13, 2018).

the case about breaks and hours worked." *Id.* The court there denied the motion, holding that the request for social media records was too broad: "[Although] social media content is neither privileged nor protected by any right of privacy, . . . Defendant does not have a generalized right to rummage at will through information that Plaintiff has limited from public view.'" *Id.* (citations omitted). In addition, the court found that the burden associated with producing such records was not justified "when Defendant ha[d] nothing more than its 'hope that there might be something of relevance' in the social media posts." *Id.* (citation omitted).

Even if Ms. Collins were able to access and produce everything Defendants are requesting (she cannot), and assuming that Defendants' request was within the scope of Phase I *Swales* discovery (it is not), Defendants have failed to explain the importance of this data to their forthcoming response to Plaintiffs' Motion for Notice.⁹ They do not have social media data from any other plaintiff; to what would they compare Collins' Facebook data? Or, if allowed to proceed on this fishing expedition into Ms. Collins' Facebook data, will Defendants next move to compel similar data from the other Plaintiffs?¹⁰ And what if Ms. Collins' social media activity was similar during her W-2 employments just before her work for CRU? Will that negate the

---

⁹ Defendants' "Emergency" Motion to Compel Discovery stated that they required the production of Collins' Facebook data "to further show that [sic] the great variations among the Plaintiffs regarding the time during their workdays they devoted to other things and thus were not even doing CRU work on which they claim to have been 'micromanaged.'" (Doc. 45 at 6.)

¹⁰ This begs the question: where does Defendants' fishing expedition end, and when will they ultimately file their ever-forthcoming response to Plaintiff's Motion for Notice? "The trial court's notice-giving role is pivotal to advancing the goals and evading the dangers of collective actions. An employee cannot benefit from a collective action without 'accurate **and timely** notice.'" *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433 (5th Cir. 2021) (*quoting Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 167, 110 S. Ct. 482, 484 (1989) (emphasis added). Plaintiffs filed their Motion for Notice three months ago. (Doc. 40.) Each day that passes without potential plaintiffs receiving notice of their right to join this lawsuit is one less day of unpaid wages they stand to recover. And because Defendants reclassified some potential plaintiffs as hourly-paid, overtime-eligible employees in July 2023 (*see* Doc. 40 at 6 n.14), their recovery is further limited as the statute of limitations continues to run. Defendants benefit from continued delay to the detriment of Plaintiffs and potential plaintiffs.

probative value of this data? Even if it will, it demonstrates the enormous "can of worms" that would be opened by granting Defendants' demand.

Recognizing this Court's "broad, litigation-management discretion," *Swales*, 985 F.3d at 443, that discretion is limited by the scope of Phase I discovery outlined in *Swales* and in this Court's own Scheduling Order. Defendants' overly broad request for unfettered access to Plaintiffs Collins' Facebook data, without a showing of relevance or proportionality, should be denied.

## PRAYER

Plaintiffs have mooted the issues related to production of résumés, and production of records related to Riley's work for the Littleton Group. The Court should deny Defendants' demand for every Plaintiff's tax returns from 2019 through the present. The Court further has no basis to disturb Plaintiff Mays's response to CRU, Inc.'s Request for Admission No. 2. Lastly, the Court should deny Defendants' demand to fish through Collins' non-probative private and semi-public Facebook data from her personal social media accounts.

Respectfully submitted,

*Kerry O'Brien*

**Kerry V. O'Brien**
Texas Bar No. 24038469

O'BRIEN LAW FIRM
TEXASEMPLOYEES.COM

1011 Westlake Drive
Austin, Texas 78746
phone: (512) 410-1960
fax: (512) 410-6171
email: ko@obrienlawpc.com

**LEAD COUNSEL FOR PLAINTIFFS**

and

*/s/ Travis Gasper*

**Travis Gasper**
Texas Bar No. 24096881

GASPER LAW, PLLC
1408 N. Riverfront Blvd., Suite 323
Dallas, Texas 75207
phone: (972) 504-1420
fax: (833) 957-2957
email: travis@travisgasper.com

**CO-COUNSEL FOR PLAINTIFFS**