IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY and R. C. L. MAYS, *individually and on behalf of all others similarly situated*, | § § § § § | |
| *Plaintiffs*, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:22-cv-1073 |
| CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC., | § § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR AMENDED MOTION TO COMPEL

**TO THE HONORABLE U.S. DISTRICT JUDGE SEAN D. JORDAN:**

Plaintiffs[1] waited until after Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively, "CRU") filed their Amended Motion to Compel Discovery on February 1, 2024, to produce many of the documents that Plaintiffs had promised to produce well before CRU was forced to file their Amended Motion to Compel, and that CRU had sought to compel based on the documents' importance to this case at this juncture. Over the last three weeks, Plaintiffs produced all of the requested résumés and some requested communications between Riley and an adjusting firm for which he was providing adjusting services in 2021 while, at the very same time, he was providing adjusting services for CRU. At least CRU's Amended

---

[1] The term "Plaintiffs" refers to Plaintiffs Carla Collins ("Collins"), Nikki Lundy, Rasheedah Mays ("Mays"), Pamela James, Jill Mansfield ("Mansfield"), Sheena Nickelberry, Basil Leo Riley, III ("Riley"), Ashley Ruise, and Tammy Russell-Brown ("Russell-Brown").

Motion to Compel provided the necessary inspiration to Plaintiffs to cease their withholding of *those* critical documents.

Yet, it remains baffling that Plaintiffs would continue to withhold other documents of which CRU has on multiple instances demonstrated the relevance and critical nature at this point in the case, and choose to fashion arguments trying to justify their hindering CRU's good-faith attempts to proceed with Phase-1 discovery.  CRU must again respectfully urge the Court to order the following relief:

- Mansfield, Mays, Nickelberry, and Russell-Brown be ordered to produce all Forms W-2 and 1099 from 2019 to the present.

- Plaintiffs be ordered to produce their tax returns or Tax Return Transcripts from 2019 to the present.

- Collins be ordered to produce her Facebook data, which she had previously committed to produce but now refuses to do so.

- Mays be ordered to amend her discovery responses, in light of her lack of involvement with her previous responses.

CRU would ask the Court to compel the Plaintiffs to honor their discovery responsibilities, especially when it comes to critical documents necessary for CRU to respond to Plaintiff's Motion for Notice.  Plaintiffs' audacious accusation that CRU is seeking to delay this proceeding rings hollow, and simply begs the Court to ask Plaintiffs if they truly believe this case would be in its current place if they had simply, at some time before now, produced the relevant and critical documents they continue to withhold.

### A.   Collins Continues Her Refusal to Produce Relevant Facebook Documents.

Collins' excessive Facebook usage during the workday is directly relevant to CRU's demonstrating that this case cannot proceed on a collective basis because the application of the economic-realities test would be riddled with individual credibility assessments.  For example, in

support of her claim that CRU exercised considerable control over her (which is the first factor in the economic-realities test), Collins claims that she was "micromanaged," going so far as to claim that "[e]ach minute of every day has to be accounted for." *See* Defs.' Am. Mot. to Comp., Ex. I, Collins' Am. Resp. to CRU USA's Interrog. No. 9 (Dkt. #53-26) at 5. Yet, Collins' extensive Facebook activity during the days she claims to have been working 12+ hour days for CRU would challenge her claim that she had to account for "each minute of every day."

Plaintiffs now argue that Collins' Facebook data, that they previously agreed to produce, is somehow no longer relevant.[2] *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 10–14. In support of this argument, Plaintiffs cite to *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346 (M.D. Fla. 2014). *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 11–12. However, Plaintiffs' reliance on *Palma* is misplaced. First, in *Palma,* the defendants sought the production of social media records from *all* plaintiffs and from *all* social media sites, which is quite different from the one plaintiff and one social media site here. *See Palma,* 18 F. Supp. 3d at 1347. Second, *Palma* was an FLSA exemption case, not an independent misclassification case. *Id.* Therefore, the very reasons CRU has articulated for needing Collins' Facebook data—to show that this case cannot proceed on a collective basis because the economic-realities test would be riddled with individual credibility assessments—would not have even been applicable in *Palma*.

---

[2] Plaintiffs agreed to produce the very Facebook data pertaining to Collins that CRU has been seeking to compel. Plaintiffs' claim that they had somehow reserved the right "to continue to oppose" CRU's request for Collins' Facebook data, after they had previously agreed to produce all of it, is illogical, disingenuous, and directly contradicts the agreement reached between counsel in December 2023. *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 11. In support of this assertion, Plaintiffs cite to their Exhibit No. 5, which is an e-mail message from Kerry O'Brien (Plaintiffs' counsel) to Monte K. Hurst (CRU's counsel) on November 27, 2023. *See id.*, Ex. 5, E-mail message from K. O'Brien to M. Hurst (Nov. 27, 2023) (Dkt. #59-5). This single e-mail message only represents a preliminary portion of the exchange that culminated into the agreement. On December 4, 2023, Mr. O'Brien sent an e-mail message to Mr. Hurst confirming, "it is my understanding that Collins will cooperate and provide the responsive facebook information by Friday [December 8, 2023]." *See* Defs.' Am. Mot. to Comp., Ex. A.4, E-mail message from K. O'Brien to M. Hurst (Dec. 4, 2023) (Dkt. #53-6) at 5. Further, notably missing from Mr. O'Brien's statement is any suggestion that the Plaintiffs were reserving their rights to later object to and/or to not produce the very documents they were clearly committing to produce just four days later (which was over three months ago).

Finally, in *Palma,* the court found that the defendant had nothing more than a "'hope that there might be something of relevance' in the social media posts." *See id.* Such a finding is inapposite to the obvious relevance that CRU has demonstrated in Collins' Facebook data. Indeed, Plaintiffs admit that they are intentionally withholding production of Collins' Facebook direct messages because the messages are so voluminous that Plaintiffs' counsel claimed back in December 2023 that they had "not had sufficient time to go through those messages" to redact any sensitive or confidential communications. *See* Pls.' Resp. to Defs.' Emerg. Mot. to Comp. (Dkt. #47) at 4 n.2; *see id.*, Ex. A, Declaration of Travis Gasper ("Gasper Decl.") (Dkt. #47-1), ¶¶ 1–14. Ironically, it is this excessive volume of Facebook communications in which Collins engaged during hours she claims to have been working for CRU, was allegedly "micromanaged" by CRU, and was purportedly having to be accountable to CRU for "each minute of every day," that emphasizes the relevance of these communications.

Two and one-half months have come and gone since Plaintiffs' counsel represented to the Court that they did not have enough time to go through Collins' Facebook messages to redact any sensitive or confidential communications. Yet, Plaintiffs continue to withhold Collins' Facebook messages. This is especially frustrating in light of Plaintiffs' accusation that CRU is seeking to delay the proceedings.

*Radford v. Pevator Cos.*, Civil Action No. H-17-3381, 2018 U.S. Dist. LEXIS 135861 (S.D. Tex. Aug. 13, 2018), a case to which Plaintiffs cite in their Response, actually *supports* CRU's insistence that Collins produce the Facebook data she had previously promised to produce. *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 11 n.8. In *Radford,* the court ordered production of the plaintiff's Facebook messages, relying upon the plaintiff's testimony that he used Facebook Messenger to communicate with others during work hours. *See Radford,* 2018 U.S.

Dist. LEXIS 135861, at *4–5. The *Radford* court noted that "[e]vidence of continuous and ongoing conversations during the work day could undermine Radford's overtime claim." *See id.* The court then ordered a sample month of these Facebook communications to be produced, leaving open the opportunity for the defendants to seek the production of additional records based on what was discovered in the same month production. *See id.* In this case, Plaintiffs have acknowledged the voluminous number of Facebook messages from Collins' account during the relevant time period. *See* Pls.' Resp. to Defs.' Emerg. Mot. to Comp., Ex. A, Gasper Decl. (Dkt. #47-1), ¶¶ 1–14.

Finally, Plaintiffs ignore the evidence that CRU set forth in its Amended Motion to Compel demonstrating that Collins, in the days prior to the date on which she agreed to produce her Facebook records to CRU, had access to multiple of her Facebook accounts that she now conveniently claims she cannot access. *See* Defs.' Am. Mot. to Comp. (Dkt. #53) at 12. The evidence is clear that Collins remained, in early December 2023, active on at least three of her same Facebook accounts that she would have her attorneys claim in late December 2023 she could not even access. *See id.* This reeks of the very type of discovery abuse that delays cases from proceeding, deprives parties of opportunities to conduct discovery in good faith, and unnecessarily runs up legal bills. This is exactly why an order from the Court is necessary.[3]

---

[3] Plaintiffs also claim that all of Collins' Facebook accounts are linked to the same e-mail account and phone number and that Collins' attempts to reset her password using her phone number failed. *See* Pls.' Resp. to Defs.' Emerg. Mot. to Comp. (Dkt. #47) at 7. However, Facebook's Help Center specifies that one can only have up to four additional Facebook profiles under one account. *See* Facebook, https://www.facebook.com/help/967154637433480 (last visited Dec. 22, 2023). Thus, Collins could not have six of her Facebook accounts linked to the same e-mail address and phone number as she claims. Collins must be ordered to enter all of the e-mail addresses and phone numbers that she has used in the past until she is able to reset her Facebook passwords to access all of her accounts.

B.      **Plaintiffs Continue to Refuse to Produce Relevant Tax Documentation.**

1.      *Plaintiffs have not produced records that they committed to produce.*

As an initial matter, Plaintiffs fail to address the fact that, even though they had agreed to produce all of their Forms W-2 and 1099s for 2019 to the present, CRU has still not received the following:

- Any Forms W-2 and/or 1099 for Mays;
- Any Forms W-2 and/or 1099 for Russell-Brown;
- Any Forms W-2 and/or 1099 for Nickelberry for 2020; or
- Any Forms W-2 and/or 1099 for Mansfield for 2022.[4]

CRU reiterates its request for the production of these relevant tax records.

2.      *Plaintiffs' complete tax records are critical to Phase 1 discovery.*

Plaintiffs argue that their tax records are not relevant to this matter because the results of the Court's application of the third factor of the economic-realities test—whether the worker had a significant influence over their opportunity for profit or loss—will be so obvious that no discovery on this issue is warranted. *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 8. Plaintiffs make factual assertions to support this conclusory argument, but those assertions are

---

[4] Plaintiffs inaccurately represent the following in their Response: "By the time that Plaintiffs filed their Response on December 19, 2023, all responsive W-2 and 1099 documents had been produced for 7 out of 8 of those individuals that had previously resisted that production. *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 6. However, this statement misrepresents that Plaintiffs had provided the sought-after tax records of Nickelberry and Mansfield. But, Plaintiffs have definitely not done so. *See* Defs.' Am. Mot. to Comp., Ex. A, Declaration of Monte K. Hurst (Dkt. #53-2), ¶ 12. Otherwise, CRU would not still be asking the Court to compel the production of the missing tax records of Nickelberry and Mansfield (in addition to those of Mays and Russell-Brown, which Plaintiffs admit they have not produced).

neither accurate nor supported by evidence.[5]  *See id.*

While Plaintiffs produce no evidence to support this argument, the relevant case law actually refutes Plaintiffs' claim that, because the desk adjusters working for CRU "were paid a day rate, there is no opportunity for profit or loss that might otherwise be demonstrated in a tax return under the circumstances of a true independent contractor."  *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 8.  The authority is clear that a worker's being paid a day rate is not dispositive of whether the worker has the opportunity for profit or loss.[6]

In *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 384–385 (5th Cir. 2019), the Fifth Circuit determined that the opportunity-for-profit-or-loss factor of the economic-realities test weighed in favor of independent contractor status despite the fact that the alleged employer set a non-negotiable pay schedule and the workers were paid on a day-rate basis.  The Fifth Circuit determined that this factor still weighed in favor of independent contractor status due to the workers' ability to control their expenses, consequently increasing profits.  *See id.*

Likewise, in *Hargrave v. AIM Directional Services, LLC,* Civil Action No. 2:18-CV-449, 2022 WL 1487020, at *5–6 (S.D. Tex. May 24, 2021), the court found that the opportunity-for-profit-or-loss factor weighed in favor of independent contractor status, even though the individual was paid on a day-rate basis.  Notably, the court specifically considered the plaintiff's tax records in reaching this conclusion.  *See id.*

---

[5] Perhaps the most inaccurate factual assertion Plaintiffs make here is the following: "It is essentially undisputed that all Plaintiffs were working as full-time desk adjusters for CRU, at least Monday through Saturday, with a specified work shift during normal business hours (with various extra hours works (sic) nights and evenings)." *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. # 59) at 8.  Not only does CRU ardently deny that "all Plaintiffs were working as full-time desk adjusters for CRU, at least Monday through Saturday, with a specified work shift during normal business hours (with various extra hours worked nights and evenings);" but also, CRU recognizes no good-faith basis for Plaintiffs even making this assertion.

[6] In analyzing the third factor of the economic-realities test (the worker's opportunity for profit or loss), courts assess a variety of questions including whether the worker has the ability to: (1) negotiate compensation for their services, (2) earn additional income; and (3) control costs and deduct business expenses.  *See Carrell v. Sunland Constr., Inc.,* 998 F.2d 330, 333-34 (5th Cir. 1993).

Here, the Plaintiffs' tax returns are clearly relevant to the application of the economic-realities test, which will be a focus in CRU's forthcoming response to Plaintiffs' Motion for Notice. As such, CRU would respectfully ask that the Court order Plaintiffs to produce these relevant and vital records immediately.

### 3. *Defendants do not seek to delay anything.*

Instead of accepting any responsibility for their continued refusal to produce, or even try to obtain, the relevant tax records in this case, Plaintiffs argue that CRU should have sought to compel the tax documents earlier. *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 6–7. To reiterate, CRU is not seeking to delay this proceeding. CRU merely seeks to discover the important records identified in its Amended Motion to Compel, that are directly relevant to its forthcoming response in opposition to Plaintiffs' Motion for Notice. If Plaintiffs simply complied with their discovery obligations, and made good on their promises to produce documents, the parties would be done with Phase-1 discovery by now.[7]

Plaintiffs' attempt to blame CRU for not moving to compel Plaintiffs' tax records earlier highlights the frustrations that CRU has encountered in dealing with Plaintiffs' unwillingness to comply with their discovery obligations, and is merely an attempt to minimize the importance of the Plaintiffs' tax returns. For starters, several of the Plaintiffs testified that they did not file tax returns for all or some of the years between 2019 and 2022.[8] Obviously, there would be no delay

---

[7] Although CRU would argue that Plaintiffs' 2023 tax records are relevant to this matter, CRU is not asking the Court to postpone its deadline to respond to Plaintiffs' Motion for Notice until it receives the Plaintiffs' 2023 tax records.

[8] *See e.g.*, Defs.' Am. Mot. to Comp., Ex. E, Deposition of Carla Collins (Dkt. #53-22) at 233:21–234:10 (did not file taxes in 2021 or 2022); Defs.' Am. Mot. to Comp., Ex. F, Deposition of Pamela James (Dkt. #53-23) at 81:18–83:7 (did not file taxes in 2020, 2021, and 2022); Defs.' Am. Mot. to Comp., Ex. C, Deposition of Jill Mansfield (Dkt. #53-20) at 37:17–24 (did not file taxes in 2021 and 2022); Defs.' Am. Mot. to Comp., Ex. G, Deposition of Basil Leo Riley, III (Dkt. #53-24) at 93:7–11 (did not file taxes in 2022); Defs.' Am. Mot. to Comp., Ex. H, Deposition of Ashley Ruise (Dkt. #53-25) at 154:24–155:2 (did not file taxes in 2021 or 2022).

in each such Plaintiff obtaining his/her tax return for a year in which a tax return was not even filed.

Second, Plaintiffs have had custody and/or control over their tax returns during this entire case, and may very well have had them in their possession this whole time. In fact, in an e-mail message from Plaintiffs' counsel to CRU's counsel on October 6, 2023 (seeking an extension of the deadline by which two of the Plaintiffs had to respond to written discovery requests), Plaintiffs' counsel represented that they were waiting to receive the tax returns from those two Plaintiffs so that he could respond to the discovery requests.[9] This e-mail message suggests that at least two of the Plaintiffs have had their tax returns this whole time.

Finally, the majority of the records sought could be obtained by the Plaintiffs by their merely logging into the accounts on the Internal Revenue Service website that the majority of them had already created to download the Wage and Income Transcripts that they produced, to download the Tax Return Transcripts. This would be neither time-consuming nor burdensome. If the Plaintiffs were truly concerned about delay in these proceedings, then they would have produced a long time ago the tax records in their possession or custody, and ordered those not in their possession or custody.

### C.  Mays Continues to Fail to Comply with Her Discovery Obligations.

Mays continues to refuse to comply with her discovery obligations. She has not even made good on her lawyers' commitment that she would produce unquestionably relevant materials, including all of the résumés that she has used over the past three years, and her Forms 1099 and W-2 for the past three years. *See* Pls.' Resp. to Defs.' Am. Mot. to Comp. (Dkt. #59) at 3–5. CRU would respectfully request that the Court order Mays to comply with these discovery obligations.

---

[9] *See* Defs.' Am. Mot. to Comp., Ex. A.2, E-mail message from K. O'Brien to M. Hurst (Oct. 6, 2023) (Dkt. #53-4).

With regard to CRU, Inc.'s Request for Admission ("RFA") No. 2, CRU simply seeks confirmation that Mays' denial was based on her actually denying the assertion contained therein, and not a response provided by her lawyers without her input. Plaintiffs' counsel now represents that they have not communicated with Mays since November 12, 2023, which was *before* CRU served the RFA at issue in this lawsuit. CRU would merely ask the Court to have Mays' denial to RFA No. 2 withdrawn, as it was clearly made without her input.[10]

---

[10] In Plaintiffs' Response, Plaintiffs' counsel suggests that their refusal to disclose the reason for Mays' denial to CRU Inc.'s Request for Admission No. 2, is because of CRU Inc.'s "phrasing of the Request (and CRU, Inc.'s use of undefined terms)." Such gamesmanship in discovery responses is simply not permitted by Rule 36 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 36(a)(4)–(5). If Mays denied CRU, Inc.'s RFA No. 2 because of the use of an undefined term, then that should have been stated, or an objection should have been lodged. *See id.*

        Respectfully submitted,

        HALLETT & PERRIN, P.C.
        1445 Ross Avenue, Suite 2400
        Dallas, Texas 75202
        214.953.0053
        (f) 214.922.4142

By: *Monte K. Hurst*
        Monte K. Hurst
        State Bar No. 00796802
        Monte.Hurst@hallettperrin.com

        Kristen A. Laster
        State Bar No. 24076499
        KBrumbalow@hallettperrin.com

        *Counsel for Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 5, 2024, I served a copy of the foregoing document on Plaintiffs' counsel as follows in compliance with Rule 5(b) of the Federal Rules of Civil Procedure:

Mr. Kerry O'Brien
O'BRIEN LAW FIRM
1011 Westlake Drive
Austin, Texas 78746
KO@obrienlawpc.com

Mr. Travis Gasper
GASPER LAW, PLLC
1408 North Riverfront Boulevard, Suite 323
Dallas, Texas 75207
Travis@travisgasper.com

*Monte K. Hurst*
Monte K. Hurst