

EXHIBIT

A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **C. M. COLLINS, N. J. LUNDY and R. C. L. MAYS,** *individually and on behalf of all others similarly situated,* | § § § § | |
| *Plaintiffs,* | § § | |
| **VS.** | § § | **CIVIL ACTION NO. 4:22-cv-1073** |
| **CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC.,** | § § § § | |
| *Defendants.* | § § § | |

## AFFIDAVIT OF MONTE K. HURST

BEFORE ME, the undersigned authority, on this day personally appeared Monte K. Hurst, who by being duly sworn, deposed as follows:

1. My name is Monte K. Hurst.  I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am fully competent to make this Affidavit.  The facts stated herein are true and correct and are based on my personal knowledge.

2. I am lead counsel for Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively, "CRU") in this case.  I submit this Affidavit to demonstrate the amount of reasonable and necessary attorneys' fees that have been incurred by CRU in their counsel's (a) drafting Defendants' Emergency Motion to Compel Discovery and to Extend Deadline to File Response in Opposition to Plaintiffs' Motion for Notice (Dkt. #45) ("Emergency MTC") and Defendants' Amended Motion to Compel Discovery (Dkt. #53) ("Amended MTC") (collectively, "Motions to Compel"), (b) preparing for and participating in the corresponding conferences, and (c) preparing Defendants' Application for Award of Attorneys' Fees Incurred in Making Their Motions to Compel.

3.    CRU filed the Motions to Compel as a result of their not being provided the materials which Plaintiffs[1] committed—in their representations to the Court, in their discovery responses, and in their written and binding agreements with CRU—to produce.

*Background Information*

4.    I am an attorney, I am duly licensed by the Supreme Court of Texas to practice law, and I am a member of the State Bar of Texas. I was licensed to practice law in 1996. I am admitted to practice law before all federal district courts in Texas, U.S. Court of Appeals for the Fifth Circuit, and U.S. Supreme Court. I have been Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization since 2004.

5.    I am an Equity Shareholder at the law firm of Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt") in Dallas, Texas.

6.    Prior to transitioning my practice to Munsch Hardt in March 2026, I was an Equity Shareholder at the law firm of Hallett & Perrin, P.C. ("H&P") in Dallas, Texas. From 2022 to 2025, I was Head of H&P's Litigation Section and a Member of the Firm's Board of Directors. I also lead H&P's Labor and Employment practice.

7.    Prior to transitioning my practice to H&P in June 2015, I was an Equity Partner at Hermes Sargent Bates, LLP ("HSB"). I was elected into HSB's Equity Partnership in 2006. From 2000 to 2003, I was an Associate at HSB. In 2003, I was elected as a Non-Equity Partner.

8.    I am an experienced litigator and trial attorney and I focus my practice on all aspects of employment law and on business litigation. I represent companies before judges, juries, administrative agencies and arbitrators, defending claims of workplace discrimination, retaliation and denial of overtime pay, and defending and prosecuting contract, non-compete, and fiduciary duty claims.

9.    Qualifications for becoming Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization include substantial involvement in labor and employment matters, qualified vetted references from judges and lawyers in the area, passing a comprehensive examination in labor and employment law, and completing 60 hours of continuing legal education in labor and employment law. Based on my recent review of the Texas Board of Legal Specialization's website, there are currently 648 attorneys in Texas who are Board Certified in Labor and Employment

---

[1] The Plaintiffs on whom CRU served discovery are Carla Collins ("Collins"), Nikki Lundy ("Lundy"), Rasheedah Mays ("Mays"), Pamela James ("James"), Jill Mansfield ("Mansfield"), Sheena Nickelberry ("Nickelberry"), Basil Leo Riley, III ("Riley"), Ashley Ruise ("Ruise"), and Tammy Russell-Brown ("Russell-Brown").

Law. State Bar of Texas' Attorney Statistical Profile indicates that, as of December 31, 2023, there were 113,771 active attorneys licensed by the State Bar of Texas. Based on these numbers, less than .057% of active attorneys licensed by the State Bar are Board-Certified in Labor and Employment Law.

10.    I represent companies of all sizes, from Fortune 500 companies to small start-up businesses, including employers in distribution, entertainment, financial services and insurance, healthcare, hospitality, information technology, retail, and transportation.

11.    I regularly advise employers on how to minimize legal risks in supervising, evaluating, investigating and terminating employees, implementing reductions in force, and creating and applying personnel policies, and drafting and enforcing separation agreements and noncompetition agreements.

12.    I counsel management on how to achieve business goals while complying with federal, state, and local labor laws and regulations such as the Americans with Disabilities Act, Family and Medical Leave Act, Worker Adjustment and Retraining Notification Act, Employee Retirement Income Security Act, wage and hour laws, and affirmative action obligations.

13.    I provide practical management training on issues such as sexual harassment, documenting employee performance, and accommodating disabled workers.

14.    I have tried over 20 jury trials, most in which I served as lead counsel. I have represented clients in over a dozen arbitrations that proceeded to final hearing. I have authored or coauthored hundreds of dispositive motions, including motions to dismiss and motions for summary judgment, and responses to such motions.

15.    I have argued before the U.S. Court of Appeals for the Fifth Circuit on three separate occasions (each time achieving an affirmation in favor of the client). I have argued before several Texas courts of appeals. I have authored or coauthored over 20 appellate briefs, including briefs to the Supreme Court of Texas, multiple Texas courts of appeals, and the U.S. Court of Appeals for the Fifth Circuit.

16.    I am AV Rated by *Martindale-Hubbell*. I have been named to the "Texas Super Lawyers" list by *Thomson Reuters*. I have been voted by my peers to "The Best Lawyers in Dallas" in *D Magazine*. I have also been included in "The Best Business Lawyers in Dallas" in *D Magazine*.

*This Case*

17.    CRU has requested each Plaintiff to produce his/her federal tax returns and Forms W-2 and 1099s from 2019 to the present.  *See* Am. MTC, Ex. A.1, Pls.' Responses to CRU USA's First Request for Production (for Collins, Lundy, and Mays, this is Request No. 18; for James, Mansfield, Nickelberry, Riley, Ruise and Russell-Brown, this is Request No. 13) (Dkt. #53-3).

18.    On September 19, 2023, I sent a deficiency letter to Plaintiffs' counsel identifying documents and information Plaintiffs have failed to produce. Attached hereto as Exhibit A.1 is a true and correct copy of the letter from me to Kerry O'Brien on September 19, 2023.

19.    On October 6, 2023, Plaintiffs' counsel e-mailed CRU's counsel requesting an extension of the deadline by which two of the Plaintiffs must respond to written discovery requests.  In that e-mail message, Plaintiffs' counsel represented that he was waiting to receive the tax returns from those two Plaintiffs so that he could respond to the discovery requests. *See* Am. MTC, Ex. A.2, e-mail message from Kerry O'Brien to me (Oct. 6, 2023) (Dkt. #53-4).

20.    On October 20, 2023, I sent a follow up e-mail message to Plaintiffs' counsel regarding Plaintiffs' discovery deficiencies outlined in my September 19, 2023 letter.  Attached hereto as Exhibit A.2 is a true and correct copy of the e-mail message from me to Kerry O'Brien on October 20, 2023.

21.    On November 3, 2023, Plaintiffs' counsel responded to our September 19, 2023 deficiency letter stating that Plaintiffs (a) will produce responsive documents evidencing work performed outside of CRU while simultaneously working for CRU, and (b) will not be providing social media data, smartphone data or e-mail messages absent an order from the Court.  Attached hereto as Exhibit A.3 is a true and correct copy of the letter from Kerry O'Brien to me on November 3, 2023.

22.    On November 17, 2023, the parties' counsel participated in a telephone conference to confer on the remaining discovery deficiencies.

23.    On November 20, 2023, I sent an e-mail message to the Court outlining Plaintiffs' discovery deficiencies and requesting that the Court set a telephone conference with the parties' counsel as contemplated in the Court's Preliminary Scheduling Order (Dkt. #18).  *See* Am. MTC, Ex. A.3, e-mail exchange among Lori Munoz, Kerry O'Brien and me (Nov. 20 and 21, 2023) (Dkt. #53-5).

-4-

24. On November 21, 2023, Plaintiffs' counsel represented the following in an e-mail message to the Court: (a) Riley stated in both his interrogatory responses and deposition testimony that he had continued to work for another company during his approximately first two months with CRU; (b) Plaintiffs agree that those records may concern the claims and defenses in this case; and (c) Plaintiffs' counsel were working with Riley to promptly produce any tax forms and pay stubs in his possession, custody, or control that concern that concurrent employment. *See* Am. MTC, Ex. A.3, e-mail exchange among Lori Munoz, Kerry O'Brien and me (Nov. 20 and 21, 2023) (Dkt. #53-5).

25. On November 27, 2023, the parties' counsel participated in a telephone conference with the Court. Through discussions between counsel after the telephone conference, the parties agreed to the following:

   a. Plaintiffs will, by December 8, 2023, remove their objections to the Defendants' requests for production seeking tax information specifically as to the eight identified Plaintiffs' W-2s, 1099s, and T4A-NR for Tax Years 2019, 2020, 2021, and 2022, and respond in accordance with the Federal Rules of Civil Procedure; and

   b. Plaintiffs will, by December 8, 2023, produce for each Facebook account that Collins manages, all of the items under each of the following subfolders under Ms. Collins' Facebook Activity Log, for days when she claimed to have been working for CRU, in HTML format:

   - Your Posts;
   - Messages;
   - Comments and reactions;
   - Stories;
   - Groups;
   - Pages;
   - Events; and
   - Other activity.

   *See* Am. MTC, Ex. A.4, Letter from me to Kerry O'Brien (Nov. 30, 2023) and corresponding e-mail message exchange between Mr. O'Brien and me (Dec. 4, 2023) (Dkt. #53-6).

26. On December 8, 2023, Collins, Mays and James did not produce tax documents. Plaintiffs' counsel communicated that James is currently in Canada and does not return to the U.S. until December 13, 2023, and committed that they would produce her tax documents sometime upon her

return.  *See* Em. MTC, Ex. A.2, e-mail message from Kerry O'Brien's to me of December 8, 2023 (Dkt. #45-4).

27.    On December 8, 2023, Plaintiffs' counsel communicated that Ms. Collins was not able to comply with her obligations to produce her Facebook data because her family suffered a family tragedy in the middle of last week. *See* Em. MTC, Ex. A.2, e-mail message from Kerry O'Brien's to me of December 8, 2023 (Dkt. #45-4).

28.    On December 11, 2023, I sent an e-mail message to Plaintiffs' counsel following up on the production of documents and information necessary to review in connection with CRU's response to Plaintiffs' Motion for Notice, and which Plaintiffs' counsel had committed to produce.  Attached hereto as Exhibit A.4 is a true and correct copy of my e-mail message to Kerry O'Brien of December 11, 2023.

29.    On December 12, 2023, the parties' counsel participated in a telephone conference to confer on the remaining discovery deficiencies.

30.    On Decembre 12, 2023, I sent an e-mail message to the Court outlining Plaintiffs' discovery deficiencies and requesting that the Court set an emergency hearing among the parties' counsel as contemplated in the Court's Preliminary Scheduling Order (Dkt. #18).  On December 13, 2023, Ms. Munoz confirmed that the parties were free to file any motions to compel based on the Court already having conducted a discovery conference on November 27, 2023.  Attached hereto as Exhibit A.5 is a true and correct copy of the e-mail message exchange between Ms. Munoz and me on December 12 and 13, 2023.

31.    On December 13, 2023, CRU filed their Emergency MTC (Dkt. #45).

32.    On December 14, 2023, Russell-Brown committed to produce all of her Forms 1099 and W-2 by December 28, 2023.  *See* Am. MTC, Ex. A.5, Russell-Brown's Response to CRU USA's First Request for Production No. 13 (Dkt. #53-7).

33.    On December 14, 2023, Plaintiffs committed to produce by December 28, 2023, any of the Plaintiffs' résumés that had not already been produced. *See* Am. MTC, Ex. A.6, Pls.' Responses to CRU's Second Request for Production No. 7 (Dkt. #53-8).

34.    On December 1, 2023, Collins posted a picture from her "Marie Collins" Facebook account.  *See* Am. MTC, Ex. A.14, screenshot taken by me of Ms. Collins' public Facebook post on December 1, 2023, from her "Marie Collins" Facebook account (Dkt. #53-15).

35. On December 1, 2023, Collins made a post from her "Carla Marie The Goddess" Facebook account. *See* Am. MTC, Ex. A.15, screenshot taken by me of Ms. Collins' public Facebook post on December 1, 2023, from her "Carla Marie The Goddess" Facebook account (Dkt. #53-16).

36. On December 6, 2023, Collins posted a picture from her "Shesus Christiana" Facebook account. *See* Am. MTC, Ex. A.16, screenshot taken by me of Ms. Collins' public Facebook post on December 6, 2023, from her "Shesus Christiana" Facebook account (Dkt. #53-17).

37. In the Declaration of Travis Gasper, in support of Plaintiffs' Response to Defendants' Emergency Motion to Compel Discovery and to Extend Deadline to File Response in Opposition to Plaintiffs' Motion for Notice, (Dkt. #47-1), Plaintiffs' counsel Travis Gasper represented that (a) Collins could not access several of her Facebook accounts to produce the corresponding Facebook data, and (b) they could not produce Collins' Facebook messages because Facebook does not allow Ms. Collins to limit a download to messages exchanged between her and another specific person, and thus culling through all of Ms. Collins' messages to redact names of domestic violence victims with whom she exchanged messages would prove far too time-consuming and technologically challenging.

38. In response to Mr. Gasper's representations, CRU's legal team completed a download of one of the team member's Facebook messages. We learned that Facebook maintains in separate folders all direct messages exchanged between a Facebook user and each other Facebook user with whom they exchanged messages. When a Facebook user asks Facebook to send to them all Facebook direct messages sent to or received by them over a certain period of time, Facebook responds by sending the requesting party all of those folders, each one of which is labeled with the name of the individual (or the names of the multiple individuals) with whom the requesting user exchanged messages.

39. On December 28, 2023, I proposed to Plaintiffs' counsel specific and logical terms for an "Attorneys' Eyes Only" ("AEO") provision that would provide for an AEO designation for documents that only the receiving party's counsel, and not the receiving party itself, could review, as well as a means to challenge the designation. Plaintiffs' counsel has refused to agree to such a provision. *See* Am. MTC, Ex. A.17, e-mail message from me to Kerry O'Brien on December 28, 2023 (Dkt. #53-18).

40. On January 9, 2024, I sent a letter to Plaintiffs' counsel regarding Ruise's failure to produce her relevant tax forms. Attached hereto as Exhibit A.6 is a true and correct copy of my letter to Kerry O'Brien on January 9, 2024.

41. On January 24, 2024, I sent a letter to Plaintiffs' counsel articulating CRU's concerns regarding the ongoing discovery disputes regarding Plaintiffs' failures to provide tax records and several other deficiencies to Plaintiffs' responses to CRU's written discovery requests. Attached hereto as Exhibit A.7 is a true and correct copy of my letter to Kerry O'Brien on January 24, 2024.

42. On January 30, 2024, I sent an e-mail message to Plaintiffs' counsel seeking dates on which they were available to confer on the outstanding discovery issues. On January 31, 2024, Plaintiffs' counsel responded to my e-mail message, but failed to satisfy CRU's discovery concerns. Attached hereto as Exhibit A.8 is a true and correct copy of an e-mail message exchange between Kerry O'Brien and me on January 30 and 31, 2024.

43. On February 1, 2024, the parties' counsel participated in a telephone conference to confer on the remaining discovery deficiencies.

44. On February 9, 2024, CRU filed their Amended MTC (Dkt. #53).

45. We learned through depositions that multiple Plaintiffs have additional résumés that they had not been produced in discovery. For this reason, CRU requested (in Request No. 7 of CRU's Second Set of Requests for Production) the production of *all* résumés from the Plaintiffs, not only the one résumé they each initially produced. Prior to CRU's Amended MTC, not a single Plaintiff produced a résumé following CRU's request for all résumés that Plaintiffs had not previously produced, nor did a single Plaintiff represent that no such document exists. *See* Am. MTC, Ex. A.6, Pls.' Responses to CRU's Second Request for Production No. 7 (Dkt. #53-8).

46. Although Riley was asked by CRU (in CRU's First Set of Requests for Production No. 8) to produce any paystubs for payments he received from July 1, 2021 through September 30, 2022, Riley did not produce anything in response to this Request prior to CRU's Amended MTC. *See* Am. MTC, Ex. A.6, Riley's Responses to CRU's Second Request for Production No. 8 (Dkt. #53-8).

47. Prior to CRU filing their Amended MTC, CRU had not received the following:

   • Any Forms W-2 and/or 1099 for Mays;
   • Any Forms W-2 and/or 1099 for Russell-Brown;
   • Any Forms W-2 and/or 1099 for Nickelberry for 2020; or
   • Any Forms W-2 and/or 1099 for Mansfield for 2022.

*Attorneys' Fees and Costs*

48.  I have represented parties in hundreds of employment and business litigation cases, including ones in which parties have asserted the same or similar claims to the ones asserted in this case.  As part of that experience, I am familiar with the matters, methods, opinions, and work necessary to prosecute and defend these types of cases, as well as the fees typically charged by attorneys in such cases.

49.  I have an opinion as to what reasonable and necessary attorneys' fees and costs of court would be in this case based on my review of all our files and the work on this case.  I have also considered the following in determining the reasonableness and necessity of attorneys' fees:

a)  The time and labor required;

b)  The novelty and difficulty of the questions involved;

c)  The skill requisite to perform the legal service properly;

d)  The likelihood that the acceptance of the particular employment prevented other employment by the attorney;

e)  The fee customarily charged in the locality for similar legal services;

f)  Whether the fee is fixed or contingent on results obtained, or the uncertainty of collection before the legal services have been rendered;

g)  The time limitations imposed by the client or by the circumstances;

h)  The amount involved and the results obtained;

i)  The experience, reputation, and ability of the attorney performing the services;

j)  Case undesirability;

k)  The nature and length of the professional relationship with the client; and

l)  Awards in similar cases.

50.   CRU incurred $97,616.00 in making CRU's Motions to Compel, which includes counsel's pre-filing activities necessary to ripen the Motions to Compel, drafting deficiency letters, reviewing correspondence from Plaintiffs' counsel, reviewing document productions from Plaintiffs' counsel, and meet-and-confer discussions. However, as a demonstration of moderation, CRU only asks the Court to award the sum of reasonable and necessary attorneys' fees incurred by CRU in their counsel's (a) drafting Defendants' Motions to Compel, (b) preparing for and participating in the corresponding conferences, and (c) preparing Defendants' Application for Award of Attorneys' Fees Incurred in Making Their Motions to Compel. CRU incurred $63,978.00 in their counsel's (a) drafting Defendants' Motions to Compel, (b) preparing for and participating in the corresponding conferences, and (c) preparing Defendants' Application for Award of Attorneys' Fees Incurred in Making Their Motions to Compel.

51.   Attached as Exhibit A.9 is a printout illustrating the legal work performed by myself (MKH), Kristen A. Brumbalow (KAB), Clayton S. Carter (CSC), Elizabeth M. Reed (EMR), Condred C. Roberts (CCR), and Ceicili S. Morales (CSD) in making the Motions to Compel, which includes counsel's pre-filing activities necessary to ripen the Motions to Compel, drafting deficiency letters, reviewing correspondence from Plaintiffs' counsel, reviewing document productions from Plaintiffs' counsel, and meet-and-confer discussions, as well as (a) drafting Defendants' Motions to Compel, and (b) preparing for and participating in the corresponding conferences. The time entries for (a) drafting Defendants' Motions to Compel, and (b) preparing for and participating in the corresponding conferences, are highlighted in yellow.

52.   The records attached to this Affidavit are true and correct printouts or copies of the original materials of Hallett & Perrin. It was the regular course of business of Hallett & Perrin for an employee or representative of Hallett & Perrin with knowledge of the act, event, condition, opinion, or diagnosis recorded, to make these records or to transmit the information to be included in these records. The records were made at or near the time or reasonably soon after the act, event, condition, opinion, or diagnosis that was recorded. The records detail the work performed, the amount of time for each task, the rate for each attorney, and the total amount of fees incurred for performing tasks related to this lawsuit. However, I have redacted the parts of the entries I believe are covered by the attorney-client privilege and/or the work-product privilege.

53.   Additionally, in preparing Defendants' Application for Award of Attorneys' Fees Incurred in Making Their Motions to Compel, the following Munsch Hardt attorneys expended the hours indicated below, causing the incurrence of fees indicated below:

| Timekeeper | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| Monte K. Hurst | 5 | $625.00 | $3,125.00 |
| Ceicili S. Morales | 19.4 | $420.00 | $8,148.00 |

54.     I am personally familiar with the services that the attorneys with Hallett & Perrin (from this case's inception through February 2026) and the attorneys with Munsch Hardt (from March 2026 through the present) have provided in this matter.  For those services, I have reviewed the billings for purposes of this Affidavit.  In addition, I have personal knowledge of the hours spent by such attorneys on behalf of CRU, which are set forth in the books and records of Hallett & Perrin and those of Munsch Hardt, and are prepared in the ordinary course of business by each of the attorneys who have rendered the services set forth in such records.  It was the regular practice of the attorneys at Hallett & Perrin, and it is the regular practice of the attorneys at Munsch Hardt, to record the services rendered in such records.

55.     I have reviewed the time entries to ensure there were no excessive or redundant hours billed.  This case was staffed reasonably and appropriately given the nature of the claims and number of plaintiffs involved, and the number of hours worked on tasks for which CRU seeks an award of attorneys' fees was reasonable under the circumstances.

56.     I am familiar with the rates customarily charged by attorneys and law clerks in the Dallas-Fort Worth area handling such cases.  My reduced hourly rate in this case in 2023 and 2024 was $520.00.  My current hourly rate is $625.00.  Ms. Brumbalow's reduced hourly rate in this case in 2023 and 2024 was $385.00.  Ms. Morales' reduced hourly rate in this case in 2023 and 2024 was $180.00.  Ms. Morales' current hourly rate is $420.00. It is my opinion that rates charged by the attorneys in this case are within, or most likely below, those rates customarily charged by attorneys in the Dallas/Fort Worth area who possess the same or similar qualifications and who are handling the same or similar types of litigation.  Moreover, after review of the attached time entries, it is my opinion that the services rendered in this case by the attorneys at Hallett & Perrin (from the inception of this case through February 2026) and by the attorneys at Munsch Hardt (from March 2026 to the present) were necessary to ensure the effective representation of CRU in this lawsuit.

-11-

FURTHER AFFIANT SAYETH NOT.

_____
MONTE K. HURST

SUBSCRIBED AND SWORN TO BEFORE ME on this 28th day of July, 2026.

_____
Notary Public in and for the State of Texas

MORGAN GRAY
Notary Public, State of Texas
Comm. Expires 12-07-2027
Notary ID 134671988

-12-