

EXHIBIT
A.1

**HALLETT&PERRIN**

**MONTE K. HURST**
Board Certified – Labor and Employment Law
Texas Board of Legal Specialization
**D** 214.922.4111  **F** 214.922.4142
monte.hurst@hallettperrin.com

September 19, 2023

Mr. Kerry O'Brien                                    **Via e-mail: KO@obrienlawpc.com**
O'BRIEN LAW FIRM
1011 Westlake Drive
Austin, Texas 78746

Mr. Travis Gasper                                    **Via e-mail: Travis@travisgasper.com**
GASPER LAW, PLLC
1408 North Riverfront Boulevard, Suite 323
Dallas, Texas 75207

> **Re:** **Civil Action No.: 4:22-cv-1073**
> **Our File No.: 39293/3**
> ***C.M. Collins, N.J. Lundy, and R.C.I. Mays, individually and on behalf of all other similarly situated vs. Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.***

Dear Kerry and Travis:

I am writing to articulate Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.'s (collectively "Defendants") concerns regarding Plaintiffs' deficient responses to Defendants' first set of written discovery requests.[1]  I am requesting that Plaintiffs supplement their deficient discovery responses to comply with their discovery obligations, explained in further detail below.  The deficiencies in Plaintiffs' written discovery responses must be resolved before we can proceed with further discovery.

**General Deficiencies**

***Failure to Comply with Heller v. City of Dallas***

As an initial matter, Plaintiffs responded to numerous discovery requests from Defendants by asserting various objections and then stating, "without waiving these objections . . . ."  However, Plaintiffs make no attempt in each of these responses to comply with their discovery obligations to specify as to which part of the discovery request they are responding (if any).  To comply with the Federal Rules of Civil Procedure, Plaintiffs "must . . . affirmatively explain what portion of an interrogatory or document request is objectionable and why [and] affirmatively explain what portion of the interrogatory is not objectionable and the subject of the answer or response."  *Lopez*

---

[1] Plaintiffs C.M. Collins, N.J. Lundy, and R.C.L. Mays will collectively be referred to as the "Named Plaintiffs." Plaintiffs Ann Marie James, Jill Mansfield, Sheena Nickleberry, Basil Leo Riley, III, and Ashley Ruise will collectively be referred to as the "Opt-in Plaintiffs."  The Named Plaintiffs and Opt-in Plaintiffs will collectively be referred to as "Plaintiffs."

Mr. Kerry O'Brien
Mr. Travis Gasper
September 19, 2023
Page 2

*v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014)); Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest."). A party objecting to written discovery must not only state the specific legal or factual basis for the objection, but also the extent to which it is refusing to comply with the request. *See* Fed R. Civ. P. 34(b)(2)(C). Objections baselessly made "to the extent" a request is objectionable wholly fail to comply with the strict requirements of Rule 34. Accordingly, "if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Heller*, 303 F.R.D. at 487. "To make such an objection in the face of these considerations is to engage in the 'abusive practice of objecting to discovery requests reflexively—but not reflectively—and without a factual [or legal] basis that Rule 26(g) was enacted to stop." *Id.* (quoting *Mancia v. Mayflower Textile Services. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008)).

Plaintiffs must amend their discovery responses to remove the phrase "without waiving these objections." Rules 33(b)(3) and 34(b)(2)(C) prohibit this practice by requiring Plaintiffs to fully respond to discovery requests to the extent they are not objectionable. *See Heller*, 303 F.R.D. at 487 (quoting *Mann v. Island Resorts Dev., Inc.*, No. 3:08cv297/RS/EMT, 2009 WL 6409113, at *3 (N.D. Fla. Feb. 21, 2009)) ("[A]nswering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not. What this response really says is that counsel does not know for sure whether the objection is sustainable, that it probably is not, but thinks it is wise to cover all bets anyway, just in case.").

Throughout their discovery responses, Plaintiffs disregard this well-settled requirement by asserting pages of objections without providing the requisite clarifying information set forth above. Plaintiffs must amend their responses to state what portion of each request is objectionable and why and identify the portion to which it is responding (if any). Importantly, if Plaintiffs are not withholding responsive documents on the basis of an objection, it must drop those "abusive" objections. *See Heller*, 303 F.R.D. at 487. Without this correction Defendants cannot determine with what part of each discovery request Plaintiffs have decided to comply, if any.

### *Failure to Supplement as Promised*

Plaintiffs have also failed to produce documents at the time which Plaintiffs promised to produce documents. Specifically, Named Plaintiffs' responses to RFPs 44 and Opt-in Plaintiffs' responses to RFP 23 seek the current résumés of Plaintiffs. After asserting various improper objections, Plaintiffs agreed to produce responsive documents in some cases within 14 days of providing their discovery responses. Some of Plaintiffs' responses were served on June 28, 2023, meaning Plaintiffs should have produced responsive documents by July 12, 2023. More than two months have passed since this date, yet Plaintiffs have still failed to produce responsive documents. Defendants demand responsive documents be produced immediately.

Mr. Kerry O'Brien
Mr. Travis Gasper
September 19, 2023
Page 3

### *Privilege Objections*

Named Plaintiffs asserted objections to multiple discovery requests by CRU on grounds that they seek privileged attorney-client information.  *See* RFP Response No. 30 to Named Plaintiffs and Interrogatory No. 18 to Named Plaintiffs.  Merely objecting on "privilege" grounds, however, is insufficient.  Rather, if Named Plaintiffs are withholding responsive materials based on attorney-client or work-product privilege, they must describe the withheld documents by submitting a privilege log that complies with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure.  *See Areizaga v. ADW Corp.*, 314 F.R.D. 428, 439 (N.D. Tex. 2016).  If Named Plaintiffs are not actually withholding any documents on these grounds, they must withdraw their objections.  *See Heller*, 303 F.R.D. at 483 ("[I]f an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made.").

### **Plaintiffs' Responses to Defendant's First Set of Requests for Production**

In addition to the general deficiencies discussed above, Plaintiffs have also asserted problematic and improper objections to specific requests for production and interrogatories.  These objections must be removed and Plaintiffs responses must be supplemented to fully respond to each discovery request or the part of each discovery request to which a legitimate objection does not apply.

For example, RFP No. 10 to Named Plaintiffs and RFP No. 9 to Opt-In Plaintiffs seek documents showing various categories of information pertaining to work performed by Plaintiffs for businesses other than Defendants since 2019 including: (a) dates worked; (b) job assignments; (c) job duties; (d) job performance; and (e) pay rates.  Plaintiffs asserted the baseless objection of overbreadth stating Defendants have no legitimate need for these documents in this lawsuit since it pertains to Plaintiffs' overtime claims against Defendants.  Of course, documents showing the work done by Plaintiffs for other entities is plainly relevant in this case.  Plaintiffs are claiming they worked substantial hours while working as independent contractors for Defendants, in some cases from 6:00 a.m. through the middle of the night.  Documents showing work done for other employers would likely refute Plaintiffs' allegations of the hours they allegedly worked for Defendants.  Furthermore, if Plaintiffs were working as independent contractors for Defendants and other entities simultaneously, such would clearly be relevant to Plaintiffs' allegations that Defendants exercised a significant amount of control over Plaintiffs.  Plaintiffs assert that Defendants controlled them to the extent that an employer/employee relationship existed.  Therefore, it is relevant to whether Plaintiffs were simultaneously deployed on assignments for other entities.  Most importantly, these variations among Plaintiffs make it clearly relevant for the initial discovery phase.  Plaintiffs also assert a confidentiality objection which has no merit, as Defendants are not seeking any confidential information, but rather, documents that show basic information of Plaintiffs' other working engagements while performing services for Defendants.  Even if confidential information was sought, the Court entered a Protective Order on April 11, 2023 [Doc. 19]; thus, Plaintiffs would have no legitimate concern for wrongful disclosure.  Accordingly, Plaintiffs must supplement their responses.

Mr. Kerry O'Brien
Mr. Travis Gasper
September 19, 2023
Page 4


RFPs Nos. 43 and 46-50 to Named Plaintiffs seek the cellphone records, Facebook data, Instagram data, Tik Tok data, photographs and videos and personal and business e-mail messages of Plaintiffs for the days on which they claim to have been employed by Defendants. Defendants also seek cellphone records and photographs and videos of Opt-in Plaintiffs for the days on which they claim to have been employed by Defendants in RFPs Nos. 22 and 25. Plaintiffs asserted a litany of improper and rubber-stamped objections including the following: (1) overbroad and not narrowly tailored; (2) irrelevant; (3) abusive; and (4) not limited in time. Plaintiffs further assert the non-objection that because Plaintiffs believe Defendants seek the records to make a piecemeal reconstruction of Plaintiffs' daily hours, Plaintiffs can avoid their discovery obligations. All of Plaintiffs' objections, whether real or imaginary, ignore the plain relevance of these documents to the initial phase of discovery. Please note that Plaintiffs assert in this lawsuit that they were required to work specific hours and not permitted to leave their desks because of the amount of work they needed to perform. Documents such as Plaintiffs' cellphone records, social media posts, photographs, videos, and e-mail messages directly bear on whether they truly were working, and would even go to the variance among Plaintiffs on their daily activities and working conditions. This evidence also goes to the level of supervision of Defendants over Plaintiffs. For example, cellphone records and e-mail messages from the dates on which Plaintiffs were independent contractors of Defendants will show meetings between Plaintiffs and Defendants, or lack thereof, and the subjects of those meetings. These documents will further show the existence of pay negotiations, hours worked, simultaneous work for other entities, and other evidence that show whether the class members were similarly situated. While these documents will similarly show evidence regarding Plaintiffs' statuses as independent contractors and the actual hours they worked as independent contractors for Defendants, the RFPs' relevance later in the discovery process does not allow Plaintiffs to object during the initial phase where such documents are similarly relevant for the above stated reasons. Accordingly, these requests are clearly within the scope of discovery and must be supplemented.

### Plaintiffs' Responses to Defendants' First Set of Interrogatories

Interrogatory No. 12 to Named Plaintiffs and Interrogatory No. 8 to Opt-in Plaintiffs seek specific information regarding childcare of Plaintiffs' dependents on the days they allege they worked for Defendants. Plaintiffs objected on the grounds that the interrogatories are overbroad and insert their belief as to why Defendants seeks the information (to make a piecemeal reconstruction of Plaintiffs' daily hours) as a basis for not fully responding to the discovery. While Plaintiffs' belief is incorrect, Plaintiffs' opinion regarding why Defendants seek certain information is irrelevant to Plaintiffs' obligations to comply with discovery. Again, Plaintiffs assert in this lawsuit that they were required to work specific hours and not permitted to leave their desks because of the amount of work they needed to perform. The requested information is relevant to show whether the Plaintiffs are similarly situated, for among other reasons, showing the level of supervision by Defendants over each Plaintiff. For example, if certain Plaintiffs were permitted to run home educational programs or watch their children during the days on which they were purportedly working for Defendants, then clearly such Plaintiffs were not heavily supervised. Because the answers may vary from plaintiff to plaintiff, this information is plainly relevant to the initial phase of discovery.

Mr. Kerry O'Brien
Mr. Travis Gasper
September 19, 2023
Page 5

Similarly, Plaintiffs objected to Interrogatory No. 13 to Named Plaintiffs and Interrogatory No. 9 to Opt-in Plaintiffs which seeks identification of all sources of income from 2019 to present. Plaintiffs objected stating the interrogatories are "overly invasive, overly broad in time and scope, and not reasonably related to the legitimate needs of Defendants in this overtime lawsuit." In violation of well-established law, Plaintiffs asserted these boilerplate objections without providing any specific argument as to why Plaintiffs objections are proper. However, objections to discovery must be made with specificity, meaning that Plaintiffs have the obligation to explain and support their objections. *See Heller*, 303 F.R.D. at 483; *Faglie v. Meritage Homes of Texas, LLC*, No. 3:12-CV-966-D BF, 2013 WL 1608727, at *2 (N.D. Tex. Apr. 15, 2013). Boilerplate, unsupported objections are "improper and ineffective and may rise (or fall) to the level of what the Fifth Circuit has described as "an all-too-common example of the sort of 'Rambo tactics' that have brought disrepute upon attorneys and the legal system." *Heller*, 303 F.R.D. at 483. Therefore, Plaintiffs must show specifically how each discovery request is not relevant or otherwise objectionable to avoid waiving their objections. *See Areizaga*, 314 F.R.D. at 434 *(citing McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Plaintiffs likely failed to provide specific objections because there is no basis for their objections. As with much of the discovery propounded by Defendants, sources of income other than from Defendants are relevant to whether Plaintiffs are similarly situated, and ultimately, were properly classified as independent contractors. Whether Plaintiffs were contracting with other entities simultaneously to their contract work with Defendants directly bears on whether Plaintiffs were independent contractors and shows the supervision, or lack thereof, by Defendants over Plaintiffs. Again, this may vary from plaintiff to plaintiff which Defendants are entitled to explore during the initial discovery phase. Accordingly, Plaintiffs must supplement their interrogatory answers and remove their boilerplate objections.

### Demand for Supplementation

Our efforts to proceed with discovery have been hampered by Plaintiffs' unwillingness to respond to Defendants' written discovery requests within the Rules. We cannot complete the first phase of discovery and prepare an extensive brief responding to Plaintiffs' anticipated motion to certify the collective until Plaintiffs' discovery responses and document production have been properly supplemented, as explained herein. ***Therefore, we hereby demand that Plaintiffs correct the above-described deficient discovery responses and supplement their production with all responsive documents on or before close of business on Tuesday, September 26, 2023.*** Otherwise, we would have no choice but to seek the Court's intervention.

Mr. Kerry O'Brien
Mr. Travis Gasper
September 19, 2023
Page 6

Please let me hear from you.

Very truly yours,

*Monte K. Hurst*

Monte K. Hurst

MKH:cm