# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| C. M. COLLINS, N. J. LUNDY, and R. C. L. MAYS, *individually and on behalf of all others similarly situated,* | § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 4:22-cv-01073-SDJ** |
| v. | § § | |
| | § § | **Collective Action under** |
| **CATASTROPHE RESPONSE UNIT, INC. and** | § § | **29 U.S.C. § 216(b)** |
| **CATASTROPHE RESPONSE UNIT USA, INC. ,** | § § § | **JURY DEMANDED** |
| **Defendants.** | § § § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' APPLICATION FOR AWARD OF ATTORNEY FEES

COME NOW, nine Plaintiffs,[1] and hereby respond in opposition to "Defendants' Application for Award of Attorneys' Fees Incurred in Making their Motions to Compel" (Dkt. No. 81).

### I.   SUMMARY OF OPPOSITION

In summary, Plaintiffs oppose the fees requested by Defendants, because:

- Defendants' motions to compel were only partly successful;

---

[1] Pursuant to Defendants' Footnote 1 in their Amended Motion to Compel, "the term 'Plaintiffs' refers to Plaintiffs Carla Collins…, Nikki Lundy…, Rasheedah Mays…, Pamela James…, Jill Mansfield…, Sheena Nickelberry…, Basil Leo Riley, III…, Ashley Ruise…, and Tammy Russell-Brown…." (Dkt. No. 53.) Therefore, "Plaintiffs" in this discovery dispute refers to the three original named Plaintiffs (Collins, Mays, and Lundy) and the six opt-in Plaintiffs to which Defendants' compel motions are directed (James, Mansfield, Nickelberry, Riley, Ruise, and Russell-Brown). The other 9 individuals who filed consent notices at a later time have not yet been served discovery and are disregarded in this Response.

1

- Defendants failed to segregate the work based on the mixed success of their motions;

- Defendants failed to segregate their work as to the Plaintiff against whom relief was awarded, attempting to make all 9 Plaintiffs jointly liable for relief awarded against an individual Plaintiff;

- Defendants failed to follow the Court's pre-motion procedures on the only issue on which the Court granted relief against all 9 Plaintiffs;

- It would be unjust to award Defendants' fees against these overtime plaintiffs under the circumstances; and

- Defendants' billing records show instances of doubled-up and non-compensable work that, if fees are in fact awarded, should lead to a substantial reduction.

## II.  ARGUMENT AND AUTHORITIES

In support, Plaintiffs would show as follows:

**A.**      **Defendants were only partially successful on their motions to compel.**

1.      The chart on the following page describes the Court's rulings on Defendants' compel issues:

*[blank space intentional]*

2

| Issue | Court's Ruling |
|---|---|
| résumés | DENIED as moot, except GRANTED as to Mays.[2] Not pressed by Defendants in their Reply. |
| Riley's pay stubs | DENIED as moot. Riley doesn't have the requested records in his possession, custody, or control. Issue not pressed by Defendants in their Reply. |
| W-2s/1099s of Mansfield, Nickelberry, Mays, Russell-Brown | DENIED in part, GRANTED in part.<br><br>These four Plaintiffs had already provided the same information through Wage & Income Transcripts, but were ordered to also provide actual W-2s/1099s, if such tax forms could be reasonably located. |
| Tax returns or tax transcripts | GRANTED in part. All 9 Plaintiffs must produce their 2022 tax return or tax return transcripts. All 9 Plaintiffs must produce their 2019–2021 tax returns or tax return transcripts if the Plaintiff is reasonably able to locate or obtain them.[3] |
| Plaintiff Collins' Facebook data | Plaintiff Collins was ORDERED to produce all requested Facebook data that she is reasonably able to access and download, or provide a detailed explanation for her inability to do so.[4] The Court reminded Defendants of their ever-present ability to also issue a subpoena for such data. |
| Demanding Mays withdraw a "denied" request for admission | Defendants' request was effectively denied. |

---

[2] In fact, all 8 initial Plaintiffs' résumés – including Plaintiff Mays's résumé – were produced on November 24, 2023, three weeks prior to Defendants' first compel motion. **Exh. 1.** (Plaintiff Russell-Brown did not file her opt-in notice until November 9, 2023 and was served discovery requests at a later time. (See Dkt. No. 34.))

[3] Even though not specifically ordered by the Court, if a (cooperating) Plaintiff is unable to locate their tax returns for 2019, 2020, 2021 by the August 14, 2026 deadline, a request for such transcripts (Form 4506) will be issued to the IRS on or before such deadline and a copy of such order request will be provided to Defendants' counsel. The tax transcripts will be produced to Defendants as soon as reasonably practicable after receipt by Plaintiffs' counsel.

[4] If Plaintiff Collins demonstrates her long-standing contention that she is unable to download the majority of the requested Facebook data – in other words, that the data is not within her possession, custody, or control – then Defendants' request for the production of such data should be deemed effectively denied by the Court.

3

2.      Because Defendants' motions to compel were granted in part and denied in part, Rule 37(a)(5)(C), rather than Rule 37(a)(5)(A)'s mandatory fee provision, governs the allocation of fees and expenses. Under subsection (C), the Court "may" apportion reasonable expenses when a motion is granted in part and denied in part. FED. R. CIV. P. 37(a)(5)(C). Therefore, Defendants are not presumptively entitled to recover all expenses associated with their motions to compel merely because they obtained partial relief.

**B.      Defendants did not segregate between successful and unsuccessful issues.**

3.      Defendants did not even attempt to address the mixed results that the Court's rulings provided. It is axiomatic that work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved and therefore no fee may be awarded for services on an unsuccessful claim. *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.,* 23 F.4th 408, 416 (5th Cir. 2022).

4.      Defendants did not attempt to identify or segregate between their discovery issues that were successful versus those that were not. To meet a party's burden to segregate its attorney's fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours related to claims for which fees are not recoverable. *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.,* 969 F.3d 210, 217 (5th Cir. 2020), as revised (Sept. 17, 2020). Defendants' Application for Fees did not even attempt to provide any percentages to apportion its fees between successful and unsuccessful discovery issues. Therefore, Defendants' application fails to meet their burden to prove the fees any they might be due based on the limited success of their motions to compel.

**C.      Defendants did not segregate between applicable Plaintiffs.**

4

5.      Defendants attempt to make all 9 Plaintiffs jointly liable for their requested fees. However, with respect to only one issue – production of tax returns or transcripts – did the Court grant relief against all 9 Plaintiffs. This raises important questions for the Court:

- Should the other 8 Plaintiffs be held responsible for relief granted solely against Plaintiff Mays, who has ceased communications with the Court and her counsel during the past 2 ½ years?

- Should the other 8 Plaintiffs be held responsible for relief granted solely against Plaintiff Collins, concerning Facebook data that only she is required to produce?

- Should the other 5 Plaintiffs be held responsible for relief granted only against Plaintiffs Mays, Russell-Brown, Nickelberry, and Mansfield with respect to W-2 and 1099 forms?

Plaintiffs contend that the answer to these three questions is "no." A party can be held responsible only for the reasonable attorneys' fees and expenses caused by the party's misconduct. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 490 (5th Cir. 2012). Yet, Defendants' Application for Fees does not attempt to segregate fees between the purportedly responsible Plaintiffs.

**D.      Defendants filed their motion to compel tax returns without following the Court's mandated discovery dispute procedures.**

6.      Each Plaintiff had previously asserted timely objections to Defendants' production request seeking production of their individual tax returns. On November 27, 2023, the Court held a 1 hour and 22-minute discovery dispute telephone conference concerning (in relevant part) the production of each Plaintiff's W-2s and 1099s *only*. At no time had Defendants sought to challenge Plaintiffs' timely objections to the production of their tax returns, either through informal communications between counsel or through Court intervention.

7.      In his declaration in support of Defendants' Application for Fees, Defendants' counsel Monte Hurst cites an email from Plaintiffs' counsel Kerry O'Brien from October 6, 2023, in which O'Brien stated:

5

> *Ms. Collins' interrogatory responses are complete, I am merely awaiting her verification. Ms. Nickelberry and Mr. Riley are still getting copies of their tax returns to accurately respond to those questions.*

Defendants' Application for Fees, Exh. A (Dkt. No. 81-1, ¶19), ref. Am. MTC, Ex. A.2 (Dkt. No. 53-4). Defendants cited this email to create an impression to the Court that a discussion about the production of tax returns had occurred prior to January 2024. In fact, Plaintiffs Riley and Nickelberry needed to procure their tax returns to assist them with responding to Defendants' Interrogatories Nos. 1-4, which asked for details on business deductions these two individuals may have taken during the 2019-2022 tax years. That is the only purpose of this reference to "tax returns," and this is supported by the context provided by the sentence before it.

8.      In light of the Court's stated directives as reflected in the Minute Entry in Dkt. No. 38, Plaintiffs (again, other than Mays) worked to provide their W-2s and 1099s, or, in lieu of those, their federal Wage & Income Transcripts that provide the same information. Plaintiffs, who are scattered around the country, worked with their counsel to obtain and produce this tax data in a timely manner. Defendants' position at the discovery conference concerning these wage forms and the resulting Court directive gave Plaintiffs the understandable impression that the production of their W-2 and 1099 information would be the extent of personal tax information that they would have to obtain and produce to Defendants in this case.

9.      On January 9, 2024, Defendants pushed to force the production of tax returns in the face of Plaintiffs' objections *for the first time*, when Defendants' counsel stated an expectation by letter that Plaintiff Ruise would produce her tax returns. **Exh. 2.** On January 24, Defendants' counsel then expanded that demand to all 9 Plaintiffs' tax returns. **Exh. 3.** Two weeks later, Defendants filed their Amended Motion to Compel, seeking in part to compel production of all 9 Plaintiffs' 2019-2022 tax returns or tax return transcripts.

6

10.     In the Court's July 14, 2026 Order, the Court noted that "Catastrophe offers little explanation for why it did not raise the issue of tax returns earlier." (Dkt. No. 78, p. 8.) The Court further "recognize[d] that Catastrophe may have been dilatory in raising the issue of Plaintiffs' tax returns." (Dkt. No. 78, p. 8.)

11.     Plaintiffs do not dispute that the Court has "broad discretion in all discovery matters" and have therefore not objected to the Court requiring production of their tax returns/transcripts. *Moore v. CITGO Ref. & Chemicals Co., L.P.,* 735 F.3d 309, 315 (5th Cir. 2013). However, Defendants did not comply with the Court's requirement that they contact the Chambers to schedule a call on the dispute before filing their motion to compel. See Dkt. No. 15, "DISCOVERY DISPUTES." Following the Court's mandatory pre-motion discovery procedure was particularly important here because Rule 37 itself prohibits an expense award where "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." *Bourque v. C. Pepper Logistics, LLC,* No. 4:22-CV-698-SDJ, 2024 WL 2922400, at *1 (E.D. Tex. June 10, 2024). Had Defendants followed the Court's procedures here, the Court may have been able to resolve this issue through another conference. Plaintiffs would note that the Court's November 27, 2023 discovery dispute conference effectively resolved the dispute as to the production of W-2s/1099s. Defendants could have avoided incurring motions practice fees on the tax returns production dispute as well by seeking the required pre-motion phone conference with Chambers.

12.     Because Defendants sought to compel production of these tax returns/transcripts in a dilatory manner and outside of the Court's required discovery dispute resolution procedures, Defendants should not be permitted to recover attorney's fees for the tax return/transcript issue.

7

**E.     Under the circumstances, requiring these individual overtime Plaintiffs to pay $63,978 in defense fees would be inherently unjust.**

13.     Even when Rule 37(a)(5)(A) otherwise applies, the Court "must not" award expenses when "other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(iii); *Merritt v. Int'l Bhd. of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir. 1981); *CHU de Quebec-Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.,* No. 4:21-CV-182-SDJ, 2023 WL 2746933, at *3 (E.D. Tex. Mar. 31, 2023).

14.     Those circumstances are present here. Defendants seek $63,978 in fees against nine individual workers pursuing overtime claims, even though Plaintiffs (and even including Mays to a meaningful degree) have substantially participated in discovery. Eight of the 9 Plaintiffs[5] have already provided more than 42 hours of deposition testimony on the record in this first phase of the case, in addition to responding to substantial written discovery.[6]

15.     Defendants also obtained decidedly mixed relief. Their résumé request was largely denied as moot; their request for Riley's paystubs was denied as moot; their W-2/1099 request was denied in part because Plaintiffs had already produced Wage and Income Transcripts containing the same relevant information; and several of the Court's production requirements were expressly conditioned upon whether the individual Plaintiff could reasonably locate or access the requested material. Indeed, the Court found "no reason to require" W-2s and 1099s where Plaintiffs' Wage and Income Transcripts contained the same information. (Dkt. No. 78, p. 7.)

16.     The nature and remedial purpose of this action further weigh against Defendants' requested award. Congress expressly provided that a prevailing FLSA plaintiff "shall" recover a reasonable

---

[5] Plaintiff Russell-Brown has not yet been deposed.
[6] Plaintiff Collins drove from Shreveport, Louisiana to Defendants' counsel's law office in Dallas, Texas twice for her deposition, due to Defendants' scheduling miscalculation on the first occasion as well as Defendants' insistence that she appear in person for it.

8

attorney's fee from the defendant. 29 U.S.C. § 216(b). As the Fifth Circuit has recognized in discussing statutory fee shifting, Congress provides such remedies "to enable litigants to obtain competent counsel." *Gurule v. Land Guardian, Inc.,* 912 F.3d 252, 258 (5th Cir. 2018) (quoting *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir. 1974)). This mechanism is particularly important in wage cases because an individual employee's potential recovery may be too small to economically justify retaining counsel absent fee shifting. See *Fisher v. SD Protection Inc.,* 948 F.3d 593, 603–04 (2d Cir. 2020) (recognizing that FLSA cases frequently involve ordinary workers with relatively small recoveries and that fee shifting provides employees meaningful access to counsel). Requiring these individual overtime Plaintiffs to pay their former employer $63,978 in attorneys' fees based upon discovery motions producing mixed and qualified results would work directly against that statutory purpose.

17.     Considering these points, the extraordinary $63,978 burden Defendants seek to impose upon individual FLSA claimants qualifies as "other circumstances [that would] make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(iii). Ordering these Plaintiffs to pay $63,978 in defense fees would have a substantial chilling effect on workers' willingness to pursue relatively small but important overtime claims under the FLSA.

**F.      Defendants' billing records reflect excessive and duplicative work.**

18.     Defendants' billing records (Dkt. No. 81-10, Exh. A-9) reflect substantial duplication and excessive staffing that further prevent Defendants from carrying their burden to establish that their requested fees are reasonable.

19.     In one example, on February 7, Mr. Hurst billed 4.4 hours ($2,288.00) drafting and revising the Amended Motion to Compel and related materials, while Ms. Brumbalow billed another 7.8 hours ($3,003.00) drafting and revising the same motion on the same day. On February 8, Ms.

9

Brumbalow billed another 5.2 hours ($2,002.00) for the same documents, and on February 9, Mr. Hurst and Ms. Brumbalow billed another 9 combined hours (for a total of $4,207.50) to "draft, revise, and finalize" those same materials. Thus, over a three-day stretch, these two attorneys billed 26.4 hours and $11,500.50 drafting, revising, and finalizing the Amended Motion to Compel and related documents.

20.     The records also include time for work that appears to constitute ordinary discovery activity rather than expenses caused by the need to file a motion to compel, including reviewing Plaintiffs' discovery responses and productions. See, e.g., time entries from December 14, 19, and 20, 2023. Rule 37 permits recovery only of the "reasonable expenses incurred in making the motion," FED. R. CIV. P. 37(a)(5)(A), and the Fifth Circuit has emphasized that a Rule 37 fee award is limited to expenses caused by the discovery violation. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 490 (5th Cir. 2012). Defendants have not demonstrated that the expenses of multiple attorneys performing overlapping work, attending the same conferences, or reviewing discovery in the ordinary course of the litigation were reasonably incurred because of Plaintiffs' alleged discovery misconduct. These entries provide an additional basis to deny Defendants' requested fees or, at minimum, substantially reduce the requested award.

## **CONCLUSION AND PRAYER**

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Application for Award of Attorneys' Fees in its entirety due to their failure to segregate issues and responsible parties. Alternatively, Plaintiffs request that any award be substantially reduced and limited to those reasonable and necessary fees that Defendants demonstrate (if their burden was met) in their Application were actually caused by a particular Plaintiff's failure to provide discovery on an issue upon which Defendants obtained relief, excluding fees attributable to

unsuccessful issues, Plaintiffs not responsible for an issue, duplicative or excessive work, and ordinary discovery review activity that was not part of preparing either compel motion. Plaintiffs further request all other relief to which they may be justly entitled.

Respectfully submitted,

*Kerry O'Brien*

**Kerry V. O'Brien**
Texas Bar No. 24038469



1011 Westlake Drive
Austin, Texas 78746
phone: (512) 410-1960
fax: (512) 410-6171
email: ko@obrienlawpc.com

**LEAD COUNSEL FOR PLAINTIFFS**

and

**Travis Gasper**
Texas Bar No. 24096881

GASPER LAW PLLC
1408 N. Riverfront Blvd., Suite 323
Dallas, Texas 75207
phone: (469) 663-7736
fax: (833) 957-2957
email: travis@travisgasper.com

**CO-COUNSEL FOR PLAINTIFFS**

11