EXHIBIT
A.1

**From:** Lori Munoz <Lori_Munoz@txed.uscourts.gov>
**Sent:** Tuesday, February 6, 2024 4:03 PM
**To:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Cc:** Ceicili S. Morales <cmorales@hallettperrin.com>; Kristen A. Brumbalow <KBrumbalow@hallettperrin.com>; ko@obrienlawpc.com; travis@travisgasper.com; OLPC <beth@obrienlawpc.com>
**Subject:** RE: Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes and Request for Hearing

That sounds good. Thank you, counsel.

**Lori Munoz**
Judicial Assistant
U.S. District Judge Sean D. Jordan
U. S. District Court, Eastern District of Texas
7940 Preston Road
Plano, TX 75024
(214) 872-4860
Lori_munoz@txed.uscourts.gov

---

**From:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Sent:** Tuesday, February 6, 2024 3:59 PM
**To:** Lori Munoz <Lori_Munoz@txed.uscourts.gov>
**Cc:** Ceicili S. Morales <cmorales@hallettperrin.com>; Kristen A. Brumbalow <KBrumbalow@hallettperrin.com>; ko@obrienlawpc.com; travis@travisgasper.com; OLPC <beth@obrienlawpc.com>
**Subject:** RE: Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes and Request for Hearing

**CAUTION - EXTERNAL:**

Thank you, Ms. Munoz. Defendants will prepare and file an amended motion to compel so that all of the discovery issues will be in one motion.

Thank you.

MONTE K. HURST
Shareholder

HALLETT&PERRIN
D 214.922.4111 F 214.922.4142 | monte.hurst@hallettperrin.com
1445 Ross Ave., Suite 2400 | Dallas, Texas 75202
Disclaimer

BOARD CERTIFIED
Texas Board of Legal Specialization
LABOR AND EMPLOYMENT LAW

**From:** Lori Munoz <Lori_Munoz@txed.uscourts.gov>
**Sent:** Tuesday, February 6, 2024 3:49 PM
**To:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Cc:** Ceicili S. Morales <cmorales@hallettperrin.com>; Kristen A. Brumbalow <KBrumbalow@hallettperrin.com>; ko@obrienlawpc.com; travis@travisgasper.com; OLPC <beth@obrienlawpc.com>
**Subject:** RE: Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes and Request for Hearing

Counsel,

This is the same, or very similar, to the previous discovery dispute presented to the Court with a now pending Motion to Compel. For that reason, the Court does not think it would be productive to have a call regarding overlapping issues that stem from the same discovery dispute. The parties are free to file a motion to compel or an amended motion to compel.

**Lori Munoz**
Judicial Assistant
U.S. District Judge Sean D. Jordan
U. S. District Court, Eastern District of Texas
7940 Preston Road
Plano, TX 75024
(214) 872-4860
Lori_munoz@txed.uscourts.gov

**From:** Monte K. Hurst <Monte.Hurst@hallettperrin.com>
**Sent:** Monday, February 5, 2024 1:47 PM
**To:** Lori Munoz <Lori_Munoz@txed.uscourts.gov>
**Cc:** Ceicili S. Morales <cmorales@hallettperrin.com>; Kristen A. Brumbalow <KBrumbalow@hallettperrin.com>; ko@obrienlawpc.com; travis@travisgasper.com; OLPC <beth@obrienlawpc.com>
**Subject:** Collins, et al. vs. Catastrophe Response Unit, et al.; Civil Action No. 4:22-cv-1073-SD -- Defendants' Summary of Discovery Disputes and Request for Hearing

**CAUTION - EXTERNAL:**

Good afternoon, Ms. Munoz. I represent Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively "CRU"). In accordance with the Court's preferred discovery dispute procedure, this e-mail message serves to set out a summary of the issues in dispute, as a preface to a potential motion to compel. The parties' counsel conferred over the telephone regarding these outstanding discovery disputes. The issues discussed in this e-mail message remain in dispute.

## *Introduction/Background*

This lawsuit is based on Plaintiffs' allegations that they and others who are similarly situated were improperly classified as independent contractors and are owed overtime compensation under the Fair Labor Standards Act ("FLSA"). We are in "Phase I" of the case, pursuant to *Swales v. KLLM Transportation Services,* 985 F.3d 430, 437 (5th Cir. 2021). CRU's counsel sent a deficiency letter to Plaintiffs' counsel on January 9, 2024, regarding Plaintiff Ashley Ruise's failure to produce her complete tax records. On January 24, 2024, CRU's counsel sent a second deficiency letter to Plaintiffs' counsel discussing all of the issues raised in this e-mail message (including Ms. Ruise's failure to produce her tax records). Plaintiffs' counsel responded to these deficiency letters.

Plaintiffs have filed a motion seeking to certify a class of individuals whom they claim are similarly situated to the Plaintiffs. CRU must be permitted to obtain the discovery necessary to respond to that motion. But, as set forth below, Plaintiffs have asserted problematic and improper objections to specific requests for production, and they have not produced documents and information directly relevant to Phase I discovery and critical to the issue of whether others are similarly situated to the Plaintiffs, and thus whether any class is appropriate.

In this case, Plaintiffs, all of whom are independent insurance desk adjusters, claim that CRU misclassified them as independent contractors instead of employees, and that they are now owed overtime compensation as a result. In *Swales*, the Fifth Circuit explicitly addressed the importance of determining whether the economic-realities test can be applied on a collective basis prior to the certification of a class, as follows:

> … the threshold issue here depends on the economic-realities test, which asks how much control the employer had over the independent contractor. Thus, the district court needed to consider the evidence relating to this threshold question in order to determine whether the economic-realities test could be applied on a collective basis. If answering this question requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions. As KLLM points out, the individualized nature of the economics-realities test is why misclassification cases rarely make it to trial on a collective basis.

*Swales*, 985 F.3d 430, 443 (5th Cir. 2021).

When applying the economic-realities test to determine whether an individual was properly characterized as an independent contractor, the following non-exhaustive factors are considered: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *See Talbert v. American Risk Co. Inc*., 405 F. App'x 848, 855 (5th Cir. 2010).

In *Talbert*, the Fifth Circuit upheld the district court's judgment that an independent insurance adjuster was an independent contractor and not an employee. *See Talbert*, 405 F. App'x at 856. In reaching this conclusion, the Fifth Circuit looked at the specific facts regarding the independent contractor's work, concluding that those that weighed in favor of independent contractor status outweighed those that weighed in favor of employee status. *See generally id*. As set forth below, the information and documents sought by CRU in this case all directly relate to the five non-exhaustive factors that are considered in the economic-realities test, and address issues that the

*Talbert* court analyzed in upholding the district court's determination that the independent insurance adjuster was properly classified as an independent contractor.

## *Plaintiffs' Tax Returns and Their Forms W-2 and 1099*

| Plaintiffs' Tax Returns and Their Forms W-2 and 1099 | |
|---|---|
| **CRU's Request** | CRU seeks the production of the Plaintiffs' federal tax returns, Forms W-2 and Forms 1099 from 2019 to the present (for the following Plaintiffs, this request is CRU USA Request for Production No. 18: C.M. Collins; N.J. Lundy; and R.C.L. Mays; for the following Plaintiffs, this request was Request for Production No. 13: Pamela Ann Marie James; Jill Mansfield; Sheena Nickleberry; Basil Leo Riley, III; Ashley Ruise; and Tammy Russell-Brown). |
| **Plaintiffs' Response** | Plaintiffs (except for Tammy Russell-Brown) objected, citing relevance, overbreadth, temporal scope, and invasion of privacy. Ms. Russell-Brown did not object at all. Plaintiffs (except for Ms. Russell-Brown) committed to producing all of their Forms 1099 and W-2 by December 8, 2023. Ms. Russell-Brown committed to producing all of her Forms 1099 and W-2 by December 28, 2023. |
| **What has been Produced** | Plaintiffs have not produced a single tax return. Plaintiffs have produced a handful of Forms W-2 and 1099 for various Plaintiffs, IRS Wage and Income Transcripts for various Plaintiffs, and a Tax Return Transcript for one Plaintiff. Plaintiffs do not have nearly all Forms W-2 and 1099 of all of the Plaintiffs for the subject time period. |
| **Defendants' Requested Relief** | CRU would ask the Court to (i) overrule the objections of Plaintiffs C.M. Collins, N.J. Lundy, and R.C.L. Mays to CRU USA Request for Production No. 18, (ii) overrule the objections of the other Plaintiffs to CRU Request for Production No. 13, and (iii) compel Plaintiffs to produce unredacted copies all of their tax returns, Forms W-2 and 1099 from 2019 to the present. For any tax return during this time period that a Plaintiff claims he/she does not have in his/her possession or custody, CRU would ask the Court to order that Plaintiff to order his/her tax return directly from the IRS, so that the tax return can be produced to CRU. CRU has offered, and remains willing, to pay for the $30 fee for each such order. |

The Fifth Circuit has made clear that "[t]ax returns are neither privileged nor undiscoverable." *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 587 (N.D. Tex. 2016) (citing *Rafeedie v. L.L.C., Inc.*, No. A-10-CA-743, 2011 WL 5352826, at *2 (W.D. Tex. Nov. 7, 2011) (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995))). Courts within the Fifth Circuit have routinely found tax records are relevant in independent-contractor-misclassification cases. *See, e.g.*, *Carrell v. Sunland Construction, Inc.*, 998 F.2d 330, (5th Cir. 1993) (considering the Plaintiff's tax returns when evaluating the fifth factor of the economic-realities test, noting that the tax records indicated that the plaintiffs' profits depended on their ability to control their own costs and that the plaintiffs worked for numerous companies in each of the years relevant to the dispute); *Wilkerson v. Pioneer Nat. Res. Co.*, No. MO21CV00192DCRCG, 2022 WL 2783849, at *3 (W.D. Tex. May 24, 2022), (finding that the plaintiff's tax returns were relevant to the determination of Plaintiff's employee/independent contractor status using the economic-realities test); *Hargrave v. Aim Directional Services, LLC,* Civil Action No. 2:18-cv-449, 2021 WL 5155697, at *6 (S.D. Tex. May 24, 2021) ("The Court is not persuaded that Hargrave should be allowed to take advantage of the tax status of an independent contractor, yet claim entitlement to employee overtime benefits … As such, the Court finds the opportunity for profit or loss to weighs [sic] against employee status.").

With such clear guidance that all of Plaintiffs' tax returns from 2019 to the present are relevant and discoverable to this FLSA independent-contractor-misclassification case, the only question then is whether Plaintiffs must

produce their tax records now or wait until after the Court rules on their Motion for Notice. In this post-*Swales* world, the time is now. CRU will be demonstrating to the Court in its response to Plaintiffs' Motion for Notice that the Plaintiffs are not similarly situated to one another or the members of the putative class. These tax records are critical to CRU's response. In particular, CRU believes the tax records will show that some of the Plaintiffs worked for numerous other companies as independent contractors while others did not, and some of the Plaintiffs made tax deductions for business expenses from their work as desk adjusters for CRU while others did not.

Plaintiffs refuse to remove their objections and argue that they have produced enough of tax documents, in what is a mishmash of some of the Plaintiffs' Wage and Income Transcripts for various years (which are heavily redacted), one of the Plaintiffs' Return Transcript for one year, and some of the Plaintiffs' Forms 1099 and W-2 for various years. But, this is not near enough. As demonstrated in the following chart, the Tax Returns are needed to obtain all relevant information in one document. In the alternative, a combination of Forms 1099 and W-2, Wage and Income Transcripts, and Return Transcripts could be produced to provide most of the information CRU seeks, albeit not all of that information.

| **Information Included** | **Forms 1099 and W-2** | **Wage and Income Transcript** | **Return Transcript** | **Tax Return** |
| --- | --- | --- | --- | --- |
| **Earnings Data from Forms 1099 & W-2** | ✓ | ✓ | ✗ | ✓ |
| **Business Deductions and Credits Made by Plaintiff Related to His/Her Adjusting Work** | ✗ | ✗ | ✓ | ✓ |
| **Schedule C (which reports profits or losses from a business operated by the tax-filer)** | ✗ | ✗ | ✓ | ✓ |
| **Amended Return Information** | ✗ | ✗ | ✗ | ✓ |

First, even though Plaintiffs have agreed to produce all of their Forms W-2 and 1099 for 2019 to the present, they have failed to do so. CRU has still not received any tax records for Plaintiffs Rasheedah Mays and Tammy Russell-Brown. It is not enough for Plaintiffs' counsel to simply state that they have instructed their clients to produce these items, when their clients do not comply.

Second, while Plaintiffs should have produced by now all of the Plaintiffs' Forms W-2 and 1099 for 2019 to the present (or the Wage and Income Transcripts), these Forms W-2 and 1099/Wage and Income Transcripts still do not show (1) the deductions for business expenses made by each Plaintiff, (2) the Schedule C's (which report profits or losses from a business operated by the tax-filer) for each Plaintiff, or (3) any amended return information. This critical information is only available on their tax returns or the corresponding Tax Return Transcripts. Tax Return Transcripts, which can be retrieved online for the last three years, still does not include the any amended return information.

Accordingly, CRU would ask the Court to overrule the objections of Plaintiffs C.M. Collins, N.J. Lundy, and R.C.L. Mays to CRU USA Request for Production No. 18, overrule the objections of the other Plaintiffs to CRU Request for Production No. 13, and compel Plaintiffs to produce unredacted copies of all of their tax returns, Forms W-2 and 1099 from 2019 to the present. For any tax return during this time period that a Plaintiff claims he/she does not have in his/her possession or custody, CRU would ask the Court to order that Plaintiff to order his/her tax return directly from the IRS, so that the tax return can be produced to CRU. CRU has offered, and remains willing, to pay for the $30 fee for each such order.

CRU anticipates that Plaintiffs may complain that ordering their tax returns from the IRS may delay matters. CRU is not looking to delay anything. CRU had been of the belief until fairly recently that Plaintiffs had possession or custody of their tax returns, while the parties' counsel continued to argue about when Plaintiffs would actually produce the tax returns. In an e-mail message from Plaintiffs' counsel to CRU's counsel on October 6, 2023, seeking an extension of the deadline by which two of the Plaintiffs had to respond to written discovery requests, Plaintiffs' counsel represented that he was waiting to receive the tax returns from those two Plaintiffs so that he could respond to the discovery requests. There has never been any doubt that information contained in Plaintiffs' tax returns was relevant and discoverable to this case. CRU would argue that the Plaintiffs—not CRU—has caused delay because of their continued refusal to produce the tax returns or even order them from the IRS. Plaintiffs should not be rewarded because they have been, and remain, unwilling to order their tax returns even months after they were properly requested in discovery.

CRU strongly believes that they should have the opportunity to include critical information from Plaintiffs' tax returns in its response to Plaintiffs' Motion for Notice. Nevertheless, if the Court was not inclined to extend the deadline for CRU to respond to Plaintiffs' Motion for Notice until CRU receives all of these tax returns, then CRU would respectfully request that the Court order the same relief as requested above (overrule the objections of Plaintiffs C.M. Collins, N.J. Lundy, and R.C.L. Mays to CRU USA Request for Production No. 18, overrule the objections of the other Plaintiffs to CRU Request for Production No. 13, and compel Plaintiffs to produce unredacted copies of all of their tax returns, Forms W-2 and 1099 from 2019 to the present), and also order Plaintiffs to additionally produce at once unredacted copies of all Tax Return Transcripts from 2019 to the present, and all Wage and Hour Transcripts from 2019 to the present.

### *Plaintiffs' Résumés*

| Plaintiffs' Résumés | |
|---|---|
| **CRU's Request** | CRU requests production of all résumés that the Plaintiff has used in the last three years that he/she had not already produced, including, but not limited to, résumés that he/she submitted when applying for jobs outside of the insurance adjusting industry (for all Plaintiffs this is CRU's Request for Production No. 7.). |
| **Plaintiffs' Response** | In their December 14, 2023, discovery responses, Plaintiffs did not object to this Request, and each Plaintiff responded by stating that he/she "is reviewing [his/her] records for responsive materials and will supplement with responsive materials, if any, within 14 days." |
| **What has been Produced** | Plaintiffs have not produced a single résumé since their commitment to do so on December 14, 2023, nor have they amended their response to state no responsive documents exist. |
| **Defendants' Requested Relief** | CRU would request that the Court compel each Plaintiff to produce all résumés that he/she used in the last three years that he/she has not already produced. For any Plaintiff who claims that an additional résumé does not exist, we would ask that the Court order him/her to amend his/her response accordingly. |

More than a month has passed since the Plaintiffs represented that they were reviewing their records for responsive materials and had committed to supplement within 14 days. CRU would respectfully request that the Court order each Plaintiff to produce all résumés that he/she has used in the last three years that he/she had not already produced. For any Plaintiff who claims that an additional résumé does not exist, we would ask that the Court order him/her to amend his/her response accordingly. Plaintiffs' counsel communicated this morning that they do not oppose CRU's request for a court order instructing the Plaintiffs to produce all résumés that he/she has used in the last three years that he/she had not already produced.

### *Plaintiff Basil Leo Riley, III's Response to CRU's Request for Production No. 8*

| Plaintiff Basil Leo Riley, III's Response to CRU's Request for Production No. 8 | |
|---|---|
| **CRU's Request** | CRU seeks the production of all "records sufficient to identify the number of hours that Plaintiff Basil Leo Riley, III reported to have worked for an employer or company other than CRU from July 1, 2021 – September 30, 2022" (CRU's Request for Production No. 8 to Mr. Riley). CRU specifies that this Request includes, but is not limited to, Mr. Riley's time worked that he reported to Progressive from July 1, 2021 through September 30, 2022. CRU subsequently sent Plaintiffs' counsel a personnel and payroll records authorization and asked that Mr. Riley sign and return the authorization so that CRU could obtain the relevant records from Progressive. |
| **Plaintiffs' Response** | Mr. Riley asserted the following objection: "Riley objects to the extent that this request is requesting information that is not probative to the claims and defenses in this case, as the total number of hours worked for employers other than CRU for the requested period of time is not relevant to any issues in this case." |
| **What has been Produced** | Mr. Riley has not produced any documents demonstrating the number of hours Mr. Riley reported to have worked for an employer or company other than CRU from July 1, 2021 – September 30, 2022. |
| **Defendants' Requested Relief** | CRU would request that the Court (i) overrule Mr. Riley's objection to CRU Request for Production No. 8, (ii) compel Mr. Riley to produce responsive documents within five business days, and (iii) compel Mr. Riley to, within five business days, sign and return the personnel and payroll records authorization provided by CRU. |

Mr. Riley testified in his deposition on October 18, 2023, that he worked for both CRU and Progressive during one of his deployments with CRU. Plaintiffs' counsel then represented in an e-mail message to the Court on November 21, 2023, the following: (a) Mr. Riley stated in both his interrogatory responses and deposition testimony that he had continued to work for another company during his approximately first two months with CRU; (b) Plaintiffs agree that those records may concern the claims and defenses in this case; and (c) Plaintiffs' counsel were working with Mr. Riley to promptly produce any tax forms and pay stubs in his possession, custody, or control that concern that concurrent employment. Even after all of this, Mr. Riley objected to CRU's Request for Production No. 8 to Mr. Riley (seeking production of all "records sufficient to identify the number of hours that [he] reported to have worked for an employer or company other than CRU from July 1, 2021 – September 30, 2022," and specifically referencing Mr. Riley's time worked that he reported to Progressive from July 1, 2021 through September 30, 2022). Further, no documents have been produced. It has been one and one-half months since CRU received these discovery responses on December 14, 2023, and over two months since Plaintiffs' representations to the Court. Mr. Riley has still not removed his objection to this Request, and CRU has still not received any documents responsive to this Request.

CRU would request that the Court (i) overrule Mr. Riley's objection to CRU Request for Production No. 8, (ii) compel Mr. Riley to produce responsive documents within five business days, and (iii) compel Mr. Riley to,

within five business days, sign and return the personnel and payroll records authorization provided by CRU. Plaintiffs' counsel communicated this morning that they do not oppose CRU's request for a court order compelling Mr. Riley to produce responsive documents responsive to CRU Request for Production No. 8 and compelling him to sign and return the personnel and payroll records authorization provided by CRU.

### *Plaintiff Rasheedah Mays' Continued Failure to Comply with Her Discovery Obligations*

Plaintiffs' counsel communicated to the Court in their Response to Defendants' Emergency Motion to Compel Discovery and to Extend Deadline to File Response in Opposition to Plaintiffs' Motion for Notice (Dkt. #47) that, despite attempting to contact her on eight separate days since December 2, 2023, Ms. Mays had not responded to them, and therefore they have been unable to obtain from her the responsive tax documents that they had previously committed to produce. However, on December 14, 2023, Plaintiffs served CRU with "All Plaintiffs' and Opt-Ins' Responses to CRU, Inc.'s 1st Request for Admissions," in which Ms. Mays denied CRU's Request for Admission No. 2 (using a mouse moving device or software program while working for either CRU or CRU USA). Logically, Ms. Mays would have had to communicate to Plaintiffs' counsel her specific denial to CRU's Request for Admission No. 2, in order for Plaintiffs' counsel to have provided Ms. Mays' specific denial in the Plaintiffs' discovery responses. When CRU's counsel asked Plaintiffs' counsel about this inconsistency, Plaintiffs' counsel confirmed that they have not been in communication with Ms. Mays, and informed CRU that they would be seeking to withdraw from representing Ms. Mays.

CRU would not oppose a request of Plaintiffs' counsel to withdraw as Ms. Mays' counsel, so long as the Court orders the following prior to permitting Plaintiffs' counsel to withdraw: (i) Plaintiffs' counsel amends Ms. Mays' specific denial to CRU's Request for Admission No. 2, and any other of Ms. Mays' discovery responses that did not actually come from Ms. Mays, (ii) Ms. Mays be instructed to, within five business days from the date of the order, remove her objections and supplement her discovery responses consistent with this communication to the Court (notably CRU USA Request for Production No. 18, CRU's Request for Production No. 7, and CRU's Request for Admission No. 2), and (iii) Ms. Mays, within 10 days from the date of the order, either (a) retain new counsel and have that counsel file a written appearance with the Court, or (b) file a written notice with the Court advising that she will represent herself, and that the Court explain to Ms. Mays that even if she no longer wishes to participate in this lawsuit as a party-plaintiff, she must comply with her discovery obligations imposed by the Court and she could be subjected to the Court's imposition of sanctions, including ordering payment of attorneys' fees and costs and/or dismissal of her claims with prejudice, for failing to comply with her discovery obligations.

### *Conclusion*

Plaintiffs' counsel has informed CRU's counsel that they have been instructing the Plaintiffs to comply with their discovery obligations and to provide outstanding discovery responses and produce documents they have previously committed to produce. However, Plaintiffs' counsel instructing their clients to comply with their discovery obligations is not working, to the detriment of CRU's right and need to conduct discovery. CRU feels they have no choice but to seek a Court order compelling the Plaintiffs to comply with their discovery obligations.

CRU appreciates the Court's consideration of these important and time-sensitive issues.

MONTE K. HURST
Shareholder

HALLETT&PERRIN
D 214.922.4111 F 214.922.4142 | monte.hurst@hallettperrin.com
1445 Ross Ave., Suite 2400 | Dallas, Texas 75202
Disclaimer

BOARD CERTIFIED
Texas Board of Legal Specialization
LABOR AND EMPLOYMENT LAW

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.