**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **C. M. COLLINS, N. J. LUNDY and R. C. L. MAYS,** ***individually and on behalf of all others similarly situated,*** | § | |
| ***Plaintiffs,*** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:22-cv-1073** |
| **CATASTROPHE RESPONSE UNIT, INC. and CATASTROPHE RESPONSE UNIT USA, INC.,** | § | |
| ***Defendants.*** | § | |

# DEFENDANTS' REPLY IN SUPPORT OF THEIR APPLICATION FOR AWARD OF ATTORNEYS' FEES INCURRED IN MAKING THEIR MOTIONS TO COMPEL

## I. INTRODUCTION

Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc. (collectively, "CRU") seek in this Reply to refute the factual inaccuracies, and to invalidate the flawed legal arguments, included in Plaintiffs' Response in Opposition to Defendants' Application for Award of Attorney[s'] Fees ("Response").[1] Plaintiffs' Response does not in any way lessen

[1] The term "Plaintiffs" refers to the group comprised of the three individuals who initiated this lawsuit (Carla Collins ("Collins"); Nikki Lundy ("Lundy"); and Rasheedah Mays ("Mays")) as well as the individuals who subsequently filed consents to join this lawsuit and on whom CRU served written discovery requests (Pamela James ("James"); Jill Mansfield ("Mansfield"); Sheena Nickelberry ("Nickelberry"); Basil Leo Riley, III ("Riley"); Ashley Ruise ("Ruise"); and Tammy Russell-Brown ("Russell-Brown")). All nine Plaintiffs are represented by the same lawyers.

For clarification, the individuals who filed consents to join this lawsuit sometime after this lawsuit's inception are party-plaintiffs, not "opt-in plaintiffs." *See Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (concluding that filing a written consent is sufficient to confer party-plaintiff status regardless of whether the class has been conditionally certified); *Ellis v. Tech. & Supply Mgmt., LLC*, No. 7:18-CV-00065, 2018 WL 11472785, at *6 (S.D. Tex. Aug. 10, 2018) (noting that several district courts have chosen to follow Mickles in finding that opt-in plaintiffs are parties to the action once they have filed their written consent to join the action, and likewise finding that the individuals in that case who filed consents to join the action constituted party-plaintiffs).

the amount CRU is entitled to recover in attorneys' fees under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, as presented in Defendants' Application for Award of Attorneys' Fees Incurred in Making Their Motions to Compel (Dkt. #81) ("Application for Attorneys' Fees").[2]

## II.
## ARGUMENTS & AUTHORITIES

### A. CRU Absolutely Complied with the Court's Pre-Motion Procedures.

CRU is aghast that Plaintiffs would represent to the Court that CRU did not follow the Court's pre-motion procedures before filing its Amended MTC seeking to compel Plaintiffs to produce their tax returns. *See* Pls.' Resp. (Dkt. #84) at 5–7. CRU absolutely followed the Court's pre-motion procedures before filing its Amended MTC, as proven by the correspondence among the Court and the parties.[3] *See* Defs.' Mot. for Leave, Ex. A, Declaration of Monte K. Hurst ("Hurst Decl.") (Dkt. #87-1) ¶ 4; Defs.' Mot. for Leave, Ex. A.1, E-mail exchange between Monte K. Hurst and Lori Munoz (Feb. 5–6, 2024) (Dkt. #87-2). Plaintiffs had no good-faith basis for representing to the Court that CRU did not follow the Court's pre-motion procedures before filing its Amended MTC, or for opposing CRU's request for leave to present to the Court the evidence disproving Plaintiffs' specious representation.

The Court's Order Governing Proceedings issued on February 28, 2023, provides that parties who are unable to resolve a discovery dispute must contact the Court's chambers to

[2] "Motions to Compel" is the collective reference to Defendants' Emergency Motion to Compel Discovery and to Extend Deadline to File Response in Opposition to Plaintiffs' Motion for Notice, filed on December 13, 2023 (Dkt. #45) and Defendants' Amended Motion to Compel Discovery, filed on February 9, 2024 (Dkt. #53) ("Amended MTC").

[3] CRU files, concurrently with this Reply, Defendants' Opposed Motion for Leave to Attach Evidence to Their Reply in Support of Their Application for Award of Attorneys' Fees Incurred in Making Their Motions to Compel ("Motion for Leave"). CRU attaches the following evidence to its Motion for Leave: (i) the e-mail message from Monte K. Hurst to Lori Munoz on February 5, 2024; (ii) the e-mail message from Ms. Munoz to Mr. Hurst on February 6, 2024; (iii) amended discovery responses from eight of the nine Plaintiffs, all of which were served on February 23, 2024; and (iv) E-mail message from Kerry O'Brien to Mr. Hurst on August 15, 2026. *See generally* Defs.' Mot. for Leave (Dkt. #87).

schedule a telephone conference before filing a motion to compel. Order Governing Proceedings (Feb. 28, 2023) (Dkt. #15). That is exactly what CRU did here. CRU's counsel sent an extensive e-mail message to the Court's Judicial Assistant on February 5, 2024, identifying and summarizing discovery issues in dispute as a preface to a potential motion to compel. *See* Defs.' Mot. for Leave, Ex. A, Hurst Decl. (Dkt. #87-1) ¶ 4; Defs.' Mot. for Leave, Ex. A.1, E-mail message from M. Hurst to L. Munoz (Feb. 5, 2024) (Dkt. #87-2). On February 6, 2024, the Court's Judicial Assistant responded as follows via e-mail:

> This is the same, or very similar, to the previous discovery dispute presented to the Court with a now pending Motion to Compel. For that reason, the Court does not think it would be productive to have a call regarding overlapping issues that stem from the same discovery dispute. The parties are free to file a motion to compel or an amended motion to compel.

*See* Defs.' Mot. for Leave, Ex. A, Hurst Decl. (Dkt. #87-1) ¶ 4; Defs.' Mot. for Leave, Ex. A.1, E-mail message from L. Munoz to M. Hurst (Feb. 6, 2024) (Dkt. #87-2). With the Court's blessing, CRU prepared its Amended MTC and filed it with the Court on February 9, 2024.

Both of Plaintiffs' attorneys and their assistant were copied on Mr. Hurst's e-mail message to the Court's Judicial Assistant on February 5, 2024, and they were copied on the Judicial Assistant's e-mail message to Mr. Hurst the following day. *See* Ex. A.1, E-mail exchange between M. Hurst and L. Munoz (Feb. 5–6, 2024). Plaintiffs' counsels' lack of candor with the Court is especially concerning as they merely had to review their own e-mail correspondence before launching false accusations at CRU.

**B. The Court Granted the Relief Sought by CRU.**

Plaintiffs argue that Rule 37(a)(5)(C)—not Rule 37(a)(5)(A)—should govern the Court's consideration of attorneys' fees here because the Motions to Compel were only granted in part. *See* Pls.' Resp. (Dkt. #84) at 2–4. However, this Court already, and properly, determined that Rule

37(a)(5)(A) governs its consideration of attorneys' fees here. *See* Memorandum Opinion and Order ("Order") (Dkt. #78). As such, the Court will require the violating Plaintiffs and their counsel to pay what it determines to be CRU's reasonable and necessary attorneys' fees incurred in making the Motions to Compel. Regardless, Plaintiffs and their counsel would not be able to escape having to pay the same amount in attorneys' fees under Rule 37(a)(5)(C).

If a motion to compel is granted, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[4] Fed. R. Civ. P. 37(a)(5)(A); *Bourque v. C. Pepper Logistics, LLC*, No. 4:22-CV-698-SDJ, 2024 WL 2922400, at *1 (E.D. Tex. June 10, 2024). If a motion to compel discovery is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C); *Walder v. Experian Info. Sols., Inc.*, No. 6:25-CV-120-KNM, 2025 WL 4673002, at *3 (E.D. Tex. Nov. 3, 2025).

Rule 37(a) authorizes the recovery of attorneys' fees and expenses not only when a discovery motion is granted, but also when "the disclosure or requested discovery is provided after the motion was filed," obviating the need for court intervention. Fed. R. Civ. P. 37(a)(5)(A); *CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-182-SDJ, 2023 WL 2746933, at *5 (E.D. Tex. Mar. 31, 2023) (Jordan, J.). Thus, even though a motion to compel may be denied as moot regarding the merits because the disputed material had been provided, a moving party may still be able to recover attorneys' fees incurred litigating the motion.

---

[4] The court will not award expenses if (1) the movant did not make a good-faith attempt to secure the discovery before filing the motion to compel, (2) the non-movant's nondisclosure, response, or objection was substantially justified, or (3) an award of expenses would be unjust based on other circumstances. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

*Maxell, Ltd. v. Coretronic Corp.*, No. 5:24-CV-88-RWS-JBB, 2025 WL 3480714, at *1 (E.D. Tex. July 29, 2025) (citations omitted).

In this case, *only after* CRU filed the Motions to Compel did Plaintiffs provide some of the relevant and important materials that CRU had tried so diligently to secure from Plaintiffs well before seeking the Court's intervention. The Court's Order granted relief in CRU's favor on just about all of the remaining issues raised by CRU in their Motions to Compel.

As illustrated below, CRU's Motions to Compel were comprised of 24 requests for production among the nine Plaintiffs and a single demand for one of the Plaintiffs to amend her response to one of CRU's requests for admission. CRU was successful in every one of the 24 requests for production—either by Plaintiffs' production of materials after the filing of the Motions to Compel but before the Court's issuance of the Order, or by the Court's rulings in the Order. Also, even though the Court technically denied CRU's demand for Mays to amend her response to one of CRU's requests for admission, the Court invited CRU to send Mays an interrogatory seeking additional information on a particular topic. *See* Order (Dkt. #78). Even if the request for admission issue were characterized as something other than a "win" for CRU, CRU's winning on 24 out of the 25 discovery issues presented in its Motions to Compel makes for a winning percentage of 96%.

***1. Tax Returns of All Plaintiffs.***

CRU was successful in every one of the nine requests for production pertaining to tax returns. Plaintiffs agree that they had refused to produce their tax returns or Tax Return Transcripts for the years 2019, 2020, 2021, and 2022. *See* Pls.' Resp. (Dkt. #84) at 5. Plaintiffs also agree that the Court ordered each of them to produce either his/her tax return or Tax Return Transcript for the year 2022. *See id.* at 3. Plaintiffs further agree that the Court ordered each of them to

produce either his/her tax return or Tax Return Transcript for the years 2019, 2020, and 2021, if he/she is reasonably able to obtain them. *See id.* Plaintiffs do not even challenge that CRU was successful in every one of the nine requests for production pertaining to tax returns; they merely rely on their misrepresentation to the Court that CRU did not comply with the Court's pre-motion procedures before filing its Amended MTC. *See supra* Part II.A.

***2. Résumés of All Plaintiffs.***

CRU was successful in every one of the nine Requests for Production No. 7—seeking production of all résumés used by all Plaintiffs in the last three years, including résumés submitted for jobs outside the insurance industry—it sought to compel from the Plaintiffs. Only after CRU filed its Amended MTC, but before the Court issued its Order, eight out of the nine Plaintiffs (all of them except Mays) amended their discovery responses to CRU's Second Request for Production No. 7 to represent that their production in response to this request was complete, and five of those eight Plaintiffs produced additional résumés in response to this request. *See* Defs.' Mot. for Leave, Ex. A.2, Pls.' Am. Resp. to CRU's Second Req. for Produc. No. 7 (Dkt. #87-3). The Court granted CRU's Amended MTC as to Mays and denied as moot CRU's Amended MTC as to the other eight Plaintiffs because they had already amended their responses to Request for Production No. 7. *See* Order (Dkt. #78).

Plaintiffs argue that CRU's inclusion of their failures to respond to Request for Production No. 7 in the Amended MTC was unnecessary because Plaintiffs had already produced résumés in response to other requests for production. *See* Pls.' Resp. (Dkt. #84) at 3. Plaintiffs seek to convolute the very simple concepts here—they did not produce résumés (or refer CRU to their responses to other requests for production) in their responses to Request for Production No. 7 prior to CRU's filing its Amended MTC, eight out of the nine Plaintiffs amended their responses to

CRU's Second Request for Production No. 7 to represent that their production in response to this request was complete and five of them produced additional résumés *only after* CRU filed its Amended MTC, and the Court ordered Mays to respond.

Plaintiffs' argument here is especially disingenuous because the evidence clearly shows that none of them responded to Request No. 7 on the merits and each of them wanted CRU to believe that, as of December 14, 2023, he/she would be working on providing résumés: "[Plaintiff] is reviewing [his/her] records for responsive materials and will supplement with responsive materials, if any, within 14 days." *See* Am. MTC, Ex. A.6, Plaintiffs' responses to CRU's Request for Production No. 7 (Dkt. #53-8). Plaintiffs did not supplement two weeks later. In fact, none of them did anything until February 23, 2024, which was two weeks *after* CRU filed its Amended MTC, when all of the Plaintiffs but Mays amended their responses to CRU's Second Request for Production No. 7 to represent that their production in response to this request was complete and five of them produced additional résumés *only after* CRU filed its Amended MTC. *See* Ex. A.2, Plaintiffs' amended responses to CRU's requests for résumés. Mays never supplemented. Had Plaintiffs supplemented their discovery responses at any point between December 14, 2023 and February 8, 2024, CRU would not have had to seek the Court's intervention on this issue. Because eight of the Plaintiffs amended their responses to CRU's Second Request for Production No. 7 to represent that their production in response to this request was complete and five of them produced additional résumés *only after* CRU filed its Amended MTC to secure Plaintiffs' compliance, CRU is entitled to recover its reasonable and necessary attorneys' fees incurred in having to seek the Court's intervention on this issue. *See CHU de Quebec*, 2023 WL 2746933, at *5.

### *3. Riley's Paystubs*

Plaintiffs argue that CRU is not entitled to recover its attorneys' fees with respect to the Amended MTC as it relates to its request for all of Riley's paystubs from July 1, 2021 to September 30, 2022, because the Court denied this request as moot. *See* Pls.' Resp. (Dkt. #84) at 2–3. Plaintiffs again fail to appreciate their role in forcing CRU to file its Amended MTC. They also fail to appreciate that the Court denied as moot CRU's Amended MTC as to this production request because Riley had already amended his response to the request for production. *See* Order (Dkt. #78). But, because Riley amended his response to this request for production *only after* CRU filed its Amended MTC to secure his compliance, CRU is entitled to recover its reasonable and necessary attorneys' fees incurred in having to seek the Court's intervention on this issue. *See CHU de Quebec*, 2023 WL 2746933, at *5.

### *4. Forms W-2 and 1099s of Mays, Mansfield, Nickelberry and Russell-Brown*

Plaintiffs remain insistent that they produced back in 2023 the Wage and Income Transcripts for the years 2019, 2020, 2021 and 2022, of Mays, Mansfield, Nickelberry and Russell-Brown. *See* Pls.' Resp. (Dkt. #84) at 3. This is simply not true. CRU has never received any of the following tax records, even after the Court ordered last month that Mays, Mansfield, Nickelberry and Russell-Brown produce their Forms W-2 and 1099s and Wage and Income Transcripts for the years 2019, 2020, 2021 and 2022:

- Any Forms W-2 and/or 1099 for Mays;
- Any Forms W-2 and/or 1099 for Russell-Brown; or

- Any Forms W-2 and/or 1099 for Mansfield for 2022.[5]

On August 14, 2026, CRU received, for the first time, Nickelberry's Wage and Income Transcript for the year 2020. *See* Defs.' Mot. for Leave, Ex. A, Hurst Decl. (Dkt. #87-1) ¶¶ 8–9. On August 15, 2026, Plaintiffs' counsel finally admitted that they do not have, and therefore have not produced, Mansfield's Wage and Income Transcript for 2022. *See* Defs.' Mot. for Leave, Ex. A.4, E-mail message from K. O'Brien to M. Hurst (Aug. 15, 2026) (Dkt. #87-5); *see also* Pls.' 1st Am. Advisory with the Ct. (Dkt. #86) at 5. Further, Plaintiffs now concede that they have not produced any of Mays' or Russell-Brown's Forms W-2, Forms 1099s, or Wage and Income Transcripts for the years 2019, 2020, 2021 and 2022. *See* Pls.' 1st Am. Advisory with the Ct. (Dkt. #86) at 5. Plaintiffs would have to concede that CRU is entitled to recover all of its attorneys' fees in connection with making its Amended MTC as to the Forms W-2 and 1099s and Wage and Income Transcripts.

***5. Collins' Facebook Data***

Plaintiffs argue that CRU should not be entitled to an award of attorneys' fees with respect to CRU's request for Collins' Facebook data, if Collins demonstrates sometime in the future that she is unable to access or download the majority of her Facebook data. *See* Pls.' Resp. (Dkt. #84) at 3. This argument completely ignores that the Court granted the relief sought by CRU. CRU was forced to file its Amended MTC because Plaintiffs had not produced thousands of relevant Facebook messages from Collins' Facebook account, despite Plaintiffs' previous commitment to produce all of Collins' Facebook data. *See* Defs.' Am. MTC (Dkt. #53) at 8–12. The Court agreed

[5] Plaintiffs inaccurately represent the following in Plaintiffs' and Opt-Ins' Response to Defendants' Amended Motion to Compel Discovery: "By the time that Plaintiffs filed their Response on December 19, 2023, all responsive W-2 and 1099 documents had been produced for 7 out of 8 of those individuals that had previously resisted that production." *See* Pls.' Resp. to Defs.' Am. Mot. to Compel (Dkt. #59) at 6. However, this statement misrepresents that Plaintiffs had provided the sought-after tax records of Nickelberry and Mansfield.

with CRU that Collins' Facebook data is relevant and ordered her to produce all requested Facebook data that she is reasonably able to access and download. *See* Order (Dkt. #78). Because CRU prevailed on its request for Collins' Facebook data, CRU is entitled to recover all of its attorneys' fees in connection with making its Amended MTC as to Collins' Facebook data.

***6. Mays' Response to Request for Admission No. 2***

Plaintiffs argue that CRU is not entitled to recover its attorneys' fees incurred in making its Amended MTC as to Mays' response to CRU's Request for Admission No. 2 and any other discovery response that did not come from her. *See* Pls.' Resp. (Dkt. #84) at 3. The Court disagreed with Plaintiffs that it has "no authority" to set aside a potentially improper discovery response. *See* Order (Dkt. #78). While the Court saw no reason to intervene at this stage, it did grant CRU the ability to serve on Mays interrogatories for information pertaining to her discovery responses that CRU may not otherwise have available. *See id.* This was certainly a win for CRU.

Regardless of whether the Court's ruling can be considered a complete victory for CRU, as a demonstration of moderation, CRU had already voluntarily reduced the amount of attorneys' fees it seeks to recover. Although courts look at the degree of success on the underlying motions to compel in determining an apportioned fee, no mathematical precision is required. *See White Cap LP v. McSpadden*, No. 3:23-CV-2001-N, 2024 WL 5440869, at *3 (N.D. Tex. Sept. 16, 2024). CRU obtained the relief sought for 24 out of the 25 discovery disputes presented in its Motions to Compel—a 96% success rate overall. *See* Order (Dkt. #78). No reduction is needed to account for the one issue that may not be a complete win for CRU, as CRU already made a significant voluntary reduction of approximately 30% of what it would have been entitled to. *See* Defs.' Am. MTC (Dkt. #81) at 4.

### C. The Court Has Broad Discretion to Determine Who is Responsible.

Plaintiffs criticize CRU for not assigning to each Plaintiff a percentage of the amount of CRU's attorneys' fees he/she is responsible for. *See* Pls.' Resp. (Dkt. #84) at 4–5. Of course, Plaintiffs offer no solution, nor do they cite to any authority that would validate such criticism. Plaintiffs do not even acknowledge that the Court could find Plaintiffs' counsel wholly or partly responsible for the sanctioned conduct. Instead, Plaintiffs invented some sort of requirement that CRU assign percentages of the amount of CRU's attorneys' fees among Plaintiffs and their counsel, then they accuse CRU of not complying with the invented requirement.

Under Rule 37(a)(5), "the party ... whose conduct necessitated the motion" to compel or the "attorney advising that conduct, or both" may be required "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). "District courts have discretion to determine what sanctions are appropriate under Rule 37." *Olivarez v. GEO Grp. Inc.*, No. EP-14-CV-00436-FM, 2015 WL 13227822, at *10 (W.D. Tex. Oct. 20, 2015), *aff'd*, 844 F.3d 200 (5th Cir. 2016) (citing *Pressey v. Patterson*, 898 F.2d 1018, 1020 (5th Cir. 1990)). It is within the Court's broad discretion to determine whose conduct necessitated the Motions to Compel, and to what extent.

Plaintiffs and their counsel are obviously well suited to provide their perspectives to the Court on what percentage of responsibility should be assigned to each of the nine Plaintiffs and each Plaintiffs' attorney. In *Wright v. Rochester Sportfishing, Inc.*, No. 6:24-CV-06240 CJS CDH, 2025 WL 3703602, at *15 (W.D.N.Y. Dec. 22, 2025), the court found that the plaintiffs were entitled to recover their reasonable expenses under Rule 37(b)(2)(C), including attorney's fees, caused by the defendants' failure to comply with a court order. The court ordered the plaintiffs to submit documentation of their attorney's fees and expenses. *Id.* The court explained that, in order

to apportion the fees, the defendants and their counsel should address, in any response to plaintiff's declaration, who is responsible for the sanctioned conduct and how the payment of the fees owed should be divided among those responsible. *Id.* (citations omitted).

CRU's submission of its Application for Attorneys' Fees in addition to the Motions to Compel provide the Court with extensive information, and as much as CRU would have, regarding the culpability among the Plaintiffs and their counsel. But, CRU would not know why documents were not produced, after so many good-faith attempts had been made by CRU to secure them. It is not at all odd that CRU cannot weigh in on the percentage of culpability for each Plaintiff and each Plaintiffs' attorney; it is only odd that Plaintiffs would criticize CRU for not doing so.

In *Simmons v. Tarrant County 9-1-1 District*, No. 3:13-CV-1389-M, 2014 WL 2587516, at *1 (N.D. Tex. June 10, 2014), U.S. Magistrate Judge David Horan considered the defendants' application for attorneys' fees under Rule 37(a)(5)(A). As is the case with CRU here, the defendants in *Simmons* did not take a position on whether the plaintiff, her attorney, or both should pay the attorneys' fees award under Rule 37(a)(5)(A). *Id.* at *4. As is the case here with Plaintiffs' counsel, the plaintiff's attorney in *Simmons* argued that the plaintiff herself should pay the attorneys' fees. *Id.* Judge Horan reflected that it is counsel, not the client, who is "responsible for coordinating the preparation of, signing, and serving written responses to discovery requests." *Id.* at *5. Indeed, "counsel have 'an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests.'" *Id.* (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir.1990)). Ultimately, Judge Horan found that the plaintiff's attorney should pay the attorneys' fees award because of his "inaction and inattention." *Id.* at *5–6.

Plaintiffs argue that CRU is pushing for joint and several liability among the Plaintiffs. *See* Pls.' Resp. (Dkt. #84) at 5. That is not true either. CRU is merely asking the Court to award its attorneys' fees incurred in making the Motions to Compel. It is within the Court's sound discretion to decide on whether that award includes joint and several liability. In spite of Plaintiffs' hysteria regarding joint and several liability, this Court most certainly could find it appropriate to hold Plaintiffs and their counsel jointly and severally liable. *See, e.g.*, *Jorge v. Atl. Hous. Found., Inc.*, No. 3:20-CV-2782-N, 2022 WL 6250698, at *2 (N.D. Tex. Oct. 7, 2022).

**D. The Court Must Award Fees Based on CRU's Having to File the Motions to Compel.**

Plaintiffs ask the Court to refrain from awarding CRU attorneys' fees because they are merely plaintiffs in an overtime action. *See* Pls.' Resp. (Dkt. #84) at 8–9. Once again, Plaintiffs do not even acknowledge that the Court could find Plaintiffs' counsel wholly or partly responsible for the sanctioned conduct. Moreover, Plaintiffs offer no authority to support the idea that plaintiffs in a collective action are exempt from complying with the same discovery obligations imposed on other litigants. Simply being a plaintiff in an overtime action does not grant Plaintiffs the unfettered ability to disregard their discovery obligations. Plaintiffs do not even attempt to justify their conduct; they merely ask the Court to look the other way.

The purpose of sanctions under Rule 37 is to (i) penalize those who fail to comply with their discovery obligations, and (ii) deter others who may be tempted to engage in similar conduct. *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986); *Innovation Scis., LLC v. HTC Corp.*, No. 4:18-CV-00476, 2020 WL 4536053, at *1 (E.D. Tex. Aug. 6, 2020). Allowing Plaintiffs to evade liability, and just because they are plaintiffs in a threatened collective overtime action, would create a perspective that future plaintiffs in overtime actions could disregard their discovery obligations with no consequence.

## E. CRU is Not Seeking to Recover Non-Compensable Time.

Plaintiffs offensively argue that CRU has not satisfied some sort of "burden" created by Plaintiffs, because of "substantial duplication," "excessive staffing," and billing for non-compensable time. *See* Pls.' Resp. (Dkt. #84) 9–10. This argument suffers from so many obvious and fundamental flaws, that it jumps off of the page.

For starters, this is a collective action case, wherein Plaintiffs are trying to certify a collective of hundreds of workers. These are complicated legal issues to address, and doing so requires hard work, thoughtfulness, organization, creativity, and attention to detail. Defendants in collective actions and class actions are often sophisticated clients that demand excellent legal representation, which is often accomplished by multiple attorneys collaborating on drafting and preparing motions. Collaboration among lawyers in researching for and preparing winning motions to compel that resolve dozens of challenges Plaintiffs were creating in resisting discovery, and done with efficiency, is exactly the excellent legal work that CRU's counsel strives to deliver.

Having lost the Motions to Compel, Plaintiffs are poorly positioned to dictate the efforts of competent counsel in researching, preparing and drafting the successful briefing. Tellingly, neither of Plaintiffs' counsel submits an affidavit refuting CRU's counsel's testimony as to his experience with similar cases and the reasonableness of the attorneys' fees expended in CRU making its Motions to Compel.

Each of the time entries CRU includes in its Application for Attorneys' Fees was directly related to their making CRU's Motions to Compel, which includes counsel's pre-filing activities necessary to ripen the Motions to Compel, drafting deficiency letters, reviewing correspondence from Plaintiffs' counsel, reviewing document productions from Plaintiffs' counsel, and meet-and-confer discussions—all of which is compensable. *See CHU de Quebec*, 2023 WL 2746933, at

*10; *Simmons*, 2014 WL 2587516, at *3; *see generally* Defs.' Appl. for Attys' Fees, Ex. A.9, Billing Records (Dkt. #81-10). Regardless, CRU is only seeking reimbursement of the attorneys' fees highlighted in yellow—none of which were for the review of Plaintiffs' discovery responses or document productions as Plaintiffs suggest in their Response. *See* Defs.' Appl. for Attys' Fees (Dkt. #81) at 4; *see generally* Defs.' Appl. For Attys' Fees, Ex. A.9, Billing Records (Dkt. #81-10).

## **PRAYER**

For all of these reasons, CRU respectfully requests the Court award them $63,978.00 in reasonable and necessary attorneys' fees incurred in making the Motions to Compel.

Respectfully submitted,

MUNSCH, HARDT, KOPF & HARR, P.C.
500 North Akard Street, Suite 4000
Dallas, Texas 75201
214.855.7500
(f) 214.855.7584

By: *Monte K. Hurst*
Monte K. Hurst
State Bar No. 00796802
MHurst@munsch.com

Kristen A. Laster
State Bar No. 24076499
KBrumbalow@munsch.com

Ceicili S. Morales
State Bar No. 24141648
CMorales@munsch.com

*Counsel for Defendants Catastrophe Response Unit, Inc. and Catastrophe Response Unit USA, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 18, 2026, I served a copy of the foregoing document on Plaintiffs' counsel as follows in compliance with Rule 5(b) of the Federal Rules of Civil Procedure:

Mr. Kerry O'Brien
O'BRIEN LAW FIRM
1011 Westlake Drive
Austin, Texas 78746
KO@obrienlawpc.com

Mr. Travis Gasper
GASPER LAW, PLLC
633 West Davis Street
Dallas, Texas 75208
Travis@travisgasper.com

*Monte K. Hurst*
Monte K. Hurst